Nos. 21-5048, 21-5100

———————————————————————

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

———————————————————————

UNIVERSAL LIFE CHURCH MONASTERY STOREHOUSE, et al.,

*Plaintiffs and Appellees,*

v.

WAYNE NABORS, et al.,

*Defendants and Appellants.*

———————————————————————

On Appeal from the United States District Court
for the Middle District of Tennessee
Case No. 2:19-cv-00049

———————————————————————

BRIEF OF RESPONDENTS AND CONDITIONAL COUNTER-APPELLANTS
UNIVERSAL LIFE CHURCH MONASTERY STOREHOUSE, ERIN
PATTERSON, AND GABRIEL BISER

———————————————————————

ADAMS AND REESE LLP

Rocklan W. King III
(BPR No 030643)
424 Church Street, Suite 2700
Nashville, TN 37219

Lucian T. Pera
(BPR No. 11641)
Crescent Center
6075 Poplar Avenue, Suite 700
Memphis, TN 38119

DAVIS WRIGHT TREMAINE LLP

Bruce E.H. Johnson
(WSBA No. 7667)
Ambika K. Doran
(WSBA No. 38237)
Robert E. Miller
(WSBA No. 46507)
920 Fifth Avenue, Suite 3300
Seattle, WA 98104

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 21-5048          Case Name: Universal Life, et al. v. Nabors, et al.

Name of counsel: Ambika Kumar Doran

Pursuant to 6th Cir. R. 26.1, Erin Patterson
*Name of Party*
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

> No

---

### CERTIFICATE OF SERVICE

I certify that on _____ May 20, 2021 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Ambika Kumar Doran
Davis Wright Tremaine LLP
Attorneys for Appellees

---

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

# 6th Cir. R. 26.1
## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

(a) **Parties Required to Make Disclosure.** With the exception of the United States government or agencies thereof or a state government or agencies or political subdivisions thereof, all parties and amici curiae to a civil or bankruptcy case, agency review proceeding, or original proceedings, and all corporate defendants in a criminal case shall file a corporate affiliate/financial interest disclosure statement. A negative report is required except in the case of individual criminal defendants.

(b) **Financial Interest to Be Disclosed.**

(1) Whenever a corporation that is a party to an appeal, or which appears as amicus curiae, is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, counsel for the corporation that is a party or amicus shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the parent corporation or affiliate and the relationship between it and the corporation that is a party or amicus to the appeal. A corporation shall be considered an affiliate of a publicly owned corporation for purposes of this rule if it controls, is controlled by, or is under common control with a publicly owned corporation.

(2) Whenever, by reason of insurance, a franchise agreement, or indemnity agreement, a publicly owned corporation or its affiliate, not a party to the appeal, nor an amicus, has a substantial financial interest in the outcome of litigation, counsel for the party or amicus whose interest is aligned with that of the publicly owned corporation or its affiliate shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the publicly owned corporation and the nature of its or its affiliate's substantial financial interest in the outcome of the litigation.

(c) **Form and Time of Disclosure.** The disclosure statement shall be made on a form provided by the clerk and filed with the brief of a party or amicus or upon filing a motion, response, petition, or answer in this Court, whichever first occurs.

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: <u>21-5048</u>          Case Name: <u>Universal Life, et al. v. Nabors, et al.</u>

Name of counsel: <u>Ambika Kumar Doran</u>

Pursuant to 6th Cir. R. 26.1, <u>Universal Life Church Monastery Storehouse</u>
<i>Name of Party</i>
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

> No

CERTIFICATE OF SERVICE

I certify that on _____<u>May 20, 2021</u>_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

> <u>s/Ambika Kumar Doran</u>
> <u>Davis Wright Tremaine LLP</u>
> <u>Attorneys for Appellees</u>

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

     (a)  **Parties Required to Make Disclosure.**  With the exception of the United States government or agencies thereof or a state government or agencies or political subdivisions thereof, all parties and amici curiae to a civil or bankruptcy case, agency review proceeding, or original proceedings, and all corporate defendants in a criminal case shall file a corporate affiliate/financial interest disclosure statement.  A negative report is required except in the case of individual criminal defendants.

     (b)  **Financial Interest to Be Disclosed.**

     (1)  Whenever a corporation that is a party to an appeal, or which appears as amicus curiae, is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, counsel for the corporation that is a party or amicus shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the parent corporation or affiliate and the relationship between it and the corporation that is a party or amicus to the appeal.  A corporation shall be considered an affiliate of a publicly owned corporation for purposes of this rule if it controls, is controlled by, or is under common control with a publicly owned corporation.

     (2) Whenever, by reason of insurance, a franchise agreement, or indemnity agreement, a publicly owned corporation or its affiliate, not a party to the appeal, nor an amicus, has a substantial financial interest in the outcome of litigation, counsel for the party or amicus whose interest is aligned with that of the publicly owned corporation or its affiliate shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the publicly owned corporation and the nature of its or its affiliate's substantial financial interest in the outcome of the litigation.

     (c)  **Form and Time of Disclosure.**  The disclosure statement shall be made on a form provided by the clerk and filed with the brief of a party or amicus or upon filing a motion, response, petition, or answer in this Court, whichever first occurs.

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 21-5048      Case Name: Universal Life, et al. v. Nabors, et al.

Name of counsel: Ambika Kumar Doran

Pursuant to 6th Cir. R. 26.1, Gabriel Biser
*Name of Party*

makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

> No

---

### CERTIFICATE OF SERVICE

I certify that on _____ May 20, 2021 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Ambika Kumar Doran
Davis Wright Tremaine LLP
Attorneys for Appellees

---

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

# 6th Cir. R. 26.1
## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

(a) **Parties Required to Make Disclosure.** With the exception of the United States government or agencies thereof or a state government or agencies or political subdivisions thereof, all parties and amici curiae to a civil or bankruptcy case, agency review proceeding, or original proceedings, and all corporate defendants in a criminal case shall file a corporate affiliate/financial interest disclosure statement. A negative report is required except in the case of individual criminal defendants.

(b) **Financial Interest to Be Disclosed.**

(1) Whenever a corporation that is a party to an appeal, or which appears as amicus curiae, is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, counsel for the corporation that is a party or amicus shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the parent corporation or affiliate and the relationship between it and the corporation that is a party or amicus to the appeal. A corporation shall be considered an affiliate of a publicly owned corporation for purposes of this rule if it controls, is controlled by, or is under common control with a publicly owned corporation.

(2) Whenever, by reason of insurance, a franchise agreement, or indemnity agreement, a publicly owned corporation or its affiliate, not a party to the appeal, nor an amicus, has a substantial financial interest in the outcome of litigation, counsel for the party or amicus whose interest is aligned with that of the publicly owned corporation or its affiliate shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the publicly owned corporation and the nature of its or its affiliate's substantial financial interest in the outcome of the litigation.

(c) **Form and Time of Disclosure.** The disclosure statement shall be made on a form provided by the clerk and filed with the brief of a party or amicus or upon filing a motion, response, petition, or answer in this Court, whichever first occurs.

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................1

II.    STATEMENT OF ISSUES ..................................................................2

III.   STATEMENT OF THE CASE ............................................................2

     A.    Factual Background.................................................................2

          1.    ULC Monastery and Discrimination in Tennessee....................2

          2.    Tennessee's Marriage Ordination Law........................................6

          3.    Impact of the New Law on ULC Monastery and its Ministers..................................................................................9

     B.    Procedural Background .........................................................12

IV.   SUMMARY OF THE ARGUMENT ..................................................13

V.    ARGUMENT......................................................................................14

     A.    Standard of Review ..............................................................14

     B.    The State Defendants Have Failed to Establish an Entitlement to Sovereign Immunity........................................................15

          1.    The Attorney General, Having Issued Numerous Opinions Directed at ULC Monastery's Practices, Is Not Immune from Suit..................................................................17

          2.    The District Attorneys, Who Have Authority to Prosecute Ministers for Solemnizing Marriages, Are Not Immune..........21

          3.    The Court Should Reject the State Defendants' Invitation to Adopt a Narrow, Impractical Standard Inconsistent with *Ex parte Young*...................................................................26

     C.    The Church and its Ministers Have Standing to Bring Their Claims.....................................................................................28

          1.    Plaintiffs Have Suffered a Cognizable Injury..........................29

2.    A Permanent Injunction Would Redress Plaintiffs'
Injuries. ...................................................................................36

VI.    CROSS APPEAL................................................................................40

A.    The Governor is a Proper Party if All Other Defendants are
Dismissed. .......................................................................................41

VII.   CONCLUSION..................................................................................43

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*ACLU of Ky. v. Rowan Cty.*,
  513 F. Supp. 2d 889 (E.D. Ky. 2007) ...............................................................33

*ACLU of Ohio Found., Inc. v. DeWeese*,
  633 F.3d 424 (6th Cir. 2011) ...........................................................................34

*Allied Artists Picture Corp. v. Rhodes*,
  679 F.2d 656 (6th Cir. 1982) .......................................................................41, 43

*Allied Artists Pictures Corp. v. Rhodes*,
  473 F. Supp. 560 (S.D. Ohio 1979), *aff'd* 679 F.2d 656 (6th Cir. 1982) ...........42

*Bd. of Educ. of Shelby Cty., Tenn. v. Memphis City Bd. of Educ.*,
  2012 WL 6003540 (W.D. Tenn. Nov. 30, 2012).................................................21

*Bormuth v. Cty. of Jackson*,
  870 F.3d 494 (6th Cir. 2017) ...........................................................................34

*Burns v. Helper*,
  2019 WL 5987707 (M.D. Tenn. Oct. 24, 2019) .................................................21

*Center for Inquiry, Inc. v. Marion Cir. Ct. Clerk*,
  758 F.3d 869 (7th Cir. 2014) (*CFI*) .................................................................32

*Children's Healthcare is a Legal Duty, Inc. v. Deters*,
  92 F.3d 1412 (6th Cir. 1996) ...........................................................................20

*Citizens for Equal Prot. v. Bruning*,
  455 F.3d 859 (8th Cir. 2006) .......................................................................19, 27

*Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*,
  149 F.3d 679 (7th Cir. 1998) ...........................................................................23

*Const. Party of Pa. v. Aichele*,
  757 F.3d 347 (3d Cir. 2014) (*CPP I*)...............................................................29

*Const. Party of Pa. v. Cortes*,
824 F.3d 386 (3d Cir. 2016) (*CCP II*) ..................................................29

*Doe v. DeWine*,
910 F.3d 842 (6th Cir. 2018) ...............................26, 36, 37, 38

*Doe v. Haslam*,
2017 WL 5187117 (M.D. Tenn. Nov. 9, 2017) .................................42

*Donald v. Wilson*,
847 F.2d 1191 (6th Cir. 1988), *abrogated on other grounds by Green v. Bock Laundry Mach. Co*., 109 S. Ct. 1981 (1989) ......................................39

*Dumont v. Lyon*,
341 F. Supp. 3d 706 (E.D. Mich. 2018) ........................................30

*EMW Women's Surgical Ctr., P.S.C. v. Beshear*,
920 F.3d 421 (6th Cir. 2019) ...................................................20, 22

*Ex parte Young*,
209 U.S. 123 (1908)......................................2, 13, 15, 16, 22, 25-29, 38, 41, 43

*Faith Baptist Church v. Waterford Twp.*,
522 F. App'x 322 (6th Cir. 2013) ....................................................36

*Franks v. Ky. Sch. for the Deaf*,
142 F.3d 360 (6th Cir. 1998) .........................................................14

*Gay Lesbian Bisexual All. v. Evans*,
843 F. Supp. 1424 (M.D. Ala. 1993), *aff'd*, *Gay Lesbian Bisexual All. v. Pryor*,
110 F.3d 1543 (11th Cir. 1997) ....................................................19

*Hyden v. Baker*,
286 F. Supp. 475 (M.D. Tenn. 1968)...........................................21

*Kaahumanu v. Hawaii*,
682 F.3d 789 (9th Cir. 2012) ........................................................36

*Kelly v. Lee*,
2020 WL 2120249 (E.D. Tenn. May 4, 2020) ..............................21

*Kiser v. Reitz*,
765 F.3d 601 (6th Cir. 2014) ........................................................23

*Kitchen v. Herbert*,
  755 F.3d 1193 (10th Cir. 2014) ................................................................17, 19, 20

*Lac Vieux Desert Band of Lake Super. Chippewa Indians v. Mich. Gaming Control Bd.*,
  172 F.3d 397 (6th Cir. 1999) .................................................................................33

*Larson v. Valente*,
  456 U.S. 228 (1982) ...............................................................................................31

*LensCrafters, Inc. v. Sundquist*,
  184 F. Supp. 2d 753 (M.D. Tenn. 2002) ...............................................................42

*Luckey v. Harris*,
  860 F.2d 1012 (11th Cir. 1988) .............................................................................42

*McNeil v. Cmty. Prob. Servs., LLC*,
  945 F.3d 991 (6th Cir. 2019) .................................................................................16

*McNeilus Truck & Mfg., Inc. v. Ohio ex rel. Montgomery*,
  226 F.3d 429 (6th Cir. 2000) .................................................................................22

*N.H. Right to Life Political Action Comm. v. Gardner*,
  99 F.3d 8 (1st Cir. 1996).......................................................................................23

*Nair v. Oakland Cty. Cmty. Mental Health Auth.*,
  443 F.3d 469 (6th Cir. 2006) .................................................................................14

*New Doe Child #1 v. Cong. of United States*,
  891 F.3d 578 (6th Cir. 2018) .................................................................................30

*New Mexicans for Bill Richardson v. Gonzales*,
  64 F.3d 1495 (10th Cir. 1995) ...............................................................................23

*Parsons v. U.S. Dep't of Justice*,
  801 F.3d 701 (6th Cir. 2015) .................................................................................15

*Pedreira v. Ky. Baptist Homes for Children, Inc.*,
  579 F.3d 722 (6th Cir. 2009) .................................................................................15

*Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*,
  769 F.3d 447 (6th Cir. 2014) ...........................................................................30, 33

*Prairie Band Potawatomi Nation v. Wagnon*,
476 F.3d 818 (10th Cir. 2007) ........................................................17

*Real Alts., Inc. v. Sec'y Dep't of Health & Human Servs.*,
867 F.3d 338 (3d Cir. 2017) ...........................................................32

*Russell v. Lundergan-Grimes*,
784 F.3d 1037 (6th Cir. 2015) ...........................................20, 27, 43

*S&M Brands, Inc. v. Cooper*,
527 F.3d 500 (6th Cir. 2008) ..........................................................15

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ....................................................................29

*Top Flight Entm't v. Schuette*,
729 F.3d 623 (6th Cir. 2013) ..........................................................16

*Trump v. Hawaii*,
138 S. Ct. 2392 (2018) ....................................................................34

*United States v. Malone*,
889 F.3d 310 (6th Cir. 2018) ..........................................................39

*Universal Life Church v. Utah*,
189 F. Supp. 2d 1302 (D. Utah 2002) .............................................40

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*,
535 U.S. 635 (2002) ........................................................................15

*Washegesic v. Bloomingdale Pub. Schs.*,
33 F.3d 679 (6th Cir. 1994) ............................................................30

*Women's Med. Prof'l Corp. v. Voinovich*,
130 F.3d 187 (6th Cir. 1997) ..........................................................22

*Zielasko v. State of Ohio*,
873 F.2d 957 (6th Cir. 1989) ...............................................24, 25, 35

**State Cases**

*Cummings v. Beeler*,
189 Tenn. 151, 223 S.W.2d 913 (Tenn. 1949) ................................20

*Randolph v. Randolph*,
  937 S.W.2d 815 (Tenn. 1996) ...................................................................43

**State Statutes**

Tenn. Code Ann. 39-16-504(b)...................................................................9

Tenn. Code Ann. § 8-7-103 .......................................................................9

Tenn. Code Ann. § 29-14-107 ..................................................................20

Tenn. Code Ann. § 36-3-301 ........................................ 1, 6, 8, 17, 24, 30, 38, 39

Tenn. Code Ann. § 36-3-303 .....................................................................9

Tenn. Code Ann. § 36-3-304 .....................................................................9

Tenn. Code Ann. § 39-16-504 ................................................................9, 24

Tenn. Code Ann. § 40-35-111 ....................................................................9

**Constitutional Provisions**

Tenn. Const., Article III, § 10..............................................................41, 42

U.S. Const. amend I ...........................................................30, 33, 35, 36

U.S. Const. amend XI ........................................................13, 14, 15, 27

**Other Authorities**

Tenn. Att'y Gen. Op. 07-122 (Aug. 16, 2007) .........................................5

Tenn. Att'y Gen. Op. 19-08 (June 20, 2019)............................................8

Tenn. Att'y Gen. Op. 90-49 (Apr. 9, 1990)...............................................5

Tenn. Att'y Gen. Op. 97-138 (Oct. 9, 1997) .............................................4

Tenn. Att'y Gen. Op. 97-139 (Oct. 9, 1997) .........................................4, 18

Tenn. Att'y Gen. Op. U97-041 (Sept. 2, 1997) ....................................3, 4, 18

**STATEMENT REGARDING ORAL ARGUMENT**

Appellees-Cross Appellants Universal Life Church Monastery Storehouse, Erin Patterson, and Gabriel Biser do not request oral argument and take no position on requests for oral argument made by other parties.

# I. INTRODUCTION

In 2019, Tennessee passed a law openly discriminating against Universal Life Church Monastery Storehouse ("ULC Monastery" or "the Church") by stripping the Church's ministers of the right to solemnize marriages. The State Defendants (the Tennessee Attorney General and four district attorneys) do not deny that Tenn. Code Ann. § 36-3-301, as amended by 2019 Tenn. Pub. Ch. 415 ("the Act"), invalidates any marriage performed by Church ministers but not those performed by ministers of virtually all other religions. (Def. Mem. in Supp. of Mot. Dismiss, R. 209, PageID# 2653). In fact, State Defendants insist that, regardless of the 2019 law, they would *still* discriminate against ULC Monastery ministers because, in their view, the Church's ministers are not "regular" and lack the "care of souls." Despite this and despite the well-reasoned decision of the District Court, the State Defendants ask this Court to find them immune from any challenge to the discriminatory law—effectively insulating the law from constitutional scrutiny. Under the State Defendants' view, it could ban individuals from solemnizing marriages, whether because of their race, the clothes they wear, or their political views, and *no one* could challenge that law because no one "enforces" it. The Constitution does not permit this result.

1

## II.     STATEMENT OF ISSUES

1.     Whether the District Court correctly held that the State Defendants are subject to suit for an injunction under *Ex parte Young*.

2.     Whether the District Court correctly held that Plaintiffs have standing under Article III to pursue their claims against the State Defendants.

## III.     STATEMENT OF THE CASE

### A.     Factual Background

### 1.     ULC Monastery and Discrimination in Tennessee

ULC Monastery is a non-denominational church that champions religious freedom, social justice, and spiritual expression of all kinds.  (Second Amended Compl. ("SAC") ¶ 23, R. 80, PageID# 479); (Decl. of George Freeman ¶ 3, R. 40, PageID# 204); (Memorandum Opinion ("Mem. Op."), R. 236, PageID# 3216-3217).  Its two core tenets are:  (1) a person should always strive to do that which is right, and (2) all people are endowed with the rights to practice their beliefs, regardless of what those beliefs are, as long as they do not infringe on the rights of others and are within the law.  (SAC ¶ 23, R. 80, PageID# 479); (Decl. of George Freeman ¶ 3, R. 40, PageID# 204); (Mem. Op., R. 236, PageID# 3217).  ULC Monastery embraces the principle that those who feel so called can become ministers.  (SAC ¶ 26, R. 80, PageID# 480); (Decl. of George Freeman ¶ 5, R. 40, PageID# 204).  To that end, ULC Monastery ordains ministers for free over the

internet and sends them credentials by mail.  (SAC ¶ 26, R. 80, PageID# 480);

(Decl. of George Freeman ¶ 5, R. 40, PageID# 204); (Mem. Op., R. 236, PageID#

3217).  The Church "make[s] no religious hurdles, no hoops to jump through, no

tests of loyalty, no rings to kiss and no fees to pay."  (Decl. of George Freeman ¶ 5,

R. 40, PageID# 204 (quoting ULC Monastery website)).  Many ULC Monastery

ministers, including in Tennessee, choose to perform marriages.  (*Id.* ¶ 8, at

PageID# 205).

Ministers of the Church have long faced discrimination in Tennessee in no

small part because the Tennessee Attorney General has issued several opinions

denigrating ULC Monastery ministers as unqualified to solemnize marriages.

(SAC ¶ 26, R. 80, PageID# 480); (Decl. of Ambika Doran, Exs. F-I (Attorney

General opinions), R. 222-1, PageID# 3026-3042).  In 1997, the Attorney General

issued an opinion stating that a "person ordained by the Universal Life Church,

Inc.[1] . . . does not appear to meet the criteria of [Tennessee law] in order to be

qualified to solemnize marriages."  (AG Op. and Cases, (Tenn. Att'y Gen. Op.

---

[1] Universal Life Church, Inc. is a separate organization, from which ULC Monastery is a descendant. *See* https://www.themonastery.org/aboutUs (last visited May 19, 2021); (Decl. of Ambika Doran, Ex. D, R. 222-1, PageID# 3017-3021). The two have different practices and leadership, and no affiliation.  ULC Monastery embraces the principle that all those who feel called can become ministers and chooses to offer ordination online, similar to how Universal Life Church, Inc. offered ordination by mail.

U97-041 (Sept. 2, 1997), R. 216-1, PageID# 2879-2883).[2]  At that time, the statute

permitted marriages to be performed by "[a]ll regular ministers of the gospel of

every denomination, and Jewish rabbis, more than eighteen (18) years of age,

having the care of souls," without further restriction.  (*Id.* at PageID# 2880).

Nevertheless, the Attorney General opined that ministers ordained by mail by

Universal Life Church, Inc. are not "regular ministers" because their ordination

was not "a considered, deliberate and responsible act."  (*Id.* at PageID# 2882).

The same year, the Attorney General issued two follow-up opinions.  First,

the Attorney General took the position that, because ministers of Universal Life

Church, Inc. lack authority to solemnize marriages, the marriages they perform

may be void.  *See* (Decl. of Ambika Doran, Ex. F (Tenn. Att'y Gen. Op. 97-138

(Oct. 9, 1997), R. 222-1, PageID# 3026-3032).  Second, the Attorney General

answered the question of "how can clerks comply with Op. U97-041," which

declared Universal Life Church ministers unqualified, and concluded that clerks

may not "examine the qualifications of persons solemnizing the marriage."  (AG

Op. and Cases, (Tenn. Att'y Gen. Op. 97-139 (Oct. 9, 1997), R. 216-1, PageID#

2876-2878).  More recently, in 2015, the Attorney General confirmed that opinion

---

[2] These Attorney General Opinions are included as exhibits to the
Declaration of Ambika Doran in Support of Plaintiff's Response to Motion to
Dismiss.  (Decl. of Ambika Doran, Exs. F-I, R. 222-1, PageID# 3026-3042).

U97-041 "remains valid" and restated that "persons ordained by the Universal Life Church are not qualified" to solemnize marriages. (Decl. of Ambika Doran, Ex. G, R. 222-1, PageID# 3033-3035). Previously, the Attorney General had opined that a minister who performs a ceremony without a valid license could be sued for negligence. (Tenn. Att'y Gen. Op. 90-49 (Apr. 9, 1990), R. 116-6, PageID# 885-887).

The Office of the Attorney General has involved itself in regulating marriage solemnization and licensing beyond declaring Universal Life Church ministers unqualified. For instance, the Attorney General's office performed its own evaluation of Jewish religious tradition and looked to *The Jewish Primer* to conclude that Jewish cantors may not solemnize marriages in some instances. (Decl. of Ambika Doran, Ex. H (Tenn. Att'y Gen. Op. 07-122 (Aug. 16, 2007), R. 222-1, PageID# 3036-3038). More recently, Attorney General Slattery issued a directive to county clerks that they must issue marriage licenses to same-sex couples in compliance with the Supreme Court's ruling. (Decl. of Ambika Doran, Ex. E, R. 222-1, PageID# 3023-3024 (Tennessee Star, *Two Democrats in Tennessee General Assembly Sponsor Bill that Helps Attorney General Push Compliance with Supreme Court Decision on Same Sex Marriage in Tennessee*, Mar. 8, 2018, available at https://tennesseestar.com/2018/03/08/two-democrats-in-tennessee-general-assembly-sponsor-bill-that-helps-attorney-general-push-

compliance-with-supreme-court-decision-on-same-sex-marriage-in-tennessee/ (last visited May 19, 2021)).

For years, some county clerks have relied on the Attorney General's opinions to turn away the Church's ministers or tell them that marriages they perform will not be valid.  *See* (SAC ¶ 54, R. 80, PageID# 486); (Decl. of George Freeman ¶ 12, R. 40, PageID# 207).  The Putnam County Clerk—one of the defendants in this action—provided a copy of one such opinion to a couple who planned to be married by a ULC Monastery minister to support the Clerk's refusal to issue them a marriage license.  (Decl. of Ambika Doran, Ex. A (Plumm Dep. Excerpts), R. 222-1, PageID# 2982-2986); (Mem. Op., R. 236, PageID# 3219-3220).[3]

### 2.    Tennessee's Marriage Ordination Law

While the statute purports to authorize "spiritual leaders of *every* religious belief" to solemnize marriages, Tenn. Code Ann. § 36-3-301(a)(1) (2021) (emphasis added), the Tennessee General Assembly has twice acted to exclude disfavored religious groups, relying on the Attorney General's opinions.  First, in

---

[3] The Putnam County Clerk, Wayne Nabors, denies that his office refused to issue a marriage license to the couple but admits providing a copy of an Attorney General opinion to the couple and relying on the opinion to tell the couple that a marriage officiated by a ULC Monastery minister would be invalid.  *See* (Affidavit of Wayne Nabors, R. 144-1, PageID# 1489-1490).

1998, the General Assembly adopted the Attorney General's view that a minister

may perform a marriage only if he belongs to a church with religious "customs"

that provide for ordination by "a considered, deliberate, and responsible act." 1998

Tenn. Laws Pub. Acts, Title 36, Ch. 745. The legislature also expressly targeted

groups such as ULC Monastery, disapproving "mail-order preachers that send off

and become ordained through the laying on of 'Washingtons' or some such

process."[4]

Second, in 2019, the General Assembly enacted 2019 Tennessee Laws

Public Acts, Chapter 415 to prohibit ministers "receiving online ordinations" from

solemnizing marriages. The statute, as amended by 2019 Public Chapter 415,

provides:

> (1) All regular ministers, preachers, pastors, priests, rabbis and other
> spiritual leaders of every religious belief, more than eighteen (18)
> years of age, having the care of souls . . . may solemnize the rite of
> matrimony. . . .
>
> (2) In order to solemnize the rite of matrimony, any such minister,
> preacher, pastor, priest, rabbi or other spiritual leader must be
> ordained or otherwise designated in conformity with the customs of a
> church, temple or other religious group or organization; and such
> customs must provide for such ordination or designation by a
> considered, deliberate, and responsible act. *Persons receiving online
> ordinations may not solemnize the rite of matrimony*.

---

[4] *An Act to amend Tennessee Code Annotated, Title 36, Chapter 3, relative
to persons who may solemnize marriages, Hearing on HB 2079*, 1998 Leg.,
100th Sess. (Tenn. 1998) (statement of Sen. Roy Herron, sponsor), statement
appearing at 55:25-57:00 (Decl. of Robert E. Miller, Ex. B (transcript), Ex. C.
(audio), R. 16-1, PageID# 100-103).

Tenn. Code Ann. § 36-3-301(a) (emphasis added).[5]  The Attorney General has

since confirmed that under the new law, "spiritual leaders who receive their

ordinations online will no longer be . . . authorized . . . to solemnize marriages in

Tennessee."  (Decl. of Ambika Doran, Ex. I (Tenn. Att'y Gen. Op. 19-08 (June 20,

2019), R. 222-1, PageID# 3040-3042).[6]

---

[5] Tennessee has since expanded the ability to solemnize marriages to notaries and former members of the general assembly, while retaining the provisions targeting online ordination.  *See* 2021 Tenn. Laws Pub. Ch. 119; 2021 Tenn. Laws. Pub Ch. 225.

[6] The State Defendants maintain that ULC Monastery ordinations are invalid despite the fact that during the COVID-19 pandemic, the State has ***encouraged*** all faiths to conduct religious practice (including, presumably, ordination) online. Governor Lee's April 28, 2020 Executive Order says "places of worship are strongly encouraged to continue to utilize virtual or online services or gatherings," and the Governor's Office of Faith Based Activities instructs that "faith communities are strongly encouraged to continue offering online services and other creative methods of worship and ministry."  Executive Order 30 (April 28, 2020), available at: https://publications.tnsosfiles.com/pub/execorders/exec-orders-lee30.pdf (last visited May 19, 2021); Governor's Office of Faith-Based and Community Initiatives, *Guidelines for Gathering Together in Houses of Worship*, May 1, 2020, available at:  https://www.tn.gov/content/dam/tn/governorsoffice-documents/House%20of%20Worship%20Guidance%20FBCI.pdf (last visited May 19, 2021).  And unsurprisingly, during the pandemic, the Pew Research Center has found that one-third of U.S. adults "have watched religious services online or on television."  Alan Cooperman, *Will the coronavirus permanently convert in-person worshippers to online streamers?  They don't think so*, available at: https://www.pewresearch.org/fact-tank/2020/08/17/will-the-coronavirus-permanently-convert-in-person-worshippers-to-online-streamers-they-dont-think-so/ (last visited May 19, 2021).

A minister who solemnizes a marriage but fails to endorse and return the marriage license to the county clerk "commits a Class C misdemeanor." Tenn. Code Ann. § 36-3-303(a). The minister also must attest that he or she "solemnize[d] the rite of matrimony between the above . . . named parties . . . ." Tenn. Code Ann. § 36-3-304. This certification may be false if the minister lacked authority to solemnize the marriage, meaning he will have "[k]nowingly ma[de] a false entry in . . . a governmental record," a Class E felony. Tenn. Code Ann. § 39-16-504(a)(1) (2019). Class C misdemeanors are punishable by up to 30 days in jail and a $50 fine, and Class E felonies between one and six years in prison, and a fine up to $3,000. Tenn. Code Ann. § 40-35-111(b)(5), (c)(2)(e)(3). Making a "false entry" was previously a Class A misdemeanor, but the legislature increased the punishment effective July 1, 2019—the same day as the online ordination ban. *See* 2019 Tenn. Laws Pub. Ch. 495 (H.B. 502) amending Tenn. Code Ann. 39-16-504(b), *effective* July 1, 2019. The defendant district attorneys are responsible for prosecuting crimes committed within their districts. Tenn. Code Ann. § 8-7-103.

### 3. Impact of the New Law on ULC Monastery and its Ministers

The new law has greatly affected ULC Monastery and its ministers. *See* (Decl. of George Freeman ¶ 14, R. 40, PageID# 207). It has caused ministers to lose faith in the validity of their ordination. (*Id.* at PageID# 207). It also has affected the Church's goodwill and reputation by suggesting its practices are less

valid than those of other religions.  (*See id.* at PageID# 207).  The effect of the law is to prevent ULC Monastery's ministers from conducting one of the most universal and effective forms of outreach:  solemnizing marriages.  (*Id.* at PageID# 207).  This restriction would dramatically limit the Church's ability to spread its message in Tennessee, which harms the Church in unquantifiable ways.  (*Id.* at PageID# 207).  It is not practical for ULC Monastery to operate physical locations to accommodate all its congregants, nor does the Church want to do so, as it would be inconsistent with its model of ministry.  (*Id.* at PageID# 207).  ULC Monastery rejects the idea of a network of brick-and-mortar locations all controlled by a central leadership, and the Church relies on the internet to reach and commune with its ministers.  (*See id.* at PageID# 207).  Further, it would limit the Church's reach and hinder its operation if the Church were forced to use outdated methods such as mail or fax to complete the ordination process.  (*Id.* at PageID# 207).

Plaintiff Rev. Erin Patterson became a ULC Monastery minister in 2015 and has solemnized five marriages in Tennessee, including multiple in Rutherford County, where she lives.  (SAC ¶¶ 35, 37, R. 80, PageID# 482); (Mem. Op., R. 236, PageID# 3218).  She agreed to perform a marriage for a couple that resides in Williamson County on October 5, 2019, and arranged to meet with the bride to plan the ceremony on June 9, 2019.  (SAC ¶¶ 38, R. 80, PageID# 483); (Mem. Op., R. 236, PageID# 3218).  However, after learning of the 2019 amendment to the

statute, Rev. Patterson cancelled the meeting and told the couple she could not perform the ceremony.  (SAC ¶ 38, R. 80, PageID# 483); (Mem. Op., R. 236, PageID# 3218).  Rev. Patterson also told another couple that she could not perform their ceremony in the Nashville area on October 13, 2019, because of her continuing concerns about the new law.  (SAC ¶ 38, R. 80, PageID# 483); (Mem. Op., R. 236, PageID# 3218).  Before the amendment to the statute, Rev. Patterson began coordinating with local zoning authorities in Rutherford County to make changes to her property that would allow her to host weddings, but she paused those plans out of concern for the validity of marriages she might solemnize.  *See* (SAC ¶¶ 38-39, R. 80, PageID# 483); (Mem. Op., R. 236, PageID# 3219).

Plaintiff Rev. Gabriel Biser was also ordained as a ULC Monastery minister in 2015 and has solemnized four marriages in that role.  (SAC ¶¶ 40-41, R. 80, PageID# 483); (Mem. Op., R. 236, PageID# 3219).  He agreed to perform a ceremony for a same-sex couple in Hamilton County in August 2019 but changed his mind after enactment of the Amendment.  (SAC ¶ 43, R. 80, PageID# 484); (Mem. Op., R. 236, PageID# 3219).  Nevertheless, as a Hamilton County resident, Biser intends to perform marriage ceremonies there in the future.  (SAC ¶ 44, R. 80, PageID# 484); (Mem. Op., R. 236, PageID# 3219).

**B.    Procedural Background**

The Church and three of its ministers brought this suit against four county clerks and the Attorney General on June 21, 2019, to enjoin 2019 Public Chapter 415 before its July 1, 2019 effective date. *See* (Complaint for Declaratory and Injunctive Relief, R. 1, PageID# 1-19). The District Court ordered the parties to maintain the pre-effective date "status quo" pending a trial on the merits. *See* (Order, R. 53, PageID# 318-319). Plaintiffs amended their complaint, adding as defendants Governor Bill Lee and the district attorneys for Rutherford, Williamson, Hamilton, and Putnam counties. *See* (SAC, R. 80, PageID# 476-498). All defendants filed motions to dismiss.[7]

The District Court granted the State Defendants' request to dismiss the Governor as a defendant but otherwise denied the State Defendants' motion and the four county clerks' motions.[8] In its thoroughly reasoned decision, the District

---

[7] The State Defendants claim that the District Court "refused to rule on the sovereign immunity issue" when they first moved to dismiss. State Defs.' Br. at 9 n.5. That is inaccurate. As the District Court told them, "it was never the [District] Court's intention to proceed to a trial without ruling on the immunity defense," and the District Court "simply den[ied] the State Defendant's [sic] motion for extension of time to file their trial brief in accordance with the deadlines <u>agreed to by all of the parties</u>" because the State Defendants failed to brief the immunity issue "until the <u>agreed</u> eleventh hour before the trial briefs were due." (Order, R. 194, PageID# 2560 (emphasis in original)).

[8] The District Court also dismissed the claims of a couple married by a ULC Monastery minister as moot. No party has appealed that ruling.

Court concluded that Plaintiffs have standing and that the Attorney General, district attorneys, and county clerks are not entitled to sovereign immunity under the Eleventh Amendment.

## IV.    SUMMARY OF THE ARGUMENT

The State Defendants moved to dismiss Plaintiffs' claims on two bases:  (1) sovereign immunity and (2) standing.  The District Court properly denied State Defendants' motion on both bases.

*First*, the State Defendants are not immune from liability under the Eleventh Amendment.  *Ex parte Young*, 209 U.S. 123, 157 (1908) (requiring a "connection with the enforcement of the act").  The Attorney General has been the driving force behind the State's discrimination, issuing multiple opinions that ULC Monastery ministers cannot perform valid marriages, opinions on which county clerks and even the Tennessee General Assembly have expressly relied.  The district attorneys are charged with enforcing criminal laws, including those allowing prosecution of ministers for solemnizing marriages.

*Second*, Plaintiffs—the Church and two of its ministers—have standing to bring their claims.  The State Defendants claim Plaintiffs have suffered no injury because there is no constitutional right to perform marriages, and that in any event, the relief Plaintiffs seek would not redress their injuries because they have not sought to enjoin the portion of the statute permitting only "regular ministers . . .

13

having the care of souls" to solemnize marriages. This argument ignores

Plaintiffs' actual constitutional claim—*not* that they have a constitutional right to

perform marriages but that they have a constitutional right to be free from religious

discrimination. The statement that ULC Monastery ministers are not "regular

ministers" that "hav[e] the care of souls" is merely another display of animus

against ULC Monastery. Plaintiffs can, and will, seek to enjoin this

discrimination, too.

## V. ARGUMENT

### A. Standard of Review

This Court reviews a decision about Eleventh Amendment immunity de

novo. *Franks v. Ky. Sch. for the Deaf*, 142 F.3d 360, 362 (6th Cir. 1998). The

State Defendants acknowledge that they have "the burden to show that [they are]

entitled to immunity" but erroneously suggest that the burden to prove an

exception to the immunity shifts to Plaintiffs. State Defs. Br. at 12 (internal

quotation marks and citation omitted). Not so. This Court recognizes that

sovereign immunity is "unlike subject-matter jurisdiction" in that "'the entity

asserting Eleventh Amendment immunity has the burden to show that it is entitled

to immunity.'" *Nair v. Oakland Cty. Cmty. Mental Health Auth.*, 443 F.3d 469,

474 (6th Cir. 2006) (quoting *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d

958, 963 (6th Cir. 2002)). The cases the State Defendants cite do not concern

sovereign immunity.  State Defs.' Br. at 12 (citing *United States ex rel. Wall v. Circle C Constr., LLC*, 868 F.3d 466 (6th Cir. 2017); *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 817 (6th Cir. 2017)).

This Court also reviews a decision on standing de novo.  *Pedreira v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722, 728 (6th Cir. 2009).  The Court "consider[s] the complaint and the materials submitted in connection with the issue of standing."  *Id.* at 729.  "'[B]oth the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'"  *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 710 (6th Cir. 2015) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).  The party invoking jurisdiction bears the burden to establish standing.  *Id.*

**B.     The State Defendants Have Failed to Establish an Entitlement to Sovereign Immunity.**

"'[I]t is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights.'"  *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507-08 (6th Cir. 2008) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983)).  "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon*

*Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting

*Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 296 (1997)).

A state official is a proper defendant in a suit to invalidate a statute if the

official "has some connection with the enforcement of the act." *Ex parte Young*,

209 U.S. at 157. Thus, a "plaintiff must allege facts showing how a state official is

connected to, or has responsibility for, the alleged constitutional violations." *Top

Flight Entm't v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013) (citing *Floyd v. Cty. of

Kent,* 454 Fed. App'x 493, 499 (6th Cir. 2012)). Whether that connection "arises

out of the general law, or is specially created by the act itself, is not material so

long as it exists." *Ex parte Young*, 209 U.S. at 157.

The State Defendants claim they are immune because the statute contains

"no enforcement mechanism." State Defs.' Br. at 5. The Court should reject this

simplistic theory: Each of the State Defendants has a role in in implementing the

statute. *See McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 996 (6th Cir. 2019)

(explaining *Ex parte Young* exception may apply "against state actors at multiple

points in the enforcement chain of the challenged statute") (citing *Doe v. DeWine*,

910 F.3d 842, 848-49 (6th Cir. 2018)). The Attorney General and the district

attorneys are proper defendants under *Ex parte Young*.

**1. The Attorney General, Having Issued Numerous Opinions Directed at ULC Monastery's Practices, Is Not Immune from Suit.**

The Attorney General claims he is immune because he "has no role in enforcing, regulating, or otherwise executing the provisions of § 36-3-301." State Defs.' Br. at 18. But undisputedly, he and his predecessors have actively and repeatedly placed themselves at the center of the issue in this case—who may solemnize a valid marriage in Tennessee. Thus, even though the Attorney General has "not specifically empowered to ensure compliance with the statute at issue," he "clearly [has] assisted or currently assist[s] in giving effect to the law." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007) (footnote omitted); *see* State Defs.' Br. at 17 n.8 (citing *Prairie Band*); *see also Kitchen v. Herbert*, 755 F.3d 1193, 1204 (10th Cir. 2014) (quoting *Papasan v. Allain*, 478 U.S. 265, 282 n.14 (1986)) ("official is a proper defendant if he is 'responsible for general supervision of the administration by the local . . . officials' of a challenged provision.") (citation omitted).

The Attorney General claims he cannot be sued merely because he issues advisory opinions. The District Court agreed, but correctly found that "the allegations here go far beyond the Attorney General simply penning advisory opinions." (Mem. Op., R. 236, PageID# 3239). Through opinions and directives related to marriage solemnization and licensing, the Attorney General has issued

17

multiple opinions aimed at delegitimizing ULC Monastery, declaring that ministers ordained in a manner the State frowns upon cannot perform valid marriages. The Attorney General reached this conclusion in 1997 despite the statutory language expressly extending the right to solemnize marriages to ministers of "every denomination." Remarkably, the General Assembly adopted that opinion as law, adding the Attorney General's "considered, deliberate, and responsible act" language. *Compare* 1998 Tenn. Laws Pub. Acts, Title 36, Ch. 745, *with* AG Op. and Cases, (Tenn. Att'y Gen. Op. U97-041 (Sept. 2, 1997), R. 216-1, PageID# 2879-2883).

County clerks have relied on the opinions when refusing to issue marriage licenses for ULC Monastery-officiated weddings and informing ULC Monastery ministers they may not perform valid marriages. *See* (SAC ¶ 56, R. 80, PageID# 486); (Decl. of Ambika Doran, Exs. A-B, R. 222-1, PageID# 2974-3002). At the same time, the clerks claim they issue marriage licenses irrespective of the minister's religious affiliation. *See* (Mot. of County Clerk[s] to be Excused from July 3, 2019 Hearing, R. 23, PageID# 152-156). This, too, the clerks do at the Attorney General's behest, as his office instructed that the clerks lack "discretion . . . to examine the qualifications of officiants to determine that the person is a minister." (AG Op. and Cases, (Tenn. Att'y Gen. Op. 97-139 (Sep. 2, 1997), R. 216-1, PageID# 2877).

In similar circumstances—where advisory opinions are relied upon by agencies—courts have held the state attorney general is a proper party. For example, in *Gay Lesbian Bisexual All. v. Evans*, 843 F. Supp. 1424 (M.D. Ala. 1993), *aff'd*, *Gay Lesbian Bisexual All. v. Pryor,* 110 F.3d 1543 (11th Cir. 1997), the court concluded that the Alabama attorney general was a proper defendant where a state university enforced a statute "allegedly in reliance on an 'advisory opinion' from the Attorney General." *Id.* at 1426. And in *Citizens for Equal Prot. v. Bruning*, 455 F.3d 859 (8th Cir. 2006), the court held that the Nebraska attorney general was a proper defendant in a suit to challenge a state constitutional amendment defining marriage as between a man and a woman where the attorney general had issued an opinion that a proposed bill would run afoul of the amendment. (*abrogated on other grounds by Obergefell v. Hodges*, 576 U.S. 644 (2015)). *Id.* at 864. The court found the opinion "confirms that [the Attorney General's] broad powers include policing compliance with this constitutional amendment." *Id.*; *see also Kitchen*, 755 F.3d at 1203 (attorney general proper defendant to invalidate Utah's ban on recognizing out-of-state same-sex marriages where attorney general was "empowered to direct the Tax Commission to recognize the [couple's] Iowa wedding" by offering "his opinion in writing") (internal quotations and citation omitted). The State Defendants cite nothing to the contrary.

The State Defendants contrast two cases where the attorney general was immune because he lacked *any* involvement with the challenged law,[9] on the one hand, with *Russell v. Lundergan-Grimes*, 784 F.3d 1037 (6th Cir. 2015), where the attorney general actively pursued violations of the challenged law's criminal prohibitions. *See* State Defs.' Br. at 15-17. But this case involves neither scenario. Instead, this case fits with the line of cases recognizing that where, as here, an attorney general issues opinions directly affecting the plaintiff, the attorney general has "some connection with the enforcement of the act" and is thus a proper party. Moreover, as the Attorney General has directed county clerks to issue marriage licenses to same-sex couples, his "actual exercise of supervisory power and [his] authority to compel compliance from county clerks and other officials provide[s] the request nexus" with the Act. *Kitchen*, 755 F.3d at 1204.

Further, the District Court correctly concluded that the Attorney General's participation in this suit is consistent with Tenn. Code Ann. § 29-14-107, which "require[s] the Attorney General to be a party defendant in any proceeding here the constitutionality of the Act of the legislature is before the Court." *Cummings v. Beeler*, 189 Tenn. 151, 158, 223 S.W.2d 913, 916 (Tenn. 1949). While the State

---

[9] *See Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996) (attorney general took no action and state law delegated enforcement of challenged statutes to local prosecutors); *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 444-45 (6th Cir. 2019) (same).

Defendants claim this statute only requires notice to the Attorney General and allows his participation, every district court in Tennessee has concluded that, based on Tennessee courts' interpretation of the statute, the Attorney General is an "appropriate named party" in a "challenge [to] the constitutionality of a state statute." *Bd. of Educ. of Shelby Cty., Tenn. v. Memphis City Bd. of Educ.*, 2012 WL 6003540, at *2 (W.D. Tenn. Nov. 30, 2012) (citing § 29-14-107), *as supplemented by* 2012 WL 6607288 (W.D. Tenn. Dec. 18, 2012); *see also Burns v. Helper*, 2019 WL 5987707, at *5 (M.D. Tenn. Oct. 24, 2019) (concluding Attorney General Slattery "is a proper party under *Ex Parte Young* because Tennessee law requires him to be a party defendant in any proceeding [challenging] the constitutionality of the Act of the legislature.") (internal quotation marks omitted), *report and recommendation adopted,* 2019 WL 5964546 (M.D. Tenn. Nov. 13, 2019); *Kelly v. Lee*, 2020 WL 2120249, at *3 (E.D. Tenn. May 4, 2020) (same); *Hyden v. Baker*, 286 F. Supp. 475, 481 (M.D. Tenn. 1968) (same).

### 2. The District Attorneys, Who Have Authority to Prosecute Ministers for Solemnizing Marriages, Are Not Immune.

The District Court also correctly concluded the district attorneys general are proper defendants. The State Defendants cite no case involving a district attorney or comparable official as a defendant. Nor could they, as this Court has repeatedly

21

rejected the State's position, finding local prosecutors proper defendants under *Ex parte Young* even absent an explicit threat.

For example, in *McNeilus Truck & Mfg., Inc. v. Ohio ex rel. Montgomery*, 226 F.3d 429 (6th Cir. 2000), the plaintiff challenged Ohio's requirements for licensing vehicle remanufacturers, alleging that new standards "subject it to possible criminal prosecution there." *Id.* at 435. Plaintiff sued local prosecutors throughout the state. *Id.* at 437-38. Some prosecutors argued the court should dismiss the claims against them because "they ha[d] not 'threatened' prosecution." *Id.* at 438. The court disagreed, holding that "[s]ome county prosecutors are necessary as defendant parties in an action brought under *Ex parte Young* challenging the constitutionality of an Ohio criminal statute." *Id.* Here, too, "some prosecutors" are "necessary defendant parties" in a challenge to a Tennessee statute, for which violations may be criminally prosecuted.

Similarly, in *Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 210 (6th Cir. 1997), the Sixth Circuit held that local prosecutors were proper parties to an abortion law challenge even absent threats to prosecute. The local prosecutors were proper parties because they "*could* charge plaintiff [], who performs abortions in Montgomery County, with violating the Act." *Id.* at 210 (emphasis added). The court looked to the prosecutors' "statutorily defined duties," not any threats of prosecution. *Id.* at 211; *see also* (Mem. Op., R. 236, PageID# 3241); *EMW*

22

*Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 445-46 (6th Cir. 2019) (contrasting role of attorney general, who was not a proper party in constitutional challenge to statute he had not threatened to enforce, with local prosecutors, who the "legislature has charged . . . with [the law's] enforcement").

The State Defendants' suggestion that ULC Monastery ministers have no reason to fear prosecution—without disavowing an intent to prosecute—is not credible. "The Supreme Court has instructed us that a threat of prosecution is credible when a plaintiff's intended conduct runs afoul of a criminal statute and the Government fails to indicate affirmatively that it will *not* enforce the statute." *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 687 (7th Cir. 1998) (emphasis in original) (citing *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988)); *see also N.H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996) ("[C]ourts will assume a credible threat of prosecution in the absence of compelling contrary evidence."); *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1502 (10th Cir. 1995) (credible threat of prosecution where state had "not affirmatively disavowed any intention of bringing criminal prosecution"). Viewed in the context of the Attorney General's repeated proclamations that Plaintiffs are unfit to solemnize marriages, the State Defendants' refusal to disavow any intent to enforce criminal prohibitions against them is "especially substantial." *Kiser v. Reitz*, 765 F.3d 601,

23

609 (6th Cir. 2014) (letters to plaintiffs about their conduct supported credible threat of enforcement).

The State Defendants argue the District Court erred in relying on this line of authority, however, because Tenn. Code Ann. § 36-3-301 "is not a criminal statute" and so "Plaintiffs' intended conduct does not 'run afoul of a criminal statute.'" State Defs.' Br. at 23. This argument elevates form over substance. A minister who solemnizes a marriage in violation of the statute necessarily violates Tenn. Code Ann. § 39-16-504(a)(1), which criminalizes the "mak[ing of] a false entry in . . . a government record." By signing and returning a marriage license, as required by state law, a minister certifies that they performed the marriage: If that person knows he or she is not authorized to perform marriages, that is a "false entry." The State Defendants cite no authority to support that a threat of prosecution is any less credible simply because violation of the challenged statute could lead to criminal prosecution under a separately codified statute. Indeed, any such distinction would prevent numerous pre-enforcement constitutional challenges.

*Zielasko v. State of Ohio*, 873 F.2d 957 (6th Cir. 1989), illustrates these points. The Ohio Constitution imposes a mandatory retirement age on judges. *Id.* at 958. An incumbent judge wanted to run for reelection despite exceeding the retirement age; in order to do so, however, he would have needed to file a

24

declaration of candidacy averring that he was "a qualified candidate for the office he or she is seeking" under "the threat of criminal penalty for 'election falsification.'" *Id.* at 959. Although the certification statutes "do not refer to age," the district court held that "by signing a declaration of candidacy [the judge] would be subject to the real and immediate (not merely conjectural or hypothetical) harm of criminal penalty." *Id.* The fear of prosecution for filing an arguably false certification sufficed to establish both standing and the applicability of the *Ex parte Young* exception. *Id.* This was true despite the fact that the criminal penalty flowed from a separate statute than the age limitation itself—the Ohio Constitution, like the Act, "is not a criminal statute." That criminal penalties for violating the act flow from separate statutes is a distinction without a difference.

Not only have the State Defendants refused to disavow intent to prosecute ministers criminally, it has also has refused to stipulate to the law's unconstitutionality. The State Defendants admit that, even if the Court invalidates the "online ordination" language, it intends to continue discriminating against ULC Monastery ministers, who it believes are not sufficiently "regular" and lack the "care of souls." *See* (Def. Mem. in Supp. of Mot. Dismiss, R. 209, PageID# 2648-2649). While the ministers in this case sought ordination through ULC Monastery because it aligns with their spiritual beliefs (Decl. of Erin Patterson ¶ 3, R. 13, PageID# 85); (Decl. of Gabriel Biser ¶ 3, R. 14, PageID# 88), the State Defendants

25

seek license to pass judgment on their motives and spiritual sincerity. *See* State Defs.' Br. at 34-35. This continuing hostility and treatment of ULC Monastery as an inferior religion belie the State's efforts to minimize the threat of prosecution.

Finally, the District Court correctly recognized that the district attorneys are "'necessary in terms of injunctive relief' because 'if the District Court found the Act unconstitutional . . . the prosecutor would not have been bound by the injunction if he were not a party.'" (Mem. Op., R. 236, PageID# 3241 (quoting *Women's Med. Prof'l Corp.*, 130 F.3d at 210)).

3. **The Court Should Reject the State Defendants' Invitation to Adopt a Narrow, Impractical Standard Inconsistent with *Ex parte Young*.**

The core of the State Defendants' position is that *no* state official is subject to a suit to enjoin the Act—regardless of its discriminatory impact—because it "contains no enforcement mechanism." State Defs.' Br. at 5. And "enforcement," in the State Defendants' view, requires threatening or actually initiating criminal or other proceedings under the Act itself. *See id.* at 15, 18. That overly restrictive view is inconsistent with the law. *See, e.g.*, *Doe*, 910 F.3d at 848 ("lack of direct criminal enforcement authority does not foreclose [Plaintiff's] reliance on *Ex parte Young*"). This case is no different from *Citizens for Equal Protection*, where the court held the plaintiffs could sue state officials—including the attorney general— to enjoin Nebraska's constitutional amendment, even though the amendment "does

26

not require affirmative enforcement by any state official" because it "functions as a barrier to government action that [the amendment's challengers] desire." 455 F.3d at 864 (emphasis added).

The Act functions as a barrier to ULC Monastery ministers' right to solemnize legal marriages, and as explained below, the Church and its ministers have suffered concrete, constitutionally cognizable injury as a result. "It would be a perverse reading of *Young* to say that, although [plaintiff] might have an Article III injury . . . the Eleventh Amendment would nonetheless simultaneously bar" an injunction. *Russell*, 784 F.3d at 1047 (6th Cir. 2015). Under the State Defendants' constrained approach to *Ex parte Young*, any law without an "enforcement mechanism"—no matter how blatantly discriminatory and no matter how harmful (*i.e.* "Christianity is the official religion of Tennessee and non-believers are not welcome here")—would be shielded from constitutional review in a suit against state officials.

As the State Defendants have acknowledged, a suit under *Young* is particularly appropriate for a challenge a statute that regulates "rights and relationships of substantial public interest which cannot be readily protected in litigation between private parties." (Def. Mem. in Supp. of Mot. Dismiss, n.4, R. 209, PageID# 2644 (quoting *Allied Artists Pictures Corp. v. Rhodes*, 473 F. Supp. 560, 568 (S.D. Ohio 1979), *aff'd* 679 F.2d 656 (6th Cir. 1982))). Even so, the

State Defendants have argued that an *Ex parte Young* suit is not appropriate here because Plaintiffs' challenges to the Act may be resolved in litigation between private parties—either between married couples concerning the validity of a marriage or against a ULC Monastery minister for negligence. *See* State Defs.' Br. at 18; (Def. Mem. in Supp. of Mot. Dismiss, n.4, R. 209, PageID# 2644). These are not meaningful alternatives.

With respect to litigation between married couples, neither ULC Monastery nor the minister who performed the marriage would have any way of even learning of the litigation, let alone have a clear right to intervene to establish their rights. Alternatively, a ULC minister must perform a marriage the minister knows to be invalid, wait for the couple to learn the marriage was invalid, subject him or herself to liability in a suit for negligence or fraud, and then argue the Act is unconstitutional. The State Defendants' suggestion that ULC Monastery ministers should simply live with the inability to perform valid marriages (a right granted to ministers of virtually all other religions), subject themselves to criminal and civil liability, and hope the chance to challenge the constitutionally of the Act materializes someday is in clear conflict with the law.

**C.** **The Church and its Ministers Have Standing to Bring Their Claims.**

The District Court also correctly held that Respondents have standing to bring their claims. Article III requires that the plaintiff have "(1) suffered an injury

in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The State Defendants argue the first and third elements are missing based on "the same lack of enforcement that renders *Ex parte Young* inapplicable." State Defs.' Br. at 25-26. "By the impossible logic of the [State Defendants], the [Plaintiffs] will never have a prospective remedy for their injury, because there will never be standing, because there will never be causation, because the third parties who might challenge their [marriages] are always unknown until the opportunity for prospective relief has passed." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 367 (3d Cir. 2014) (*CPP I*) (plaintiffs had standing to challenge law that created threat of third-party suits against political candidates); *see also Const. Party of Pa. v. Cortes*, 824 F.3d 386, 396-99 (3d Cir. 2016) (*CCP II*) (subsequent appeal applying same rationale in context of *Ex parte Young*). But the State Defendants' position relies on mischaracterization of Plaintiffs' claims and an effort to misdirect focus to the merits. *See* (Mem. Op., R. 236, PageID# 3224-3231).

### 1. Plaintiffs Have Suffered a Cognizable Injury.

First, Plaintiffs have suffered a cognizable injury. "The effect of the new law is to publically deem ULC Monastery an invalid or subordinate religious organization," (Decl. of George Freeman ¶ 14, R. 40, PageID# 207), an injury

29

cognizable under the Establishment Clause of the First Amendment; *see Dumont v. Lyon*, 341 F. Supp. 3d 706, 721 (E.D. Mich. 2018) ("Feelings of marginalization and exclusion are cognizable forms of injury, particularly in the Establishment Clause context.") (internal quotation marks and citation omitted); *see also Washegesic v. Bloomingdale Pub. Schs.*, 33 F.3d 679, 682 (6th Cir. 1994) ("[U]se of governmental authority to encourage a sectarian religious view is a sufficient injury if directed toward the plaintiff."). Plaintiffs have also alleged injury under the Free Exercise Clause: The Act "burden[s] [their] religious beliefs by pressuring them to alter personalized conduct in which they regularly engage," i.e., to turn away couples to whom they would otherwise minister. *New Doe Child #1 v. Cong. of United States*, 891 F.3d 578, 585 (6th Cir. 2018). Finally, they have established injury under the Free Speech Clause because they claim "an interest in engaging in protected speech that . . . violates" the Act—performing a legal marriage ceremony as a minister ordained online. *See Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 769 F.3d 447, 451-52 (6th Cir. 2014).

The State argues Plaintiffs fail to establish injury because the statute "does not 'proscribe' any conduct at all." State Defs.' Br. at 27. To be clear, the Act provides that "persons receiving online ordinations may not solemnize the right of matrimony." Tenn. Code Ann. § 36-3-301(a)(2). ULC Monastery's ministers, including the individual plaintiffs, are persons who received ordination online and

wish to solemnize marriages.  Thus, Plaintiffs intend to "engage in a course of conduct" (*see* State Defs.' Br. at 27 (quoting *Kiser*, 765 F.3d at 608)), directly prohibited by the statute.  The State Defendants' argument to the contrary defies all logic.

The State Defendants also argue this conduct is not even "arguably affected with a constitutional interest" because there is no constitutional right to perform a marriage ceremony, and Plaintiffs may still perform "religious" ceremonies with no legal effect.  State Defs.' Br. at 27.  As the District Court recognized, however, these arguments "fundamentally misconstrue Plaintiffs' claims."  (Mem. Op., R. 236, PageID# 3225).  Plaintiffs do ***not*** assert a constitutional right to perform marriage ceremonies.  Rather, Plaintiffs core allegation is that where, as here, the state confers a right on clergy of one religion to the exclusion of clergy of another, it has unconstitutionally discriminated.  *Larson v. Valente*, 456 U.S. 228, 244 (1982) ("The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another.").  Any state could decline to extend the privilege of solemnizing legal marriages to ministers of all religions at any time; the constitutionally cognizable injury arises where, as here, the state has extended that benefit to only its favored religions.

The State Defendants also argue that ULC Monastery ministers suffer no injury because they may perform non-binding "religious" ceremonies, after which

31

a couple may "go[] to a public official for secular recognition."  State Defs.' Br. at 28.  The defendants in *Center for Inquiry, Inc. v. Marion Cir. Ct. Clerk*, 758 F.3d 869 (7th Cir. 2014) (*CFI*) made the same argument to justify exclusion of humanist leaders from those who may solemnize marriages, but the court recognized this argument "just restates the discrimination of which plaintiffs complain." *Id.* at 873.  While clergy of other religions "can solemnize their marriage in public ceremonies conducted by people who share their fundamental beliefs, [ULC Monastery ministers] cannot." *Id.*  Their "ability to carry out a sham ceremony, with the real business done in a back office, does not address the[ir] injury." *Id.* Plaintiffs have a constitutional right to perform marriages **on the same terms** as clergy and adherents subscribing to any other faith.[10]  Under the Act, ULC

---

[10] The State Defendants may attempt to distinguish *CFI* on a number of flawed bases, as they did before the District Court.  The State Defendants argued that Plaintiffs rely on the case to support "a protected interest in the authority to solemnize a marriage." (Def. Mem. in Supp. of Mot. Dismiss, n.6, R. 209, PageID# 2647).  Not so.  *CFI* confirms:  (1) states may not offer the right to solemnize marriages to adherents of one belief system to the exclusion of another, and (2) the ability to perform religious ceremonies with no legal significance does not negate this discrimination.  Plaintiffs have not relied on *CFI* for any other proposition.  The State Defendants also claimed in the district court that *CFI* "supports, at most, only an injury to a couple intending to be married." *Id.* But the only plaintiffs in the case were the quasi-religious entity (CFI) and one of its "celebrants" or ministers.  Perhaps most disingenuous, however, is the State Defendants' suggestion in the district court that *CFI* does not apply here because another court referred to it as an "outlier." (*Id.* at PageID# 2647, n.6 (citing *Real Alts., Inc. v. Sec'y Dep't of Health & Human Servs.*, 867 F.3d 338, 352 n.13 (3d Cir. 2017))).  That case identified *CFI* as an "outlier example of organized *secular* belief systems gaining protected treatment" because "the majority of precedent continues to support preferential treatment for religion under the law." 867 F.3d at 352 n.13 (emphasis added; citations and quotations omitted).  ULC Monastery

Monastery ministers cannot perform legally binding marriages like virtually all other religious ministers; that is cognizable injury.

The State also claims Plaintiffs fail to show injury because they have shown no "credible threat of prosecution." (Def. Mem. in Supp. of Mot. Dismiss, R. 209, PageID# 2646). But courts universally recognize that "[s]tanding is relaxed in the First Amendment context," including under the Free Exercise and Establishment Clauses. (Mem. Op., R. 236, PageID# 3227 (quoting *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 330 (6th Cir. 2013) (free exercise and free speech))); (*Lac Vieux Desert Band of Lake Super. Chippewa Indians v. Mich. Gaming Control Bd.*, 172 F.3d 397, 407 (6th Cir. 1999)). "[I]n a pre-enforcement review case under the First Amendment (like this one), courts do not closely scrutinize the plaintiff's complaint for standing when the plaintiff 'claims an interest in engaging in protected speech that implicates, if not violates'" the law at issue." *Platt*, 769 F.3d at 456 (citation omitted).

For Establishment Clause claims in particular, "the threshold for standing is a low one." *ACLU of Ky. v. Rowan Cty.*, 513 F. Supp. 2d 889, 900 (E.D. Ky. 2007) (citing *Washegesic*, 33 F.3d at 679). In such cases, "a plaintiff must show . . . that he is 'directly affected by the laws and practices against which [his]

---

is indisputably religious, not secular, and thus falls within the core protections of the Establishment and Free Exercise Clauses.

complaints are directed.'" *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018) (citation omitted). "Indeed, the Sixth Circuit has held that '[t]he use of governmental authority to encourage a sectarian religious view is a sufficient injury if directed toward the plaintiff.'" (Mem. Op., R. 236, PageID# 3227-28 (quoting *Adland v. Russ*, 307 F.3d 471, 478 (6th Cir. 2002))).

Moreover, where, as the State repeatedly claims here, a law lacks an "enforcement mechanism," the "threat of prosecution" requirement does not make sense and has not been applied. For example, in *Trump v. Hawaii*, the plaintiffs argued that President Trump's "travel ban" violated the Establishment Clause by establishing Islam as a "disfavored faith." 138 S. Ct. at 2416. The plaintiffs demonstrated injury *not* by showing a credible threat of enforcement against them but because the ban might keep them separated from relatives who wished to enter the country. *Id.* The *Trump* case presents a common scenario in the context of religious freedom. The Government did not threaten to enforce the ban against the plaintiffs. And the government does not "prosecute" or "enforce" religious displays or legislative prayer. But courts routinely find individuals affected by those practices have standing to challenge them. *See e.g. ACLU of Ohio Found., Inc. v. DeWeese*, 633 F.3d 424, 429 (6th Cir. 2011) ("In suits bought under the Establishment Clause, 'direct and unwelcome' contact with the contested object demonstrates psychological injury in fact sufficient to confer standing."); *Bormuth*

*v. Cty. of Jackson*, 870 F.3d 494 (6th Cir. 2017) (entertaining county citizen's suit challenging legislative prayer without discussion of standing).

In any case, county clerks have "enforced" the Act by refusing to issue marriage licenses, and ULC Monastery minsters have reason to fear prosecution for performing unauthorized marriages. *See Zielasko*, 873 F.2d at 959 (holding fear of prosecution for filing potentially false certification established standing); (Mem. Op., R. 236, PageID# 3227 (In evaluating "whether a First Amendment plaintiff faces a credible threat of prosecution, the evidentiary bar that must be met is extremely low.") (quoting *Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003))). But those threats are not necessary for Plaintiffs to establish standing. The Act declares—and the State repeatedly affirms to this Court—that the State views Plaintiffs' practice as a second-class religion. Further, the Act has the tangible effect of denying ULC Monastery ministers a right that the State extends to other religions. *That* injury is cognizable, has already occurred, and is ongoing.

The State Defendants' only response is to argue that the state may "enact neutral laws that affect denominations differently," and despite its plain text, the Act does not "expressly discriminate." State Defs.' Br. at 30. But as the District Court properly recognized, "that argument 'depends on the scope of plaintiffs' Establishment Clause rights' and 'concerns the merits rather than the justiciability of plaintiffs' claims.'" (Mem. Op., R. 236, PageID# 3229 (quoting *Trump*, 138 S.

35

Ct. at 2416 (rejecting argument that plaintiffs have no "legally protected interest in the admission of particular foreign nationals" as premature merits argument))).

Plaintiffs have not only alleged cognizable injury based on religion but also freedom of expression. *See Kaahumanu v. Hawaii*, 682 F.3d 789, 799 (9th Cir. 2012) ("We have no difficulty concluding that wedding ceremonies are protected expression under the First Amendment."). The Act bars those ordained online from performing legal ceremonies, and there is "a judicial prediction or assumption that the policy's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" *Faith Baptist Church*, 522 F. App'x at 330 (quoting *Berner v. Delahanty*, 129 F.3d 20, 24 (1st Cir. 1997)). Indeed, the Act has chilled expression by causing ULC Monastery ministers to decline requests to perform marriage ceremonies. *See* (Mem. Op., R. 236, PageID# 3218); (Decl. of Erin Patterson ¶ 6, R. 13, PageID# 85-86).

**2.     A Permanent Injunction Would Redress Plaintiffs' Injuries.**

Plaintiffs have also demonstrated redressability, and the State Defendants' arguments to the contrary fail. "'[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury.'" *Doe*, 910 F.3d at 851 (emphasis added) (quoting *Larson*, 456 U.S. at 243 n.15).

First, the State Defendants argue that there is no relief for Plaintiffs to obtain against these defendants. State Defs.' Br. at 32-33. This Court rejected a similar argument in *Doe*, where the plaintiff sued Ohio's attorney general and Bureau of Criminal Investigation Superintendent to challenge the constitutionality of a statute that eliminated sex offenders' right to a reclassification hearing. 910 F.3d at 845-46. The Court "recognize[d] that the two Defendants, the Attorney General and the Superintendent, have no power to hold a reclassification hearing for Doe or force a court to hold one." *Id.* at 850. But "in addition to striking the laws as unconstitutional," the district court could order the defendants to remove the plaintiffs name from a database they maintained or refrain from requiring her to register until after an opportunity at reclassification. *Id.*

Similarly, the District Court here may, first and foremost, strike the Act as unconstitutional, but also order the Attorney General to withdraw and cease issuing opinions denigrating ULC Monastery. Or the District Court could order the Attorney General to direct county clerks to issue and record marriage license for ULC Monastery-officiated marriages, just as the Attorney General directed the clerks to issue marriage licenses for same-sex weddings.[11] And the District Court

---

[11] *See* (Decl. of Ambika Doran, Ex. E, R. 222-1, PageID# 3023-3024 (Tennessee Star, *Two Democrats in Tennessee General Assembly Sponsor Bill that Helps Attorney General Push Compliance with Supreme Court Decision on Same Sex Marriage in Tennessee*, Mar. 8, 2018, available at https://tennesseestar.com/2018/03/08/two-democrats-in-tennessee-general-

may order the district attorneys to refrain from prosecutions for violations of the Act. "'The power of the federal courts to remedy constitutional violations is flexible . . . and where such a violation has been found, the court should tailor the remedy to fit the nature and extent of the violation.'" *Doe*, 910 F.3d at 850-51 (quoting *United States v. Yonkers Bd. of Educ.*, 837 F.2d 1181, 1235 (2d Cir. 1987)). For the same basic reasons that the State Defendants have a sufficient connection with the Act under *Ex parte Young*, an injunction invalidating the Act against the State Defendants would redress Plaintiffs' injuries.

Second, the State Defendants argue that Plaintiffs' injuries are not redressable because, even if the Court enjoins the specific provisions Plaintiffs identified in the SAC, they would still discriminate against ULC Monastery and its ministers under a separate preexisting provision. In short, the State Defendants claim that Tenn. Code Ann. § 36-3-301(a)(1)—which Plaintiffs' SAC does not expressly ask the District Court to enjoin—prevents ULC Monastery ministers from solemnizing marriages because such ministers are not "regular ministers" with "the care of souls," as the Attorney General has opined. (Defs. Mem. in Supp. of Mot. Dismiss, R. 209, PageID# 21-22). Thus, the State Defendants claim

---

assembly-sponsor-bill-that-helps-attorney-general-push-compliance-with-supreme-court-decision-on-same-sex-marriage-in-tennessee/ (last visited May 19, 2021))).

the relief Plaintiffs have requested "would . . . not alter [Plaintiffs'] status under Tennessee Law."  (*Id.* at PageID# 22).

The Court should not credit the State Defendants' position that the General Assembly added specific provisions targeting the ULC Monastery when the law *already* prohibited the Church's ministers from solemnizing marriages, a position that would render 2019 Public Chapter 415 superfluous.  *United States v. Malone*, 889 F.3d 310, 312 (6th Cir. 2018) (courts should not construe statutory text to be "'superfluous, void, or insignificant'") (citation omitted).  Indeed, the legislature enacted the statute because it believed the validity of ULC Monastery-solemnized marriages was "not clear under the eyes of the law."[12]

More importantly, the State Defendants' argument is not a basis for dismissal—if accepted, it is the basis for an amendment to the complaint, to add *any* provision of law that the State now claims provides the basis to discriminate against ULC Monastery, as is its intent.  *See Donald v. Wilson*, 847 F.2d 1191, 1198 (6th Cir. 1988) (federal rules allow the parties "to get to the heart of the

---

[12] *An Act to amend Tennessee Code Annotated, Section 36-3-301, relative to persons who may solemnize* marriages:  Apr. 4, 2019 House Floor Sess., 2019 Leg., 111th Sess. (Tenn. 2019) (statement of Rep. Michael G. Curcio), video available at: http://tnga.granicus.com/MediaPlayer.php?view_id=414&clip_id=17075, statement appearing at 1:45:19-1:47:16 (Decl. of Robert E. Miller, Ex. E (video), R. 16-1), PageID# 94).

matter and not have relevant issues obscured by pleading niceties"), *abrogated on other grounds by Green v. Bock Laundry Mach. Co.*, 109 S. Ct. 1981 (1989).  The State Defendants complain that the District Court did not "engage" with this argument (State Defs. Br. at 35), but given that it hinges entirely on easily overcome pleading technicalities, the argument warrants no engagement.[13]

The State Defendants' redressability arguments with respect to the Attorney General are also contradictory and underscore the need for an injunction against him.  The State Defendants first claim that an injunction would be useless because the Attorney General has no connection to Tennessee's marriage ordination law.  But they go on to assert that, even if recent additions to the law are struck down, ULC Monastery ministers still may not solemnize legal marriages **because the Attorney General's opinions say so**.  *See* State Defs.' Br. at 33-34.  The State Defendants cannot escape the Attorney General's role in the discrimination Plaintiffs' seek to redress, and in fact, their briefing perpetuates it.

## VI.   CROSS APPEAL

While the District Court denied dismissal of the Attorney General and the district attorneys, it granted dismissal of the claims against Governor Bill Lee.

---

[13] Notably, the defendant in *Universal Life Church v. Utah*, 189 F. Supp. 2d 1302 (D. Utah 2002) made the same failed arguments.  *See* (Mem. Op., R. 236, PageID# 3230-31).

Because this Court has indicated that the Governor may be a proper party under *Ex parte Young* in a suit to enjoin a statute in the absence of another suitable defendant, Plaintiffs appealed the District Court's ruling only to the extent this Court concludes that no other defendant is a proper party.

**A.      The Governor is a Proper Party if All Other Defendants are Dismissed.**

The Governor is charged with taking "care that the laws be faithfully executed," TENN. CONST., art. III, § 10, and in that role, he is a proper party in a suit to enjoin an unconstitutional statute, particularly where there is no clear alternative defendant.

In *Allied Artists Picture Corp. v. Rhodes*, 679 F.2d 656 (6th Cir. 1982), motion picture distributors and producers sued the Ohio governor to challenge a statute regulating motion picture marketing. *Id.* at 658-59. The Sixth Circuit held that "[e]ven in the absence of specific state enforcement provisions, the substantial public interest in enforcing the trade practices legislation involved here places a significant obligation upon the Governor to use his general authority to see that state laws are enforced." *Id.* at 665 n.5. As a result, the court found "that the Governor has sufficient connection with the enforcement of the Act" to be sued. *Id.* The court relied on an Ohio constitutional provision similar to article III, § 10 of the Tennessee Constitution, which requires the governor to take "care that the

41

laws be faithfully executed." *Id.* Crucially, the court noted that a contrary result would force the plaintiffs to endure hardship to challenge the law:

> Were this action unavailable to the plaintiffs, they would be unable to vindicate the alleged infringement of their constitutional rights without first violating an Ohio statute requiring a significant change in their business conduct. *Such a result is clearly what the doctrine in Ex Parte Young was in part designed to avoid*.

*Id.* (emphasis added); *see also Doe v. Haslam*, 2017 WL 5187117, at *9 (M.D. Tenn. Nov. 9, 2017) ("The Sixth Circuit . . . has [] recognized the special role served by governors as *Ex parte Young* defendants in actions to challenge the constitutionality of state laws, particularly where there is no clear alternative defendant who bears sole responsibility for the law's administration.") (citing *Allied Artists*, 679 F.2d 656); *cf. LensCrafters, Inc. v. Sundquist*, 184 F. Supp. 2d 753, 758-59 (M.D. Tenn. 2002) (dismissing governor where single body had clear enforcement authority); *Luckey v. Harris*, 860 F.2d 1012, 1016 (11th Cir. 1988) (relying in part on state constitutional provision providing "the governor is responsible for law enforcement in that state and is charged with executing the laws faithfully" to conclude governor was an "appropriate part[y] against whom prospective relief could be ordered").

The reasoning in *Allied Artists* applies here with equal force. The Act involves the State's regulation of marriage, which the State Defendants claim the State has "'an absolute right'" to regulate (Def. Mem. in Supp. of Mot. Dismiss, R.

209, PageID# 2630) and implicates marriage—a state interest of the highest order

(citation omitted). *See Randolph v. Randolph*, 937 S.W.2d 815, 821 (Tenn. 1996)

("[T]he State has an interest and is a party to every marriage."). The State

Defendants and the county clerks disavow any role with respect to the Act, and if

the Court accepts their arguments, only a suit against the governor could "vindicate

the alleged infringement of [Plaintiffs'] constitutional rights." *Allied Artists*, 679

F.2d at 665 n.5. If proceeding against the Governor is proper to avoid forcing

plaintiffs to violate a "statute requiring a significant change in their business

conduct," (*Allied Artists*, 679 F.2d at 665 n.5), then such an action is even more

essential to avoid forcing ULC Monastery and its ministers to alter their ***religious***

conduct.

The Court should not reverse the District Court's ruling that the attorney

general, district attorneys, and county clerks are proper defendants under *Ex parte*

*Young*. But if it does, the Court should reverse the District Court's dismissal of

the Governor to avoid "perverse reading of *Young*," *Russell*, 784 F.3d at 1047, that

would bar an injunction despite the Plaintiffs' clear Article III injury.

## VII.  CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court affirm the

District Court's ruling denying the State Defendants' motion to dismiss to the

attorney general and district attorneys as parties. If the Court determines that the

43

attorney general, district attorneys, and county clerks are not proper parties to this action, Plaintiffs respectfully request that the Court reverse the District Court's dismissal of Governor Bill Lee.

RESPECTFULLY SUBMITTED this 20th day of May, 2021.

**ADAMS AND REESE LLP**

By:*/s/ Rocklan W. King III*

**Rocklan W. King III** (BPR No 030643)
424 Church Street, Suite 2700
Nashville, TN 37219
Phone: (615) 259-1450; Fax: (615) 259-1470
rocky.king@arlaw.com

**Lucian T. Pera** (BPR No. 11641)
Crescent Center
6075 Poplar Avenue, Suite 700
Memphis, TN 38119
Phone: (901) 524-5278; Fax: (901) 524-5378
lucian.pera@arlaw.com

**DAVIS WRIGHT TREMAINE LLP**

**Bruce E.H. Johnson**
(WSBA No. 7667)
**Ambika K. Doran**
(WSBA No. 38237)
**Robert E. Miller**
(WSBA No. 46507)
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Phone: (206) 622-3150; Fax: (206) 757-7700
brucejohnson@dwt.com
ambikadoran@dwt.com
robertmiller@dwt.com

*Attorneys for Plaintiffs Universal Life Church Monastery Storehouse, Erin Patterson, and Gabriel Biser*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,464 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5-6) because this brief has been prepared in a proportionately spaced typeface using Times New Roman 14-point font.

Date:  May 20, 2021

*/s/ Rocklan King*

# CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2021, I electronically filed the foregoing

with the Clerk of the Court for the United States Court of Appeals for the Ninth

Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by

the appellate CM/ECF system.

Date: May 20, 2021

/s/ *Rocklan King*

# DESIGNATION OF COURT DOCUMENTS

*Universal Life Church Monastery Storehouse, et al. v. Nabors, et al.*,
No. 2:19-Cv-00049 (M.D. Tenn.)

| Docket Entry No. | Description | Page ID. # |
|---|---|---|
| 1 | Complaint for Declaratory and Injunctive Relief | 1-19 |
| 13 | Declaration of Erin Patterson in Support of Plaintiffs' Motion for Temporary Restraining Order to Enjoin Enforcement of Tennessee Statute 36-3-301, as amended by Tennessee 2019 Public Chapter 415 | 84-86 |
| 14 | Declaration of Gabriel Biser in Support of Plaintiffs' Motion for Temporary Restraining Order to Enjoin Enforcement of Tennessee Statute 36-3-301, as amended by Tennessee 2019 Public Chapter 415 | 87-89 |
| 16 | Declaration of Robert E. Miller in Support of Plaintiffs' Motion for Temporary Restraining Order to Enjoin Enforcement of Tennessee Statute 36-3-301, as amended by Tennessee 2019 Public Chapter 415 | 93-95 |
| 16-1 | Exhibits A-I to Declaration of Robert E. Miller in Support of Plaintiffs' Motion for Temporary Restraining Order to Enjoin Enforcement of Tennessee Statute 36-3-301, as amended by Tennessee 2019 Public Chapter 415 | 96-135 |
| 23 | Motion of Williamson County Clerk Elaine Anderson, Hamilton County Clerk William K. Knowles, and Rutherford County Clerk Lisa Duke Crowell to be Excused from July 3, 2019 Hearing | 152-156 |
| 40 | Declaration of George Freeman in Support of Plaintiffs' Motion for Temporary Restraining Order to Enjoin Enforcement of Tennessee | 203-208 |

| Docket Entry No. | Description | Page ID. # |
|---|---|---|
|  | Statute 36-3-301, as amended by Tennessee 2019 Public Ch. 415 |  |
| 53 | Order | 318-319 |
| 80 | Second Amended Complaint for Declaratory and Injunctive Relief | 476-498 |
| 116-6 | Tenn. Att'y Gen. Op. 90-49 (Apr. 9, 1990) | 884-888 |
| 144-1 | Affidavit of Wayne Nabors | 1488-1503 |
| 194 | Order | 2560-2562 |
| 206 | Rutherford County Clerk Lisa Crowell's Motion to Dismiss | 2594-2597 |
| 207 | Rutherford County Clerk Lisa Crowell's Memorandum of Law in Support of Motion to Dismiss | 2598-2623 |
| 208 | State Defendants' Motion to Dismiss Second Amended Complaint | 2624-2627 |
| 209 | Memorandum of Law in Support of State Defendants' Motion to Dismiss Second Amended Complaint | 2628-2655 |
| 209-1 | September 10, 2019 Transcript Excerpts of Deposition of Gabriel Edward Biser | 2656-2673 |
| 209-2 | September 11, 2019 Transcript Excerpts of Deposition of Erin Michelle Patterson | 2674-2696 |
| 209-3 | September 13, 2019 Transcript Excerpts of Deposition of Gale E. Plumm, III | 2697-2707 |
| 209-4 | Order on Defendant's Constitutional Challenge of Tenn. Code Ann. § 36-3-301(a)(2) | 2709-2712 |
| 209-5 | Plaintiffs' Disclosures | 2713-2718 |
| 209-6 | September 13, 2019 Transcript Excerpts of Deposition of Timeaka Sean Farris | 2719-2728 |
| 210 | Williamson County Clerk Elaine Anderson's Motion to Dismiss | 2729-2732 |

| Docket Entry No. | Description | Page ID. # |
|---|---|---|
| **211** | Williamson County Clerk Elaine Anderson's Memorandum of Law in Support of Motion to Dismiss | **2733-2759** |
| **211-1** | Unreported cases | **2760-2817** |
| **212** | Putnam County Clerk Wayne Nabors' Motion to Dismiss | **2818-2821** |
| **213** | Putnam County Clerk Wayne Nabors' Memorandum of Law in Support of Motion to Dismiss | **2822-2849** |
| **215** | Motion to Dismiss of William F. Knowles, Hamilton County Clerk | **2851-2852** |
| **216** | Memorandum of Law in Support of Motion to Dismiss of William F. Knowles, Hamilton County Clerk | **2853-2875** |
| **216-1** | Attorney General Opinions and Cases | **2876-2921** |
| **222** | Brief of Plaintiffs Universal Life Church Monastery Storehouse, Gale Plumm, Timeaka Farris, Erin Patterson, and Gabriel Biser in Response to State Defendants' Motions to Dismiss | **2935-2968** |
| **222-1** | Declaration of Ambika Doran in Support of Brief of Plaintiffs Universal Life Church Monastery Storyhouse, Gale Plumm, Timeaka Farris, Erin Patterson, and Gabriel Biser in Response to State Defendants' Motions to Dismiss | **2969-3042** |
| **222-2** | Declaration of Michael Veal in Support of Plaintiffs' Opposition to State Defendants' Motion to Dismiss | **3043-3046** |
| **223** | Brief of Plaintiffs Universal Life Church Monastery Storehouse, Gale Plumm, Timeaka Farris, Erin Patterson, and Gabriel Biser in | **3047-3079** |

| Docket Entry No. | Description | Page ID. # |
|---|---|---|
| | Response to Clerk Defendants' Motions to Dismiss | |
| 224 | Reply Brief of Putnam County Clerk Wayne Nabors to Brief of Plaintiffs in Response to Clerk Defendants' Motions to Dismiss | 3080-3087 |
| 225 | Williamson County Clerk Elaine Anderson's Reply Brief | 3088-3094 |
| 226 | Reply in Support of State Defendants' Motion to Dismiss Second Amended Complaint | 3095-3102 |
| 227 | Rutherford County Clerk Lisa Crowell's Reply to Plaintiffs' Brief in Response to Motion to Dismiss | 3103-3110 |
| 229 | Reply of William Knowles in Support of Motion to Dismiss | 3181-3187 |
| 229-1 | Exhibit A in Support of Reply of William Knowles in Support of Motion to Dismiss | 3188-3189 |
| 229-2 | Exhibit B in Support of Reply of William Knowles in Support of Motion to Dismiss | 3190-3199 |
| 236 | Memorandum Opinion | 3215-3246 |
| 237 | Order | 3247-3248 |
| 239 | State Defendants' Notice of Appeal | 3253-3256 |
| 241 | Notice of Appeal filed by Williamson County Clerk Elaine Anderson | 3263-3265 |
| 242 | Notice of Appeal Filed on Behalf of Rutherford County Clerk Lisa Duke Crowell | 3266-3268 |
| 244 | Notice of Appeal Filed by Hamilton County Clerk William Knowles | 3270-3271 |
| 245 | Notice of Appeal Filed by Putnam County Clerk Wayne Nabors | 3272-3275 |
| 252 | Plaintiff Universal Life Church Monastery Storehouse, Erin Patterson, and Gabriel Biser's Notice of Filing of Cross Appeal | 3292-3295 |