21-5055, 21-5057, 21-5058, 21-5059, 21-5100

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

UNIVERSAL LIFE CHURCH MONASTERY STOREHOUSE, et al.,

*Plaintiffs and Appellees,*

v.

WAYNE NABORS, et al.,

*Defendants and Appellants.*

On Appeal from the United States District Court
for the Middle District of Tennessee
Case No. 2:19-cv-00049

BRIEF OF APPELLEES UNIVERSAL LIFE CHURCH MONASTERY
STOREHOUSE, ERIN PATTERSON, AND GABRIEL BISER IN RESPONSE
TO BRIEFS OF CLERK DEFENDANTS

<table>
<tr><td>

ADAMS AND REESE LLP

Rocklan W. King III
(BPR No 030643)
424 Church Street, Suite 2700
Nashville, TN 37219

Lucian T. Pera
(BPR No. 11641)
Crescent Center
6075 Poplar Avenue, Suite 700
Memphis, TN 38119

</td><td>

DAVIS WRIGHT TREMAINE LLP

Bruce E.H. Johnson
(WSBA No. 7667)
Ambika K. Doran
(WSBA No. 38237)
Robert E. Miller
(WSBA No. 46507)
920 Fifth Avenue, Suite 3300
Seattle, WA 98104

</td></tr>
</table>

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 21-5048      Case Name: Universal Life, et al. v. Nabors, et al.

Name of counsel: Ambika Kumar Doran

Pursuant to 6th Cir. R. 26.1, Erin Patterson
*Name of Party*

makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No

## CERTIFICATE OF SERVICE

I certify that on      May 20, 2021      the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Ambika Kumar Doran
Davis Wright Tremaine LLP
Attorneys for Appellees

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

**6th Cir. R. 26.1**
**DISCLOSURE OF CORPORATE AFFILIATIONS**
**AND FINANCIAL INTEREST**

(a) **Parties Required to Make Disclosure.** With the exception of the United States government or agencies thereof or a state government or agencies or political subdivisions thereof, all parties and amici curiae to a civil or bankruptcy case, agency review proceeding, or original proceedings, and all corporate defendants in a criminal case shall file a corporate affiliate/financial interest disclosure statement. A negative report is required except in the case of individual criminal defendants.

(b) **Financial Interest to Be Disclosed.**

(1) Whenever a corporation that is a party to an appeal, or which appears as amicus curiae, is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, counsel for the corporation that is a party or amicus shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the parent corporation or affiliate and the relationship between it and the corporation that is a party or amicus to the appeal. A corporation shall be considered an affiliate of a publicly owned corporation for purposes of this rule if it controls, is controlled by, or is under common control with a publicly owned corporation.

(2) Whenever, by reason of insurance, a franchise agreement, or indemnity agreement, a publicly owned corporation or its affiliate, not a party to the appeal, nor an amicus, has a substantial financial interest in the outcome of litigation, counsel for the party or amicus whose interest is aligned with that of the publicly owned corporation or its affiliate shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the publicly owned corporation and the nature of its or its affiliate's substantial financial interest in the outcome of the litigation.

(c) **Form and Time of Disclosure.** The disclosure statement shall be made on a form provided by the clerk and filed with the brief of a party or amicus or upon filing a motion, response, petition, or answer in this Court, whichever first occurs.

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 21-5048        Case Name: Universal Life, et al. v. Nabors, et al.

Name of counsel: Ambika Kumar Doran

Pursuant to 6th Cir. R. 26.1, Universal Life Church Monastery Storehouse
*Name of Party*
makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No

## CERTIFICATE OF SERVICE

I certify that on _____ May 20, 2021 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Ambika Kumar Doran
Davis Wright Tremaine LLP
Attorneys for Appellees

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

# 6th Cir. R. 26.1
## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

(a) **Parties Required to Make Disclosure.** With the exception of the United States government or agencies thereof or a state government or agencies or political subdivisions thereof, all parties and amici curiae to a civil or bankruptcy case, agency review proceeding, or original proceedings, and all corporate defendants in a criminal case shall file a corporate affiliate/financial interest disclosure statement. A negative report is required except in the case of individual criminal defendants.

(b) **Financial Interest to Be Disclosed.**

(1) Whenever a corporation that is a party to an appeal, or which appears as amicus curiae, is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, counsel for the corporation that is a party or amicus shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the parent corporation or affiliate and the relationship between it and the corporation that is a party or amicus to the appeal. A corporation shall be considered an affiliate of a publicly owned corporation for purposes of this rule if it controls, is controlled by, or is under common control with a publicly owned corporation.

(2) Whenever, by reason of insurance, a franchise agreement, or indemnity agreement, a publicly owned corporation or its affiliate, not a party to the appeal, nor an amicus, has a substantial financial interest in the outcome of litigation, counsel for the party or amicus whose interest is aligned with that of the publicly owned corporation or its affiliate shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the publicly owned corporation and the nature of its or its affiliate's substantial financial interest in the outcome of the litigation.

(c) **Form and Time of Disclosure.** The disclosure statement shall be made on a form provided by the clerk and filed with the brief of a party or amicus or upon filing a motion, response, petition, or answer in this Court, whichever first occurs.

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 21-5048      Case Name: Universal Life, et al. v. Nabors, et al.

Name of counsel: Ambika Kumar Doran

Pursuant to 6th Cir. R. 26.1, Gabriel Biser
*Name of Party*
makes the following disclosure:

1.     Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No

2.     Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No

### CERTIFICATE OF SERVICE

I certify that on _____ May 20, 2021 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Ambika Kumar Doran
Davis Wright Tremaine LLP
Attorneys for Appellees

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

# 6th Cir. R. 26.1
## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

    (a) **Parties Required to Make Disclosure.** With the exception of the United States government or agencies thereof or a state government or agencies or political subdivisions thereof, all parties and amici curiae to a civil or bankruptcy case, agency review proceeding, or original proceedings, and all corporate defendants in a criminal case shall file a corporate affiliate/financial interest disclosure statement. A negative report is required except in the case of individual criminal defendants.

    (b) **Financial Interest to Be Disclosed.**

    (1) Whenever a corporation that is a party to an appeal, or which appears as amicus curiae, is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, counsel for the corporation that is a party or amicus shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the parent corporation or affiliate and the relationship between it and the corporation that is a party or amicus to the appeal. A corporation shall be considered an affiliate of a publicly owned corporation for purposes of this rule if it controls, is controlled by, or is under common control with a publicly owned corporation.

    (2) Whenever, by reason of insurance, a franchise agreement, or indemnity agreement, a publicly owned corporation or its affiliate, not a party to the appeal, nor an amicus, has a substantial financial interest in the outcome of litigation, counsel for the party or amicus whose interest is aligned with that of the publicly owned corporation or its affiliate shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the publicly owned corporation and the nature of its or its affiliate's substantial financial interest in the outcome of the litigation.

    (c) **Form and Time of Disclosure.** The disclosure statement shall be made on a form provided by the clerk and filed with the brief of a party or amicus or upon filing a motion, response, petition, or answer in this Court, whichever first occurs.

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ......................................................................................1

II.   STATEMENT OF ISSUES ......................................................................2

III.  STATEMENT OF THE CASE .................................................................2

    A.    Factual Background.........................................................................2

        1.    ULC Monastery and Discrimination in Tennessee.....................2

        2.    Tennessee's Marriage Ordination Law.......................................6

        3.    Impact of the New Law on ULC Monastery and its
             Ministers.....................................................................................8

    B.    Procedural Background .................................................................10

IV.   SUMMARY OF THE ARGUMENT .....................................................11

V.    ARGUMENT.........................................................................................13

    A.    Standard of Review ......................................................................13

    B.    The Church and its Ministers Have Standing to Sue the Clerks.........15

        1.    Injury in Fact.............................................................................15

        2.    Traceability ...............................................................................18

        3.    Redressability............................................................................22

        4.    Multiple Courts have invalidated Marriage Ordination
             Statutes with Clerks as Defendants...........................................25

        5.    ULC Monastery has Associational and Direct Standing. .........30

    C.    Plaintiffs' Claims are Ripe ...........................................................32

    D.    Under *Ex parte Young*, The Clerks Are Not Immune from a
        Suit to Enjoin Them from Implementing an Unconstitutional
        Statute. .........................................................................................34

i

E.     *Monell* Does not Apply Because Plaintiffs are Challenging State Law, Not Seeking to Hold Any Municipality Liable.................42

F.     Plaintiffs have Stated a Valid Claim under Rule 12(b)(6). .................45

G.     Putnam County Clerk Wayne Nabors Used His Position to Discriminate Against ULC Monastery Ministers and Couples, and He Is a Proper Defendant Regardless of the Other Clerks' Arguments. ...................................................................................46

H.     The Court Should Exercise Supplemental Jurisdiction over Plaintiffs' State Constitutional Claims..............................................47

VI.    CONCLUSION.......................................................................................47

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*ACLU of Ky. v. Rowan Cty.*,
  513 F. Supp. 2d 889 (E.D. Ky. 2007) ..................................................15

*Adland v. Russ*,
  307 F.3d 471 (6th Cir. 2002) ............................................................17

*Ammex, Inc. v. Cox*,
  351 F.3d 697 (6th Cir. 2003) .......................................................13, 14

*Arnold v. Metro. Gov't of Nashville & Davidson Cty.*,
  No. CIV 3:09CV0163, 2009 WL 2430822 (M.D. Tenn. Aug. 6, 2009) ...........43

*Barachkov v. 41B Dist. Court*,
  311 F. App'x 863 (6th Cir. 2009) ..................................................44, 45

*Bevan & Associates, LPA v. Dewine*,
  No. 2:16-CV-0746, 2017 WL 2599225 (S.D. Ohio June 15, 2017)..................37

*Bostic v. Schaefer*,
  760 F.3d 352 (4th Cir. 2014) ...........................................................36

*Carrick v. Snyder*,
  15-CV-10108, 2016 WL 520942 (E.D. Mich. Feb 10, 2016) ..........................29

*Center for Inquiry, Inc. v. Bean*,
  Case No. 16-CV-2229 (C.D. Ill., Oct. 17, 2016)..........................26, 27, 34, 45

*Center for Inquiry, Inc. v. Lyons*,
  Case No. 1:18-CV-609, Order, Dkt. 50 (W.D. Mich. March 25, 2020) ............28

*Center for Inquiry, Inc. v. Marion Cir. Ct. Clerk*,
  758 F.3d 869 (7th Cir. 2014) .......................................................25, 27

*Children's Healthcare is a Legal Duty v. Deters*,
  92 F.3d 1412 (6th Cir. 1996) ...........................................................41

*City Commc'ns, Inc. v. City of Detroit*,
  888 F.2d 1081 (6th Cir. 1989) .........................................................15

*City of Herriman v. Bell*,
    590 F.3d 1176 (10th Cir. 2010) ...................................................................23, 24

*Coal. to Defend Affirmative Action v. Brown*,
    674 F.3d 1128 (9th Cir. 2012) ..............................................................................38

*Const. Party of Pa. v. Aichele*,
    757 F.3d 347 (3d Cir. 2014) (*CPP I*)...................................................................19

*Const. Party of Pa. v. Cortes*,
    824 F.3d 386 (3d Cir. 2016) ...........................................................................39, 40

*Ctr. for Inquiry, Inc. v. Warren*,
    No. 19-11029, 2021 WL 528575 (5th Cir. Feb. 10, 2021)................................28

*Ctr. for Inquiry, Inc. v. Warren*,
    No. 3:18-CV-2943-B, 2019 WL 3859310 (N.D. Tex. Aug. 16,
    2019), *appeal filed*, Sept. 17, 2019.............................................................27, 28

*Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty.*,
    274 F.3d 377 (6th Cir. 2001) ...............................................................................32

*Doe v. DeWine*,
    910 F.3d 842 (6th Cir. 2018) ...............................................................................41

*Durham v. McWhorter*,
    789 Fed. App'x 533 (6th Cir. 2020) ...................................................................38

*Elrod v. Burns*,
    427 U.S. 347 (1976)................................................................................................16

*Ermold v. Davis*,
    936 F.3d 429 (6th Cir. 2019) .........................................................................35, 36

*Finberg v. Sullivan*,
    634 F.2d 50 (3d Cir. 1980) ...........................................................13, 18, 20, 39

*Franks v. Ky. Sch. for the Deaf*,
    142 F.3d 360 (6th Cir. 1998) ...............................................................................14

*Harbison v. Little*,
    No. 3:06-CV-01206, 2007 WL 6887552 (M.D. Tenn. July 19, 2007)..............37

*Haskell v. Washington Twp.*,
864 F.2d 1266 (6th Cir. 1988) ...................................................................29

*Hewitt v. Helms*,
482 U.S. 755 (1987)...................................................................................29

*Hill v. Snyder*,
878 F.3d 193 (6th Cir. 2017) ....................................................................32

*Hutchison v. Metro. Gov't of Nashville & Davidson Cty.*,
685 F. Supp. 2d 747 (M.D. Tenn. 2010) ...................................................43

*Jones v. City of Cincinnati*,
521 F.3d 555 (6th Cir.2008) .....................................................................14

*Jones v. Perry*,
215 F. Supp. 3d 563 (E.D. Ky. 2016) .......................................................36

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)...................................................................................21

*Marie v. Moser*,
65 F. Supp. 3d 1175 (D. Kan. 2014).........................................................36

*McNeil v. Cmty. Prob. Servs., LLC*,
945 F.3d 991 (6th Cir. 2019) .............................................................passim

*Miller v. Caudill*,
936 F.3d 442 (6th Cir. 2019) ....................................................................42

*Miller v. Davis*,
123 F. Supp. 3d 924 (E.D. Ky. 2015)..........................................36, 42, 44, 45

*Monell v. N.Y.C. Dep't of Soc. Servs.*,
436 U.S. 658 (1978)...........................................................................passim

*Nair v. Oakland Cty. Cmty. Mental Health Auth.*,
443 F.3d 469 (6th Cir. 2006) ..............................................................14, 34

*Nashville Cmty. Bail Fund v. Gentry*,
446 F. Supp. 3d 282 (M.D. Tenn. 2020) ..............................................36, 39

*Nat'l Audubon Soc'y, Inc. v. Davis*,
307 F.3d 835, as *amended on den. of reh'g,* 312 F.3d 416 (9th Cir. 2002) .......40

*Nat'l Rifle Ass'n of Am. v. Magaw*,
132 F.3d 272 (6th Cir. 1997) ...................................................................................32

*Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fla.*,
508 U.S. 656 (1993)...................................................................................................16

*Neighborhood Action Coal. v. City of Canton, Ohio*,
882 F.2d 1012 (6th Cir. 1989) .....................................................................30, 31

*Nova Health Sys. v. Gandy*,
416 F.3d 1149 (10th Cir. 2005) .........................................................................29

*Parsons v. U.S. Dep't of Justice*,
801 F.3d 701 (6th Cir. 2015) .......................................................................14, 46

*Pedreira v. Ky. Baptist Homes for Children, Inc.*,
579 F.3d 722 (6th Cir. 2009) .................................................................................13

*Peterson v. Lacabe*,
No. 10-CV-00059-WDM-MEH, 2010 WL 4220024 (D. Colo. Oct.
20, 2010), *aff'd sub nom. Peterson v. Martinez*, 707 F.3d 1197
(10th Cir. 2013)...........................................................................................................24

*Price v. Medicaid Director*,
838 F.3d 739 (6th Cir. 2016) ..................................................................................38

*Russell v. Lundergan-Grimes*,
784 F.3d 1037 (6th Cir. 2015) ......................................................................12, 37, 41

*Scott v. Dekalb Cty. Bd. of Elections & Voter Registration*,
No. 1:02-CV-1851-ODE, 2005 WL 8155742 (N.D. Ga. Aug. 5, 2005),
*aff'd sub nom. Scott v. Taylor*, 470 F.3d 1014 (11th Cir. 2006)...................19, 20

*Shannon v. URS Energy & Const., Inc.*,
No. 3:14-CV-01292, 2015 WL 1640133 (M.D. Tenn. Apr. 9, 2015) ................45

*Spann v. Hannah*,
No. 20-3027, 2020 WL 8020457 (6th Cir. Sept. 10, 2020)................................44

*Summit Med. Assocs., P.C. v. Pryor*,
180 F.3d 1326 (11th Cir. 1999) ................................................................41

*Swan v. Clinton*,
100 F.3d 973 (D.C. Cir. 1996).................................................................24

*Tahfs v. Proctor*,
316 F.3d 584 (6th Cir. 2003) ...................................................................14

*Top Flight Entm't, Ltd. v. Schuette*,
729 F.3d 623 (6th Cir. 2013) ...................................................................38

*U.S. Student Ass'n Found. v. Land*,
585 F. Supp. 2d 925 (E.D. Mich. 2008) ..................................................30

*Wis. Cent., Ltd. v. Shannon*,
539 F.3d 751 (7th Cir. 2008) ...................................................................25

*Ex parte Young*,
209 U.S. 123 (1908)..........................................................................*passim*

*Zielasko v. State of Ohio*,
873 F.2d 957 (6th Cir. 1989) ...................................................................22

**State Cases**

*Lyons v. Ryan*,
780 N.E.2d 1098 (Ill. 2002)....................................................................28

*Richards v. Taylor*,
926 S.W.2d 569 (Tenn. Ct. App. 1996)...................................................27

**Federal Statutes**

42 U.S.C. § 1983 ...............................................................................*passim*

**State Statutes**

Tenn. Code Ann.
§ 36-3-103(c)(1)........................................................................18, 21, 38
§ 36-3-301(a) ....................................................................................1, 7
§ 36-3-301(a)(1)...................................................................................6
§ 36-3-303 ...........................................................................................18

§ 36-3-303(a) ..................................................................................................7, 34
§ 36-3-304 ...............................................................................................................8
§ 39-16-504(a)(1)...............................................................................................8, 34
§ 40-35-111(b)(5) ..................................................................................................8
§ 40-35-111(c)(1)(E) ..............................................................................................8

**Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................................14, 45

**Constitutional Provisions**

Tennessee Constitution, Article III.......................................................2, 21, 37, 40

U.S. Const.
    amend. I.....................................................................................12, 15, 16, 41
    amend. XI.............................................................................................*passim*

**Other Authorities**

*An Act to amend Tennessee Code Annotated, Title 36, Chapter 3,
    relative to persons who may solemnize marriages, Hearing on HB
    2079*, 1998 Leg., 100th Sess. (Tenn. 1998)............................................6

Tenn. Att'y Gen. Op. 15-14 (Feb. 6, 2015) ................................................4

Tenn. Att'y Gen. Op. 19-08 (June 20, 2019) ..............................................7

Tenn. Att'y Gen. Op. 90-49 (Apr. 9, 1990) ................................................4

Tenn. Att'y Gen. Op. 97-138 (Oct. 9, 1997) ..............................................4

Tenn. Att'y Gen. Op. 97-139 (Oct 9, 1997) ...............................................4

Tenn. Att'y Gen. Op. U97-041 (Sept. 2, 1997) ......................................3, 4

**STATEMENT REGARDING ORAL ARGUMENT**

Appellees-Cross Appellants Universal Life Church Monastery Storehouse, Erin Patterson, and Gabriel Biser do not request oral argument and take no position on requests for oral argument made by other parties.

# I. INTRODUCTION

Since Plaintiffs filed this case nearly two years ago, the county clerks of Williamson, Rutherford, Putnam, and Hamilton counties ("Clerks" or "Clerk Defendants") have not offered a single argument defending the constitutionality of Tennessee's overtly discriminatory marriage solemnization statute (Tenn. Code Ann. § 36-3-301(a), as modified by 2019 Pub. Ch. 415 (the "Act"))—and their appeal briefs are no exception.  Instead, the Clerks claim they have no interest in the Act's validity, no ability to defend the Act, and no place as defendants in a suit to enjoin enforcement of the Act.  But Plaintiffs seek the right to solemnize legally valid marriages, and Tennessee law entrusts the Clerks with the responsibility to issue and record marriage licenses.  As a result, "the path to invalidating a statute restricting who may solemnize marriages is well trodden, and consistently runs through county clerks."  (Memorandum Opinion ("Mem. Op."), R. 236, PageID# 3242 (quoting Pls.' Opp. to Clerk Defs.' Mot. to Dismiss, R. 223, PageID# 3064)).

The Clerks are proper defendants, and their appeal lacks merit.

1

## II. STATEMENT OF ISSUES

1. Whether the District Court correctly held that the Clerk Defendants are subject to suit for an injunction under *Ex parte Young*.

2. Whether the District Court correctly held that Plaintiffs have standing under Article III to pursue their claims against the Clerk Defendants.

## III. STATEMENT OF THE CASE

### A. Factual Background

### 1. ULC Monastery and Discrimination in Tennessee

ULC Monastery is a non-denominational church that champions religious freedom, social justice, and spiritual expression of all kinds. (Second Amended Compl. ("SAC") ¶ 23, R. 80, PageID# 479); (Decl. of George Freeman ¶ 3, R. 40, PageID# 204); (Mem. Op., R. 236, PageID# 3216-3217). Its two core tenets are: (1) a person should always strive to do that which is right, and (2) all people are endowed with the rights to practice their beliefs, regardless of what those beliefs are, as long as they do not infringe on the rights of others and are within the law. (SAC ¶ 23, R. 80, PageID# 479); (Decl. of George Freeman ¶ 3, R. 40, PageID# 204); (Mem. Op., R. 236, PageID# 3217). ULC Monastery embraces the principle that those who feel so called can become ministers. (SAC ¶ 26, R. 80, PageID# 480); (Decl. of George Freeman ¶ 5, R. 40, PageID# 204). To that end, ULC Monastery ordains ministers for free over the internet and sends them credentials by mail. (SAC ¶ 26, R. 80, PageID# 480); (Decl. of George Freeman ¶ 5, R. 40,

PageID# 204); (Mem. Op., R. 236, PageID# 3217).  The Church "make[s] no religious hurdles, no hoops to jump through, no tests of loyalty, no rings to kiss and no fees to pay."  (Decl. of George Freeman ¶ 5, R. 40, PageID# 204 (quoting ULC Monastery website)).  Many ULC Monastery ministers, including in Tennessee, choose to solemnize marriages.  (*Id.* ¶ 8, PageID# 205).

Ministers of the Church have long faced disparate treatment in Tennessee. In 1997, the Attorney General issued an opinion stating that a "person ordained by the Universal Life Church, Inc.[1] . . . does not appear to meet the criteria of [Tennessee law] in order to be qualified to solemnize marriages." (Tenn. Att'y Gen. Op. U97-041 (Sept. 2, 1997), R. 216-1, PageID# 2879-2883).  At that time, the statute permitted marriages to be performed by "[a]ll regular ministers of the gospel of every denomination, and Jewish rabbis, more than eighteen (18) years of age, having the care of souls."  (*Id.* at PageID# 2880).  Nevertheless, the Attorney General opined that ministers ordained by mail by Universal Life Church, Inc. are

---

[1] Universal Life Church, Inc. is a separate organization, from which ULC Monastery is a descendant.  *See* https://www.themonastery.org/aboutUs last visited May 19, 2021; (Decl. of Ambika Doran, Ex. D (About the Universal Life Church), R. 222-1, PageID# 3018-3020).  The two have different practices and leadership, and no affiliation.  ULC Monastery embraces the principle that all those who feel called can become ministers and chooses to offer ordination online, similar to how Universal Life Church, Inc. offered ordination by mail.

not "regular ministers" because their ordination was not "a considered, deliberate and responsible act." (*Id.* at PageID# 2882).

The same year, the Attorney General issued two more opinions. First, the Attorney General took the position that, because ministers of Universal Life Church, Inc. lack authority to solemnize marriages, the marriages they perform may be void. *See* Decl. of Ambika Doran, Ex. F (Tenn. Att'y Gen. Op. 97-138 (Oct. 9, 1997), R. 222-1, PageID# 3027-3032). Second, the Attorney General answered the question of "how can clerks comply with Op. U97-041," which declared Universal Life Church ministers ineligible, concluding the clerks may not "examine the qualifications of persons solemnizing the marriage." AG Op. and Cases (Tenn. Att'y Gen. Op. 97-139 (Oct 9, 1997), R. 216-1, PageID# 2876-79). *See also* (Decl. of Ambika Doran Ex. G (Tenn. Att'y Gen. Op. 15-14 (Feb. 6, 2015)), R. 222-1, PageID# 3034-3035) (ULC Monastery ministers may not solemnize marriages); *see also* Tenn. Att'y Gen. Op. 90-49 (Apr. 9, 1990), R. 116-6, PageID# 885-887 (minister who performs ceremony without a valid license could be sued for negligence).

Some clerks adhere to the Attorney General's directive that they may not question a minister's ordination—meaning they issue and record marriage licenses despite knowing they are invalid. *See, e.g.*, (Mem. Op., R. 236, PageID# 3242); Crowell Br. at 10-11; Anderson Br. at 18. Other county clerks have turned away

4

the Church's ministers or told them that marriages they perform will not be valid; ULC Monastery has received reports of such interactions from its ministers for years. *See* (SAC ¶ 54, R. 80, PageID# 486); (Decl. of George Freeman ¶ 12, R. 40, PageID# 207); (Decl. of Dallas Goschie, Ex. A (Plaintiffs' Disclosures), R. 147-1, PageID# 1931-1933). For example, Defendant Wayne Nabors (Putnam County Clerk) twice told ULC Monastery Rev. Michael Veal that he may not solemnize legal marriages. *See* (Decl. of Robbie Miller, Ex. C (Veal Dep. Excerpts), R. 123-3, PageID# 1017-21). In one instance, Rev. Veal's stepdaughter asked him to solemnize her marriage to her fiancé, who was in intensive care and at risk of death. (*Id.* at PageID# 1020-1021). Mr. Nabors confirmed that Rev. Veal could not solemnize the marriage because "online ordinations are not valid in Tennessee." (*Id.* at PageID# 1020-1021).

Mr. Nabors's office also refused to issue a marriage license to a couple wishing to be married by a ULC Monastery minister the day before their wedding. *See* Decl. of Robbie Miller, Ex. A (Plumm Dep. Excerpts, R. 123-1, PageID# 990-992); (SAC ¶ 48, R. 80, PageID# 484-485); (Mem. Op., R. 236, PageID# 3219-3220). Mr. Nabors denies that his office refused to issue a marriage license to the couple but admits providing the couple a copy of an Attorney General opinion and relying on the opinion to tell the couple that a marriage officiated by a ULC Monastery minister would be invalid. *See* (Affidavit of Wayne Nabors, R. 144-1,

PageID# 1489-1490).  Mr. Nabors also admits he has the authority to deny a marriage license.  (*Id.* ¶ 16, PageID# 1491) ("A clerk is not permitted to deny a couple a marriage license without first getting my approval.").

### 2.     Tennessee's Marriage Ordination Law

While the statute purports to authorize "spiritual leaders of *every* religious belief" to solemnize marriages, Tenn. Code Ann. § 36-3-301(a)(1) (emphasis added), the Tennessee General Assembly has twice acted to exclude disfavored religious groups, relying on the Attorney General's opinions.  First, in 1998, the General Assembly adopted the Attorney General's view that a minister may perform a marriage only if he belongs to a church with religious "customs" that provide for ordination by "a considered, deliberate, and responsible act." 1998 Tennessee Laws Pub. Ch. 745. The legislature also expressly targeted groups such as ULC Monastery, disapproving "mail-order preachers that send off and become ordained through the laying on of 'Washingtons' or some such process." *See An Act to amend Tennessee Code Annotated, Title 36, Chapter 3, relative to persons who may solemnize marriages, Hearing on HB 2079*, 1998 Leg., 100th Sess. (Tenn. 1998) (statement of Sen. Roy Herron, sponsor), statement appearing at 55:25-57:00 (*see* Decl. of Robbie Miller, Ex. B (transcript), Ex. C (audio of transcript), R. 16-1, PageID# 100-103).

Second, in 2019, the General Assembly enacted 2019 Public Chapter 415 to prohibit ministers "receiving online ordinations" from solemnizing marriages. The statute, as amended by 2019 Public Chapter 415, provides:

> (1) All regular ministers, preachers, pastors, priests, rabbis and other spiritual leaders of every religious belief, more than eighteen (18) years of age, having the care of souls . . . may solemnize the rite of matrimony. . . .
>
> (2) In order to solemnize the rite of matrimony, any such minister, preacher, pastor, priest, rabbi or other spiritual leader must be ordained or otherwise designated in conformity with the customs of a church, temple or other religious group or organization; and such customs must provide for such ordination or designation by a considered, deliberate, and responsible act. *Persons receiving online ordinations may not solemnize the rite of matrimony*.

Tenn. Code Ann. § 36-3-301(a) (emphasis added).[2] The Attorney General has since confirmed that under the new law, "spiritual leaders who receive their ordinations online will no longer be. . . authorized . . . to solemnize marriages in Tennessee." Decl. of Ambika Doran, Ex. I (Tenn. Att'y Gen. Op. 19-08 (June 20, 2019), R. 222-1, PageID# 3041-3042).

A minister who solemnizes a marriage but fails to endorse and return the marriage license to the county clerk "commits a Class C misdemeanor." Tenn. Code Ann. § 36-3-303(a). The minister also must attest that he or she

---

[2] Tennessee has since expanded the ability to solemnize marriages to notaries and former members of the general assembly, while retaining the provisions targeting online ordination. *See* 2021 Tenn. Laws Pub. Ch. 119; 2021 Tenn. Laws. Pub Ch. 225.

"solemnize[d] the rite of matrimony between the above . . . named parties . . . ." Tenn. Code Ann. § 36-3-304. This certification could be false if the minister lacked authority to solemnize the marriage, meaning he will have "[k]nowingly ma[de] a false entry in . . . a governmental record," a Class E felony. Tenn. Code Ann. § 39-16-504(a)(1). Class C misdemeanors are punishable by up to 30 days in jail and a $50 fine, and Class E felonies between one and six years in prison, and a fine up to $3,000. Tenn. Code Ann. § 40-35-111(b)(5), (c)(1)(E). Making a "false entry" was previously a Class A misdemeanor, but the legislature increased the punishment effective July 1, 2019—the same day as the online ordination ban.

      3.     **Impact of the New Law on ULC Monastery and its Ministers**

The new law has greatly affected ULC Monastery and its ministers. *See* (Decl. of George Freeman ¶ 14, R. 40, PageID# 207-208). It has caused ministers to lose faith in the validity of their ordination. (*Id.* at PageID# 207). It also has affected the Church's goodwill and reputation by suggesting its practices are less valid than those of other religions. (*See id.* at PageID# 207). The effect of the law is to prevent ULC Monastery's ministers from conducting one of the most universal and effective forms of outreach: solemnizing marriages. (*Id.* at PageID# 207). This restriction would dramatically limit the Church's ability to spread its message in Tennessee, which harms the Church in unquantifiable ways. (*Id.* at PageID# 207). It is not practical for ULC Monastery to operate physical locations

to accommodate all its congregants, nor does the Church want to do so, as it would be inconsistent with its model of ministry. (*Id.* at PageID# 207). ULC Monastery rejects the idea of a network of brick-and-mortar locations all controlled by a central leadership, and the Church relies on the internet to reach and commune with its ministers. (*See id.* at PageID# 207). Further, it would limit the Church's reach and hinder its operation if the Church were forced to use outdated methods such as mail or fax to complete the ordination process. (*Id.* at PageID# 207).

Plaintiff Rev. Erin Patterson became a ULC Monastery minister in 2015 and has solemnized five marriages in Tennessee, including multiple in Rutherford County, where she lives. (SAC ¶¶ 35, 37, R. 80, PageID# 482); (Mem. Op., R. 236, PageID# 3218). She agreed to perform a marriage for a couple that lives in Williamson County on October 5, 2019, and arranged to meet the bride to plan the ceremony on June 9, 2019. (SAC ¶¶ 38, R. 80, PageID# 483); (Mem. Op., R. 236, PageID# 3218). However, after learning of the 2019 amendment to the statute, Rev. Patterson cancelled the meeting and told the couple she could not perform the ceremony. (SAC ¶ 38, R. 80, PageID# 483); (Mem. Op., R. 236, PageID# 3218). Rev. Patterson also told another couple that she could not perform their ceremony in the Nashville area on October 13, 2019, because of her continuing concerns about the new law. (SAC ¶ 38, R. 80, PageID# 483); (Mem. Op., R. 236, PageID# 3218). Before the amendment to the statute, Rev. Patterson began coordinating

9

with local zoning authorities in Rutherford County to make changes to her property that would allow her to host weddings, but she paused those plans out of concern for the validity of marriages she might solemnize. *See* (SAC ¶¶ 38, 39, R. 80, PageID# 483); (Mem. Op., R. 236, PageID# 3219).

Plaintiff Rev. Gabriel Biser was also ordained as a ULC Monastery minister in 2015 and has solemnized four marriages in that role. (SAC ¶¶ 40-41, R. 80, PageID# 483); (Mem. Op., R. 236, PageID# 3219). He agreed to perform a ceremony for a same-sex couple in Hamilton County in August 2019, but changed his mind after enactment of the Amendment. (SAC ¶ 43, R. 80, PageID# 484); (Mem. Op., R. 236, PageID# 3219). Nevertheless, as a Hamilton County resident, Biser intends to perform marriage ceremonies there in the future. (SAC ¶ 44, R. 80, PageID# 484); (Mem. Op., R. 236, PageID# 3219).

## B.    Procedural Background

The Church and three of its ministers brought this suit against the four county clerks and the Attorney General on June 21, 2019, to enjoin 2019 Public Chapter 415 before its July 1, 2019 effective date. *See* (Complaint for Declaratory and Injunctive Relief, R. 1, PageID# 1-19). The District Court ordered the parties to maintain the pre-effective date "status quo" pending a trial on the merits. *See* (Order, R. 53, PageID# 318-319). Plaintiffs amended their complaint, adding as defendants Governor Bill Lee and the district attorneys for Rutherford,

Williamson, Hamilton, and Putnam counties (collectively, with the Attorney General, the "State Defendants"). *See* (SAC ¶¶ 14-18, R. 80, PageID# 478-479). All defendants filed motions to dismiss.

The District Court granted the State Defendants' request to dismiss the governor as a defendant but otherwise denied the State Defendants' motion and Clerk Defendants' motions.[3] In its thoroughly reasoned decision, the District Court concluded that Plaintiffs have standing and that the Attorney General, district attorneys, and county clerks are not entitled to sovereign immunity under the Eleventh Amendment.

## IV. SUMMARY OF THE ARGUMENT

The District Court correctly concluded that Plaintiffs have standing and that the Clerks are proper parties to this suit.

*First*, Plaintiffs have standing to sue the Clerks. Injury-in-fact is the touchstone of standing, and the Clerks cannot reasonably dispute the incalculable and tangible harm Plaintiffs (and couples and ULC ministers throughout Tennessee) have suffered and will continue to suffer until the Act is permanently enjoined. That harm is traceable to the Clerks in two ways: (1) the Clerks can turn away officiants or refuse to issue marriage licenses based on a minister's religious

---

[3] The District Court also dismissed the claims of a couple married by a ULC Monastery minister as moot. No party has appealed that ruling.

affiliation (as Mr. Nabors has done); (2) even if the Clerks issue and record a license, Plaintiffs suffer a violation of their rights under the First Amendment when the Clerks issue a legally invalid license. A judgment against the Clerks invalidating the law and enjoining its enforcement would redress that harm by forcing the Clerks to issue valid marriage licenses to ULC Monastery ministers and couples. In fact, a judgment against the Clerks is essential given Hamilton County's previous position that Clerks *must* refuse to issue and record marriage licenses for ULC Monastery ministers absent an injunction.

*Second*, Plaintiffs' claims are ripe, despite the Clerks' (repeated) argument they have nothing to do with the Act and will never "enforce" it. The Act's constitutionality is fit for review *now*, and withholding consideration merely preserves the Act's discriminatory scheme indefinitely because Plaintiffs have no other feasible way to challenge it.

*Third*, the Clerks are not entitled to sovereign immunity because, even if they act as state officials for Eleventh Amendment purposes, under *Ex parte Young*, the Court may order injunctive relief against any state official sufficiently connected to the Act. The Sixth Circuit has expressly recognized that it would be a "perverse reading" of *Young* to find sufficient injury for standing and yet immunize the defendant from challenge. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015). "Under *Ex parte Young* the inquiry is not into the

nature of an official's duties but into the effect of the official's performance of his duties on the plaintiff's rights." *Finberg v. Sullivan*, 634 F.2d 50, 54 (3d Cir. 1980). The Clerks' issuance of invalid marriage licenses (or refusal to issue them in the first instance) makes them sufficiently connected to the Act. The Court thus can, and should, enter an injunction.

*Fourth*, Plaintiffs need not allege a "policy or custom" under *Monell* to obtain an injunction against the Clerks in their role as state officials. Mr. Nabors's *Monell* arguments conflict with his claim to "state official" status, and in any event, *Monell* is irrelevant.

The Clerks' other arguments consist of slightly varied expressions of the same point—they disclaim responsibility for the Act—and offer no better reason to dismiss them from this case. The Tennessee General Assembly delegated to the Clerks authority to issue marriage licenses and administer the Act, and as a result, the Clerks are proper defendants in this lawsuit.

## V.      ARGUMENT

### A.      Standard of Review

This Court review decisions on standing and ripeness de novo. *Pedreira v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722, 728 (6th Cir. 2009) (standing); *Ammex, Inc. v. Cox*, 351 F.3d 697, 706 (6th Cir. 2003) (ripeness). The Court "consider[s] the complaint and the materials submitted in connection with the issue

13

of standing." *Id.* at 729. "[B]oth the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 710 (6th Cir. 2015) (quoting *Warth v. Seldin,* 422 U.S. 490, 501 (1975)). The party invoking jurisdiction bears the burden to establish justiciability. *Id.*

This Court also reviews a decision about Eleventh Amendment immunity de novo. *Franks v. Ky. Sch. for the Deaf*, 142 F.3d 360, 362 (6th Cir. 1998). This Court recognizes that sovereign immunity is "unlike subject-matter jurisdiction" in that "'the entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity.'" *Nair v. Oakland Cty. Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006) (quoting *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002)).

And finally, the Court reviews de novo rulings on motions to dismiss for failure to state a claim under Rule 12(b)(6). *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003). The Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir.2008) (internal quotation and citation omitted).

**B.    The Church and its Ministers Have Standing to Sue the Clerks.**

Plaintiffs have standing where they have suffered an injury that "can be fairly traced to the defendant's alleged" conduct and that is "likely to be redressed by the relief [plaintiffs] request[]." *City Commc'ns, Inc. v. City of Detroit*, 888 F.2d 1081, 1086 (6th Cir. 1989).  Notably, "[s]tanding is relaxed in the First Amendment context."  Mem. Op., R. 236, PageID# 3227 (quoting *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 330 (6th Cir. 2013)).  For Establishment Clause claims in particular, "the threshold for standing is a low one." *ACLU of Ky. v. Rowan Cty.*, 513 F. Supp. 2d 889, 900 (E.D. Ky. 2007) (emphasis added) (citing *Washegesic,* 33 F.3d at 679).

Plaintiffs satisfy every prong of the standing inquiry.

**1.    Injury in Fact**

The Clerks cannot reasonably contest that Plaintiffs have suffered injury. The Clerks either all but ignore this element (*see* Knowles Br.), acknowledge that Plaintiffs "may very well have sustained the foregoing injuries as suggested by the District court" (Crowell Br. at 26), or effectively restate the State Defendants' flawed arguments (Nabors Br. at 40-41; Anderson Br. at 33-34), which Plaintiffs have addressed separately.  Regardless, the injury to Plaintiffs is clear.

The Act subjects all ULC Monastery-officiated marriages to invalidation and deprives ULC Monastery ministers of a right granted to other religions.  In doing

15

so, the Act "publically deem[s] ULC Monastery an invalid or subordinate religious organization." (Decl. of George Freeman ¶ 14, R. 40, PageID# 207-208).

> When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, . . . [t]he "injury in fact" . . . is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.

*Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993). Even with the Court's order maintaining the "status quo," the threat of the Act has chilled ULC Monastery ministers' religious practice, forcing them to cancel marriage ceremonies. *See* (Decl. of Ambika Doran, Ex. E (Patterson Dep. 46:17-19), R. 146-5, PageID# 1907). This harm is cognizable under the Free Speech, Establishment Clause, and Free Exercise clauses of the First Amendment, and the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The injury to Plaintiffs is palpable and ongoing.

The Clerks argue that the District Court erred by accepting Plaintiffs' assertion that they suffer injury if a county clerk issues and accepts a marriage license, suggesting that Plaintiffs' SAC limits them to asserting injury where clerks reject ULC Monastery ministers or couples. Crowell Br. at 27; Anderson Br. at 32; Nabors Br. at 46. They cite nothing to support this was error, and the SAC is

16

abundantly clear that Plaintiffs suffer injury when marriages they perform are invalid. *See* (SAC ¶ 32, R. 80, PageID# 482 ("ULC Monastery ministers who wish to perform weddings in Tennessee also face discrimination and the threat that marriages they solemnize will be invalidated.")).

The Clerks also argue that Plaintiffs "rely solely on allegations of subjective chill to establish standing." Anderson Br. at 31; *see also* Nabors Br. at 48-49. That is inaccurate. The Act has the tangible effect of denying ULC Monastery ministers a right that the State extends to other religions. That, standing alone, is sufficient injury. *See Adland v. Russ*, 307 F.3d 471, 478 (6th Cir. 2002) ("The use of governmental authority to encourage a sectarian religious view is a sufficient injury if directed toward the plaintiff."). Notably, however, the Act has chilled the religious practice and speech of ULC Monastery and its ministers. *See, e.g.*, (Decl. of George Freeman ¶ 14, R. 40, PageID# 207-208); (SAC ¶¶ 28-34, R. 80, PageID# 482-485). Further, as the Clerks acknowledge, one factor favoring sufficient injury is "an attribute of the challenged statute that makes enforcement easier or more likely." Anderson Br. at 28 (citing *Plunderbund Media, L.L.C. v. DeWine*, 753 F. App'x 362, 366-67 (6th Cir. Nov. 27, 2018)). The Act invalidates ULC Monastery ministers automatically, and the Clerks either reject ULC Monastery ministers or record a legally invalid license; as a result, "enforcement" is a not just likely but certain.

### 2. Traceability

The harm Plaintiffs suffer—their inability to solemnize valid marriages—is fairly traceable to the Clerks. A valid marriage can occur only if the couple obtains a marriage license from a county clerk, and the officiant signs and returns the license. *See* Tenn. Code Ann. § 36-3-303. Clerks are "*prohibited* from issuing a license for a marriage that is prohibited in this state." Tenn. Code Ann. § 36-3-103(c)(1) (emphasis added). A clerk who refuses to issue a license or prevents a ULC Monastery minister from performing a marriage—as Defendant Nabors has done—undoubtedly contributes to the injury Plaintiffs suffer.

But Plaintiffs' injury is no less traceable to the Clerks when the Clerks do issue and record a marriage license because the license is ***legally invalid***. The Clerks emphasize that they take no action ***causing*** the ***invalidity***, *see, e.g.*, Crowell Br. at 31, but that is irrelevant: "If the rules that they [are] executing are unconstitutional, their actions caused an injury to [Plaintiffs'] legal rights[,]" and "[t]his conclusion is not altered by the [alleged] fact that the duties" of the Clerks "are entirely ministerial." *Finberg*, 634 F.2d at 54; *see also McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 996 (6th Cir. 2019) (rejecting argument that "permitting an injunction against an official who implements a constitutional violation caused by another official" would "unduly expand[] *Ex parte Young*" and collecting cases permitting suit "against state actors at multiple points in the

18

enforcement chain of the challenged statute"); *Scott v. Dekalb Cty. Bd. of Elections & Voter Registration*, No. 1:02-CV-1851-ODE, 2005 WL 8155742, at \*4 (N.D. Ga. Aug. 5, 2005) (collecting cases; "courts have often allowed suits to enjoin the performance of ministerial duties in connection with allegedly unconstitutional laws."), *aff'd sub nom. Scott v. Taylor*, 470 F.3d 1014 (11th Cir. 2006).

The Clerks also argue that they did not cause ULC Monastery ministers to decline requests to solemnize marriages (Anderson Br. at 6), but that too is irrelevant. In *Const. Party of Pa. v. Aichele*, 757 F.3d 347 (3d Cir. 2014) (*CPP I*), the plaintiffs challenged a law that allowed imposition of court costs on political candidates who submitted insufficient nomination papers. *Id.* at 349-50. Plaintiffs alleged that some candidates "refuse to participate in the political process because . . . they cannot bear the risk of litigation costs." *Id.* at 366. The defendants challenged standing, and the court concluded the "mere existence of the law causes these electoral decisions to be made differently than they would absent the law," and as a result, "the standing inquiry's second requirement of a causal connection between the plaintiffs' injuries and the law they challenge is satisfied." *Id.* at 367. The mere existence of the marriage solemnization restrictions—which the Clerks administer—has chilled and altered ULC Monastery ministers' behavior. "That is a direct and un-refuted statement of causation." *Id.*

*Finberg v. Sullivan* is also instructive. There, the court held that a prothonotary was a proper defendant in a suit to declare Pennsylvania's postjudgment garnishment procedures unconstitutional. The prothonotary's role was limited to issuing a writ of execution as part of its ministerial duties. 634 F.2d at 52. The Clerks argue *Finberg* is distinguishable because the prothonotary's "actions in reliance [on the unconstitutional law] were the immediate cause of the unlawful freezing of the plaintiff's bank accounts," while the Clerks (in their view) have not taken "any action, ministerial or otherwise, that injured any Plaintiff." Crowell Br. at 40; Anderson Br. at 35. But that argument relies on at least two flawed premises.

First, it relies on the fallacy that Plaintiffs suffer no injury as long as clerks issue and record a license. The Clerks' issuance and recording of a ***legally invalid*** license unquestionably injures Plaintiffs, as it subjects ministers to potential liability, deprives ULC Monastery of equal footing with other religions, and offers the illusion of state-sanctioned legitimacy to a void marriage. Thus, by issuing an invalid license, the Clerks are "executing [a rule that is] . . . unconstitutional," and as a result, their "actions cause[] an injury." *Finberg*, 634 F.2d at 54.[4]

---

[4] The Clerks' efforts to distinguish the authority collected by *Scott v. Dekalb County* falls flat for the same reason. The clerks assert that the defendants in those cases "engaged in some action . . . in furtherance of a ministerial duty[] that

20

Second, the Clerks need not be "the immediate cause" of Plaintiffs' harm (*see* Anderson Br. at 35), as "[p]roximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be ***fairly traceable*** to the defendant's conduct." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) (emphasis added). Thus, the fact that the Clerks *themselves* did not force the Plaintiffs to cancel legally invalid weddings does not eliminate the injury; the invalidity still flows from the Clerks' issuance of legally invalid licenses. As a result, the Clerks' admission that "Tennessee vests county clerks with the duty to issue and record marriage licenses" (Anderson Br. at 15; Crowell Br. at 18) is enough to make them proper defendants, but their role goes beyond that.

The Clerks inaccurately claim that the state "controls every aspect of how county clerks issue marriage licenses," and they have "no leeway or say whatsoever." Nabors Br. at 32; *see also* Knowles Br. at 28; Crowell Br. at 18. But state law *prohibits* the Clerks from issuing a license for a prohibited marriage, and allows clerks to record only licenses that were "properly signed by the officiant." Tenn. Code Ann. § 36-3-103(c)(1). The Clerks' duties thus inherently include the obligation to determine whether a marriage is "prohibited" and whether an

---

violated the plaintiff's rights," but the same is true where, as here, the clerks issue and record an invalid marriage license. Crowell Br. at 41.

21

officiant "properly" signed a license.[5]  As Mr. Knowles acknowledges, even absent the amendment targeting online ordination, "the statute effectively requires a County Clerk to ascertain how every officiant who might execute a marriage license was ordained, and then to make a judgment as to whether such method of ordination meets the foregoing statutory requirement."  Knowles Br. at 23 n.5.  The Clerks are deeply intertwined with the Act's implementation, and the harm Plaintiffs suffer is fairly traceable to their actions.

### 3. Redressability

A judgment against the Clerks invaliding the Act would redress Plaintiffs' injury.  First, a judgment would enjoin the Clerks from withholding marriage licenses or turning away ULC Monastery ministers.  As the Putnam and Hamilton county clerks make clear, such a judgment is essential.  In his trial brief in the District Court, the Hamilton County clerk insisted that, for clerks to comply with their duties under the new law, they "***must*** deny the issuance or recording of marriage licenses where an internet-ordained minister solemnized the

---

[5] As explained in more detail in response to the State Defendants' brief, signing a license without the legal authority to do so may subject Plaintiffs to criminal liability.  The fact that Plaintiffs were forced to cancel marriage ceremonies to avoid submitting a false certification to the Clerk Defendants provides another basis for standing. *Zielasko v. State of Ohio*, 873 F.2d 957 (6th Cir. 1989) (holding candidate had standing to challenge qualification restriction where he could not file declaration of candidacy without risking prosecution for submitting a false certification).

proceedings." (Knowles' Trial Brief n.3, R. 139, PageID# 1249 (emphasis added)). Inexplicably, he now takes the exact opposite position.[6] *Compare id.* (arguing clerks *must deny* license) *with* Knowles Br. at 7 (arguing clerks *must issue* license). Even before the new law, Putnam County clerk Wayne Nabors refused to issue a marriage license to Ms. Farris and Mr. Plumm. While Mr. Nabors disputes denying a license to the couple, he admits his authority to do so. (Decl. of Wayne Nabors ¶ 16, R. 144-1, PageID# 1491 ("A clerk is not permitted to deny a couple a marriage license without first getting my approval.")); (Decl. of Branda Brown ¶ 14, R. 144-2, PageID# 1506 ("Only Wayne Nabors can make the decision to deny a couple a marriage license.")).[7] A judgment will redress Plaintiffs' injuries by forcing the Clerks to issue and record marriage licenses.

Further, a judgment against the Clerks invalidating the Act would redress Plaintiffs' injury by forcing them to issue ***legally valid*** licenses. Once again, it is irrelevant whether the Clerks perform a "ministerial" duty in issuing a license if the license they issue is invalid. For example, in *City of Herriman v. Bell*, 590 F.3d

---

[6]Other clerks likely share the clerk's original view, given that the Church has received reports of various clerks throughout the state turning away ministers or couples for years. *See* (Decl. of Dallas Goschie, Ex. A (Plaintiff's Disclosures), R. 147, PageID# 1931-1933).

[7] Mr. Nabors also insists that anything with a signature is "properly signed," (Nabors Br. at 44), but that interpretation of the statute strains logic as it would mandate acceptance of a marriage license that the clerk knows is invalid.

1176 (10th Cir. 2010), plaintiffs sued the county clerk to challenge the constitutionality of a state law that excluded them from voting in an election that reduced the size of their school district because they were outside the proposed district's boundaries. *Id.* at 1178. The clerk argued that a judgment against her would not redress plaintiffs' injuries because she had "ministerial duties" to place the proposal on the general election ballot. *Id.* at 1182. As a result, she argued, as the Clerks argue here, she could not "cure any constitutional infirmities" or "enforce a federal remedy against the state." *Id.* The court rejected that argument and held that a judgment against the clerk would redress plaintiffs' injuries because the clerk was "the official responsible for running the local . . . election." *Id.*

Similarly, the Clerks here issue marriage licenses, and a judgment against them would redress Plaintiffs' injury. The Clerks' claimed inability to cure constitutional infirmities with the state law is immaterial. *See id.* "[T]he critical question in determining redressability is not whether subordinate officials [named by plaintiff] have the legal power to" implement the relief plaintiff seeks but "is rather whether the injunctive relief against such officials alone could provide [plaintiff] with an adequate remedy[.]" *Swan v. Clinton*, 100 F.3d 973, 979 (D.C. Cir. 1996); *see also Peterson v. Lacabe*, No. 10-CV-00059-WDM-MEH, 2010 WL 4220024, at *3 (D. Colo. Oct. 20, 2010), *aff'd sub nom. Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013) (plaintiff had standing to bring claims against local

24

official who issued concealed carry permits in challenge to constitutionality of state law preventing non-residents from obtaining such permits despite official's claim he acted "only in a ministerial capacity without the ability to exercise discretion").[8]

### 4. Multiple Courts have invalidated Marriage Ordination Statutes with Clerks as Defendants.

Multiple courts have invalidated marriage ordination statutes with clerks in the same position as defendants. In *Center for Inquiry, Inc. v. Marion Cir. Ct. Clerk*, 758 F.3d 869 (7th Cir. 2014), the Seventh Circuit invalidated Indiana's marriage ordination statute where the clerk was a defendant. No one argued the clerk was an improper party. Nor did the court independently raise standing or other justiciability issues, as it was obligated to do. *See Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008).

---

[8]The clerks complain that they have no more connection to the Act than the other 91 non-party county clerks (*see, e.g.*, Crowell Br. at 12), but a judgment against these particular clerks is appropriate to redress harm to the individual plaintiffs in this case—Rev. Biser (who lives and plans to perform weddings in Hamilton County), Rev. Patterson (who lives and plans to perform weddings in Rutherford County and planned to perform a wedding in Williamson County). While no plaintiff resides in Putnam County, witnesses have attested that the Putnam County clerk has turned way ULC Monastery ministers and refused to issue a license to a couple who wished to be married by a ULC Monastery minister. ULC Monastery itself is harmed by these practices and, as explained below, has standing to seek relief on behalf of itself and its ministers.

In a similar challenge in the Central District of Illinois, plaintiffs named only a county clerk as defendant, and the clerk sought dismissal based on the same arguments as the clerks here:

> [T]he Amended Complaint does not allege that Defendant Bean in his capacity as County Clerk of Macon County, Illinois, took any action to deprive Plaintiff of his constitutional rights. . . . The complaint alleges that Plaintiff informed couples that he may not solemnize a wedding. The Complaint fails to allege any facts that the defendant deprived Plaintiff of his rights under the Constitution, that Defendant took any acts that intentionally caused any depravation, that Defendant took any action whatsoever, or that the Plaintiff and Defendant ever had any interaction.

*Center for Inquiry, Inc. v. Bean*, Case No. 16-CV-2229, Mem. of Law in Supp. of Def.'s Mot. to Dismiss, Dkt. 11 at 3 (C.D. Ill., Oct. 17, 2016) (attached to Mem. of Plaintiffs, R. 102-1, PageID# 628-633). The clerk argued that these facts showed "the absence of an actual controversy between the parties." *Id.* The court disagreed:

> Defendant argues that Plaintiffs have not alleged that he took any action, at any time, to deprive Plaintiffs of their constitutional rights. However, Plaintiffs' Complaint alleges that, since becoming a certified secular celebrant in January 2015, Plaintiff Broaddus, a Decatur, Macon County resident, has had to turn down multiple couples who requested that he solemnize their weddings. Broaddus has explained to these couples that, while he may officiate a ceremony, he may not, under Illinois law, solemnize the marriage itself. In Illinois, it is presumed that public officials perform the functions of their office according to state law and that they do their

26

duty.[9]  *Lyons v. Ryan*, 780 N.E.2d 1098, 1104 (Ill. 2002).  Thus, if Broaddus did solemnize the marriage, it can be presumed that Defendant would do his duty under state law and almost certainly reject the marriage as being solemnized by someone unauthorized to do so . . . .

Case No. 16-CV-2229, Order, Dkt. 18 at 8 (attached to Memorandum of Plaintiffs, R. 102-2, PageID# 634-643).  The court relied on *Center for Inquiry, Inc. v. Marion Circuit Court Clerk*, noting that "[t]here is nothing in the facts of that case indicating that the Indiana circuit court clerk, at any time, took any personal action to deny the Center for Inquiry or its secular celebrants the ability to solemnize a marriage," yet the Seventh Circuit "adjudicated the merits" and struck down the marriage ordination law.  *Id.* at 9.

In yet another similar case, the Center for Inquiry and its celebrants sued a single county clerk in the Northern District of Texas to invalidate Texas's marriage ordination statute.  *Ctr. for Inquiry, Inc. v. Warren*, No. 3:18-CV-2943-B, 2019 WL 3859310 (N.D. Tex. Aug. 16, 2019), *appeal filed*, Sept. 17, 2019.  The clerk argued the plaintiffs lacked standing because they suffered no injury-in-fact, but the court found standing because, where "similar parties" are treated "unequally before the law[,] no further showing of suffering based on that unequal positioning

---

[9]Tennessee courts apply the same presumption.  *Richards v. Taylor*, 926 S.W.2d 569, 570 (Tenn. Ct. App. 1996) ("[A] public official, in the absence of proof to the contrary, is presumed to do his duty.").

is required for purposes of standing." *Id.* at \*4-\*5 (quoting *Texas Cable & Telecomms. Ass'n v. Hudson*, 265 F. App'x 210, 218 (5th Cir. 2008)). The Fifth Circuit vacated this decision, not because the clerk was an improper party, but because the court viewed local prosecutors as additional necessary parties to afford the plaintiffs complete relief. *See Ctr. for Inquiry, Inc. v. Warren*, No. 19-11029, 2021 WL 528575, at \*3 (5th Cir. Feb. 10, 2021). Here, Plaintiffs have named both the Clerks and the district attorneys.

Otherwise, the only cases in which challenges to marriage statutes have been dismissed as nonjusticiable involved statutes *that did not prohibit the plaintiffs' conduct*. In *Center for Inquiry, Inc. v. Lyons*, Case No. 1:18-CV-609, Order, Dkt. 50 at 5 (W.D. Mich. March 25, 2020), the court dismissed a challenge to a Michigan marriage statute after the newly elected Attorney General rejected her predecessor's interpretation of the statute and assured the court that marriages solemnized by the plaintiff organization's celebrants were valid. Because the statute did not prohibit the plaintiffs' conduct, the court found that plaintiffs had no grounds to challenge the statute in a suit against a county clerk. (Opinion and Order Dismissing Action. R. 229-2, PageID# 3190-3199. Attorney General Slattery has issued no such assurances, and in fact, has repeatedly proclaimed in this Court that marriages solemnized by ULC Monastery ministers are *invalid*. Thus, Defendant Anderson's claim that *Lyons* involved "nearly identical" facts

misses the mark entirely.  *See* Anderson Br. at 38.  There is no question the law at issue prohibits the conduct in which Plaintiffs wish to engage, and state law places administration of that law within the Clerks' purview.

Similarly, in *Carrick v. Snyder*, 15-CV-10108, 2016 WL 520942, at *2, 5 (E.D. Mich. Feb 10, 2016), the plaintiff claimed to fear prosecution for officiating purely ceremonial same-sex and plural marriages *with no intended legal recognition*.  The court concluded that performing purely private religious ceremonies did not constitute an "an actual or imminent act that would allegedly violate any Michigan statute."  *Id.*  Here, however, there is no dispute that Plaintiffs intend to conduct legally recognizable marriages—as ministers of other religions or denominations may do—but the Act renders those marriages invalid. [10]

In short, where state law delegates the responsibility to issue and record marriage licenses to local officials, those officials are proper defendants in a suit to invalidate a statute restricting who may solemnize marriages.  The District Court followed a "well-trodden" path in denying the Clerks' motions.  (Mem. Op., R.

---

[10] The other cases cited by the clerks are even less relevant.  *See e.g.*, *Haskell v. Washington Twp.*, 864 F.2d 1266, 1276 (6th Cir. 1988) (finding standing); *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1153 (10th Cir. 2005) (abortion provider lacked standing to sue "various officials who oversee certain public health care facilities" in challenge to law requiring providers to pay medical costs for abortions done on minors without parental consent because defendants did not administer the law); *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (not considering standing).

236, PageID# 3242 (quoting Pls.' Opp. to Clerk Defs.' Mot. to Dismiss, R. 223, PageID# 3064)).

**5.** **ULC Monastery has Associational and Direct Standing.**

While Plaintiffs do not assert "third-party standing" (contrary to Mr. Nabors's suggestion, Nabors Br. at 49), ULC Monastery has associational standing to pursue claims on behalf of its ministers.

> An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Neighborhood Action Coal. v. City of Canton, Ohio*, 882 F.2d 1012, 1016 (6th Cir. 1989) (quoting *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Brock,* 477 U.S. 274, 282 (1986)); *see also U.S. Student Ass'n Found. v. Land*, 585 F. Supp. 2d 925, 934 (E.D. Mich. 2008) ("Of course even a single disenfranchisement would support standing for the disenfranchised person to sue as an individual, or for an organization to which he or she belonged to sue in a representative capacity.").

The Clerks challenge ULC Monastery's standing as an organization only on the basis that "no individual Plaintiff has standing" (*see* Nabors Br. at 52; Anderson Br. at 40), but as explained above, that is incorrect. Denial of the right to perform valid legal marriages harms both ULC Monastery and its members.

30

*See, e.g.*, (Decl. of George Freeman ¶ 14, R. 40, PageID# 207-208). Preservation of the right to perform marriages is clearly germane to ULC Monastery's purpose, which includes advocacy for equality in all forms. *See* (*id.* ¶¶ 3-4 at PageID# 204). Relief does "not require participation by the individual members because any injunctive relief granted would inure to the benefit of all members of the association actually injured." *Neighborhood Action Coalition*, 882 F.2d at 1017 (citation omitted).

Mr. Nabors argues that dismissal of claims against him is warranted because "there is no named individual plaintiff remaining that has any nexus with Nabors." Nabors Br. at 52. But ULC Monastery minister Michael Veal—whose efforts to solemnize marriages in Putnam County were blocked by Mr. Nabors—wishes to solemnize marriages in Putnam County and would clearly have individual standing. *See* (Decl. of Michael Veal, R. 122, PageID# 974); (Decl. of Robbie Miller, Ex. C (Veal Dep. Excerpts), R. 123-3, PageID# 1017-1021). Further, the Church itself suffers injury when Clerks refuse to issue marriage licenses to couples who wish to be married by ULC Monastery ministers, as it denigrates the Church's religious practices. In short, the absence of any named individual plaintiff alleging violations by Mr. Nabors does not preclude the Church's standing to seek relief against him.

**C.    Plaintiffs' Claims are Ripe**

The Clerk Defendants argue Plaintiffs' claims are not ripe because they have "no danger of action by [the Clerks] causing imminent injury to Plaintiffs." Crowell Br. at 46; Anderson Br. at 41; *see also* Nabors Br. at 46.  They are wrong. A claim is ripe if it is "fit for judicial decision" and "withholding court consideration" will cause the parties hardship.  *Hill v. Snyder*, 878 F.3d 193, 213 (6th Cir. 2017) (quoting *Abbott Labs v. Gardner,* 387 U.S. 136, 149 (1967)). Plaintiffs' claims meet both elements.

First, Plaintiffs' claims are fit for review.  Claims are fit for review if they present "purely legal" issues that "will not be clarified by further factual development."  *Id.* at 213-14 (citation omitted).  Thus, pre-enforcement facial constitutional challenges, like Plaintiffs' challenge here, are fit for review.  *See id.*; *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty.*, 274 F.3d 377, 399 (6th Cir. 2001) (plaintiffs could challenge ordinance's judicial review provisions before seeking permits under the ordinance); *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 290-91 (6th Cir. 1997) (facial challenges fit for review because court could resolve case by looking to statutory text and precedent).  The Clerks argue that, absent allegations that each clerk has rejected marriage licenses or recorded invalid licenses, Plaintiffs claims "hang[] on future contingencies" that "may never occur."  Crowell Br. at 46; *see also* Anderson Br. at 41; Nabors Br. at

32

46. But the Clerks cannot and do not deny that they will issue invalid marriage licenses for any marriage solemnized by a UCL Monastery minister, and Plaintiffs have alleged that ULC Monastery ministers intend to solemnize marriages in these counties. *See* (Decl. of Michael Veal, R. 122, PageID# 974); (SAC ¶¶ 38, 39, R. 80, PageID# 483); (Mem. Op., R. 236, PageID# 3219). As a result, no conjecture is necessary. The issue of whether it is unconstitutional to deprive ULC Monastery ministers of the right to solemnize valid legal marriages while granting that right to other ministers is squarely before the Court and requires no further factual development.

Second, failure to resolve the Act's constitutionality now will cause severe hardship. Although the Clerks repeat their refrain that there is no threat of enforcement, the Act's *mere existence* has caused Plaintiffs to cancel weddings and turn down requests to perform marriages, something they intend to continue doing. *See* (Decl. of Erin Patterson ¶ 6, R. 13, PageID# 85-86); (Decl. of Ambika Doran, Ex. E (Patterson Dep. 46:17-19), R. 146-5, PageID# 1907); (Decl. of Gabriel Biser ¶ 6, R. 14, PageID# 88); *see also* (Decl. of Michael Veal, R. 122, PageID# 974). Even if the Clerks will accept marriage licenses, the marriages would be susceptible to invalidation later. Waiting to challenge the Act in a private action is not feasible. ULC Monastery ministers would be forced to subject themselves to potential liability by performing marriages they know are invalid, and then wait to

be sued or prosecuted. *See* Tenn. Code Ann. § 36-3-303(a); Tenn. Code Ann. § 39-16-504(a)(1). But "Plaintiffs are bringing a pre-enforcement facial challenge to the constitutionality of the statute, and it is firmly established that a person should not have to risk arrest or face financial ruin to challenge the constitutionality of a statute." *Center for Inquiry*, Case No. 16-CV-2229, Order, Dkt. 18 at 8-9 (citing *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) and other cases). Other than a criminal or civil case against a minister, the constitutionality of the Act could arise in an annulment action, but a minister would not be a necessary party. In short, delaying review would put many marriages at risk of invalidation and leave ULC Monastery ministers with no practical way to vindicate their rights.

**D.     Under *Ex parte Young*, The Clerks Are Not Immune from a Suit to Enjoin Them from Implementing an Unconstitutional Statute.**

Each of the Clerks argues they are entitled to sovereign immunity under the Eleventh Amendment because they act as "state officials" in implementing the marriage license scheme. But "[P]laintiffs can sue the [Clerks], and it makes no difference whether [they] act[] for the State or the county. If [they] act[] for the State, *Ex parte Young* permits this injunction action against [them]. If [they] act[] for the county, neither sovereign immunity, qualified immunity, nor any other defense stands in the way at this stage of the case." *McNeil*, 945 F.3d at 994–95.

A party asserting Eleventh Amendment immunity bears the burden to show the defense applies. *Nair v. Oakland Cty. Cmty. Mental Health Auth.*, 443 F.3d

469, 474 (6th Cir. 2006).  The Clerks cannot meet that burden here: Immunity does not apply to claims seeking solely *injunctive* relief against a defendant with a connection to administration of the challenged law.[11]

The Clerks rely on *Ermold v. Davis*, 936 F.3d 429 (6th Cir. 2019), in which this Court found that a county clerk "acted on Kentucky's behalf when issuing (and refusing to issue) marriage licenses," and consequently enjoyed sovereign immunity as a state official from suits "seeking damages."  *Id.* at 433-34.  But the case says nothing to suggest sovereign immunity applies to claims—such as those here—seeking only injunctive relief.  To the contrary, notwithstanding her immunity defense, the clerk in *Ermold* (Kim Davis) was in fact subject to injunctive relief.  *See id.* at 432 ("In a different lawsuit over Davis's conduct . . . the district court enjoined Davis from refusing to issue marriage licenses.").  As the district court issuing that preliminary injunction held, even if Davis acted as a state official, sovereign immunity did not foreclose enjoining her "from violating

---

[11] Mr. Knowles insists that Plaintiffs are not seeking solely injunctive relief because the SAC states in one paragraph that Plaintiffs are entitled to "declaratory and injunctive relief, as well as damages, costs, and attorneys' fees."  Knowles Br. at 20; *see also* Nabors Br. at 57 ("ULC/Ministers are not entitled to any monetary relief against Nabors.").  But the reference to damages was inadvertent.  The "Prayer for Relief" in the SAC makes no claim for damages.  (SAC, R. 80, PageID# 495-496).  Plaintiffs have repeatedly stated that they seek only injunctive relief, and the District Court recognized this.  *See* (Mem. Op., R. 236, Page ID# 3242-3243).

[plaintiffs'] federal constitutional rights[.]" *Miller v. Davis*, 123 F. Supp. 3d 924, 933-34 (E.D. Ky. 2015) (citing *Ex parte Young*, 209 U.S. 123 (1908)).[12]

Regardless of whether they are "state" actors, the Clerks are proper defendants under *Ex parte Young*. The Clerks "bear[] the requisite connection to the enforcement of the [Tennessee] Marriage Laws due to [their] role in granting and denying applications for marriage licenses." *Bostic v. Schaefer*, 760 F.3d 352, 371 (4th Cir. 2014); *see also Jones v. Perry*, 215 F. Supp. 3d 563, 568 n.3 (E.D. Ky. 2016) (claim to enjoin county clerk from denying marriage license to incarcerated person "falls comfortably within the boundaries of the *Ex parte Young* exception"); *Nashville Cmty. Bail Fund v. Gentry*, 446 F. Supp. 3d 282, 301 (M.D. Tenn. 2020) ("[A] plaintiff challenging a state marriage statute may do so by suing the clerk who issues marriage licenses."); *Marie v. Moser*, 65 F. Supp. 3d 1175, 1193-94 (D. Kan. 2014) (*Ex parte Young* applied to allow injunction against county clerks requiring clerks to issue marriage licenses).

The Clerks' arguments to the contrary hinge on the premise that, because they will purportedly issue and record licenses involving ULC Monastery ministers (regardless of their legal effect), they do not "enforce" the law and therefore lack

---

[12]The injunction in *Miller* later was vacated as moot because Davis began issuing valid marriage licenses after a subsequent change in Kentucky law. *Ermold*, 936 F.3d at 432-33 (citing *Miller v. Davis*, 667 F. App'x 537, 538 (6th Cir. 2016)).

the "connection with the enforcement of the act" required by *Ex parte Young*. *E.g.*, (Crowell's Memorandum of Law, R. 207, PageID# 2607); (Knowles' Memorandum of Law, R. 216, PageID# 2862-2863). But the Clerks' narrow interpretation of *Young* is not consistent with the law.

First, the same connection between the Clerks and Plaintiffs' constitutional injuries sufficient to confer standing satisfies *Ex parte Young*'s requirements. *See Russell*, 784 F.3d at 1047; *Bevan & Associates, LPA v. Dewine*, No. 2:16-CV-0746, 2017 WL 2599225, at *9 (S.D. Ohio June 15, 2017) (requirements of *Ex parte Young* satisfied because "[t]he Court already has found that the threatened injury here has met the requirements of Article III standing."). Plaintiffs have standing to seek invalidation of the Act against the Clerks because—whether the Clerks issue an invalid license or refuse—they harm Plaintiffs in doing so. Therefore, it "would be a perverse reading of *Young*" to find the Clerks immune. *Russell*, 784 F.3d at 1047.

Second, "[t]he *Ex parte Young* doctrine is not limited to the single state officer with ultimate supervisory authority over any given law or government function." *Harbison v. Little*, No. 3:06-CV-01206, 2007 WL 6887552, at *8 (M.D. Tenn. July 19, 2007) (Trauger, J.) (quoting *Allied Artists Pictures Corp. v. Rhodes,* 473 F. Supp. 560, 566 (S.D. Ohio 1979)). It is irrelevant that the Clerks did not "promulgate" the Act or have authority to change it. *See, e.g.*, Nabors Br.

at 43.  A plaintiff need only "allege facts showing how a state official is connected to, or has responsibility for, the alleged constitutional violations."  *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013); *see also Durham v. McWhorter*, 789 Fed. App'x 533, 534 (6th Cir. 2020) ("[A] plaintiff may seek a prospective injunction against state officials who have 'some connection' to an ongoing constitutional violation.").

Third, state law delegates to the Clerks the responsibility to administer and implement the Act, sufficiently connecting them to its enforcement under *Ex parte Young.*  "[S]overeign immunity does not stand in the way of a lawsuit against a public official 'actively involved with administering' the alleged violation."  *McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 995 (6th Cir. 2019) (quoting *Doe v. DeWine*, 910 F.3d 842, 849 (6th Cir. 2018)).  Only the Clerks may issue marriage licenses; only the Clerks have authority to determine whether the license was "properly signed by the officiant"; and only the Clerks may record a properly signed license.  *See* Tenn. Code §36-3-103(c)(1).  "The statute [is] '***being given effect***' by the [Clerks], and therefore the [Clerks] [are] not immune from suit."  *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1135 (9th Cir. 2012) (emphasis added) (citations omitted).  *See, e.g.*, *Price v. Medicaid Director*, 838 F.3d 739, 747 (6th Cir. 2016) (state officials responsible for administering Ohio's Medicaid program subject to prospective injunction under *Ex parte Young*).

"As the Sixth Circuit has observed, that is why, for example, a plaintiff challenging a state marriage statute may do so by suing the clerk who issues marriage licenses." *Nashville Cmty. Bail Fund*, 446 F. Supp. 3d at 301 (citing *Durham v. Martin*, 905 F.3d 432, 434 (6th Cir. 2018)); *see id.* ("It does not matter that the defendant official believes himself to be merely following the letter of a statute; the premise of a § 1983 case such as this one is that, by acting according to one statute, rule, or policy that is not constitutional in origin, the defendant official has violated the U.S. Constitution . . . ."). Even accepting the Clerks' argument that they issue licenses as a "ministerial" duty, they are not immune. "Under *Ex parte Young* the inquiry is not into the nature of an official's duties but into the effect of the official's performance of his duties on the plaintiff's rights." *Finberg*, 634 F.2d at 54. The effect of the Clerks' performance of their duties is to issue and record an invalid marriage license for weddings officiated by ULC Monastery ministers. Thus, "courts have often allowed suits to enjoin the performance of ministerial duties in connection with allegedly unconstitutional laws." *Id.*

The Clerks are in much the same position as the defendants in *Const. Party of Pa. v. Cortes*, 824 F.3d 386, 396-99 (3d Cir. 2016) (*CCP II*). In that case, political parties and their members sued two state election officials to enjoin Pennsylvania laws allowing third parties to challenge candidate nomination papers in court. *Id.* at 389-90. One defendant, the Secretary of the Commonwealth, was

responsible for "receiv[ing]" and "examin[ing]" the nomination papers. *Id.* at 397-98. The Secretary argued he was immune because he had "no ability to prevent private suit under the statute or to prevent how [a court] will rule on the challenge." *Id.* at 397. The court disagreed, finding the law "does not bestow upon the Secretary an active role in the challenge process, [but] it certainly creates at least a minor administrative role in the challenge process" sufficient under *Ex parte Young*. *Id.* at 398. Similarly, the Clerks are responsible for receiving completed marriage licenses and recording them with the State, and as a result, they are "actively involved with administering the alleged violation." *McNeil*, 945 F.3d at 995.

The Clerks also suggest Plaintiffs must wait—indefinitely—for some more "imminent threat," even though their current purported issuance of invalid licenses harms Plaintiffs *now*. Courts have "decline[d] to read additional 'ripeness' or 'imminence' requirements into the *Ex parte Young* exception to Eleventh Amendment immunity in actions for declaratory relief beyond those already imposed by a general Article III and prudential ripeness analysis." *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 846-47, as *amended on den. of reh'g,* 312 F.3d 416 (9th Cir. 2002). As with ripeness, "[t]he *Ex parte Young* doctrine does not demand that a plaintiff first risk the sanctions of imminent prosecution or

enforcement in order to test the validity of a state law." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1338 (11th Cir. 1999).

Finally, none of the Clerks' additional immunity arguments has merit. They argue they are not responsible for enforcing the Act's criminal provisions (*e.g.*, Nabors Br. at 48), but a "lack of direct criminal enforcement authority does not foreclose [Plaintiff's] reliance on *Ex parte Young*." *Doe*, 910 F.3d at 848. They claim that "[t]he *Young* exception has been read narrowly," (*e.g.*, Anderson Br. at 25), relying primarily on *Children's Healthcare is a Legal Duty v. Deters*, 92 F.3d 1412, 1414 (6th Cir. 1996), but in *McNeil*, this Court rejected the defendant's reliance on the same phrase. *See McNeil*, 945 F.3d at 995 (6th Cir. 2019). Regardless, *Deters* is inapposite. There, the plaintiffs did "not seek to *enjoin* enforcement of [an] allegedly unconstitutional statute. Instead, the plaintiffs in effect pray[ed] that the federal courts permit a broader enforcement of certain statutes by striking down those provisions of the statutes which prevent their enforcement with respect to persons against whom the plaintiffs believe enforcement is proper. This would turn *Young* inside out." *Deters*, 92 F.3d at 1416 (some emphasis omitted) (some alterations in original) (internal citation omitted). Here, in contrast, "we have the opposite situation—a much more common situation—of a plaintiff seeking to enjoin enforcement of a statute that he claims violates the First Amendment." *Russell*, 784 F.3d at 1047.

In sum, the Clerks play a role in administering and enforcing the Act. They can refuse *and have refused* to issue marriage licenses for couples seeking to be married by ULC Monastery ministers. They also have issued and may issue invalid marriage licenses. They are responsible for administering marriage licenses in the state. They have a direct connection to the acts challenged by Plaintiffs, and therefore are subject to an injunction suit under *Ex parte Young*.[13]

**E. *Monell* Does not Apply Because Plaintiffs are Challenging State Law, Not Seeking to Hold Any Municipality Liable.**

Mr. Nabors next attempts to evade trial by stretching authority well beyond its limits and asserting immunity under *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). *See* Putnam Br. at 54. But *Monell* is irrelevant here. 42 U.S.C. § 1983 applies to "[e]very person who, under color" of law, deprives any citizen of their constitutional rights. *Monell* held Congress intended

---

[13] The Clerks also complain that denying dismissal forces clerks to incur the cost of defending a state law and potentially pay for Plaintiffs' attorneys' fees if the law is unconstitutional. *See* Crowell Br. at 42 n.13; Nabors Br. at 56-57. But if the Clerks act as state officials in issuing marriage licenses, as they claim, then this Court's precedent mandates that the State of Tennessee pay for any attorneys' fee award. *See Miller v. Caudill*, 936 F.3d 442, 452 (6th Cir. 2019) ("[B]ecause Davis acted on Kentucky's behalf when issuing and refusing to issue marriage licenses, the district court correctly imposed liability for the [attorneys' fee] award on the Commonwealth."). Recognizing this, the District Court directed the Clerks to notify the Attorney General of this Court's decision in *Miller*. (Tr., R. 150, PageID# 1982-83). The Clerks informed the District Court that they sent the notice, but the Attorney General "does not intend to take on representation of the county clerks at this time." (Anderson's Mem. of Law, R. 153, PageID# 2073).

"municipalities and local government units to be included among those persons to whom § 1983 applies." 436 U.S. at 690. To state a claim against a municipality the plaintiff must show "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* Conversely, plaintiffs *may not* hold a municipality liable solely because it employs a "person" who violates § 1983—"in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691.

But Plaintiffs here do not seek to hold any *municipality* liable, making *Monell* a red herring. The Clerks rely entirely on cases where a plaintiff sought relief from a municipal entity acting in its municipal capacity.[14] Here, in contrast, Plaintiffs are suing the Clerks for injunctive relief as a "person" executing *state* law, so there is no requirement to allege (let alone establish) a policy, practice, or custom that would allow municipal liability.[15] The Sixth Circuit has rejected

_____

[14]For example, Mr. Nabors cites *Arnold v. Metro. Gov't of Nashville & Davidson Cty.*, No. CIV 3:09CV0163, 2009 WL 2430822 (M.D. Tenn. Aug. 6, 2009), where plaintiffs sued a municipal government claiming they were improperly charged with violating a local building code. He also relies on *Hutchison v. Metro. Gov't of Nashville & Davidson Cty.*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010), in which a bus driver brought a § 1983 action against a municipality and its agents for an allegedly unlawful traffic stop by local police.

[15]Mr. Nabor's *Monell* argument is inconsistent with his sovereign immunity argument, in which he claims he is a "state" official. The Williamson and Rutherford clerks tacitly acknowledge this tension, and have largely dropped their

similar attempts to import *Monell*'s policy, practice or custom requirement into a case against a person acting as a state official, observing *Monell* is "not relevant" outside cases seeking to impose *municipal* liability. *Barachkov v. 41B Dist. Court*, 311 F. App'x 863, 872-73 (6th Cir. 2009); *see also Miller*, 123 F. Supp. 3d at 934.

In *Miller*, Rowan County Clerk Kim Davis raised the same *Monell* argument the Clerks raise here. The court flatly rejected it, finding that although Davis was a county official, *Monell* did not apply because the plaintiff did not target Davis as a *municipal policymaker*, but as a "person" enforcing state law. *Miller*, 123 F. Supp. 3d at 933 ("Because Plaintiffs seek to enjoin Davis from violating their federal constitutional rights, this Court has the power to grant relief under *Ex parte Young*."). Thus *Ex parte Young*—not *Monell*, determined whether injunctive relief was available. *Id.* at 934 n.4 (court "is indeed able to grant injunctive relief against Kim Davis in her official capacity" under the *Ex parte Young* exception); *Spann v. Hannah*, No. 20-3027, 2020 WL 8020457, at *3 (6th Cir. Sept. 10, 2020) ("But the policy or custom requirement is a liability standard for suits against

---

*Monell* arguments in their latest motions. (Crowell's Memorandum of Law, R. 207, PageID# 2605); (Anderson's Memorandum of Law, R. 211, PageID# 2738). The Hamilton County Clerk asserts *Monell*'s "municipal policy or custom" rule as the sole basis for dismissing Plaintiffs' § 1983 claim. (Knowles' Memorandum of Law, R. 216, PageID# 2871-2873). The Putnam County Clerk seeks to have it both ways, asserting both sovereign immunity and *Monell*. (Nabors' Memorandum of Law, R. 213, PageID# 2835-2837).

municipalities ... and it has no applicability to state officers who are immune from suit for damages but susceptible to suit under *Ex Parte Young* for injunctive relief.”) (quoting *Rounds v. Clements*, 495 F. App'x 938, 941 (10th Cir. 2012)).

As in *Miller* and *Barachkov*, *Monell* is inapplicable because Plaintiffs do not challenge a municipal policy or practice. They allege the Clerks implement an unconstitutional statute.

**F. Plaintiffs have Stated a Valid Claim under Rule 12(b)(6).**

Mr. Nabors also appears to argue that Plaintiffs have failed to state a claim under Rule 12(b)(6). Nabors Br. at 51, 55-57. In doing so, Mr. Nabors largely repeats what he argues elsewhere—that he has nothing to do with the law and has done nothing to harm Plaintiffs. The clerk in *Center for Inquiry v. Bean* made the same “failure to state a claim” argument, which the court recognized “is essentially a ripeness argument.” Case No. 16-CV-2229, Order, Dkt. 18 at 8-9. Mr. Nabors's arguments here fail for the same reason as his justiciability arguments. “To state a claim under § 1983, the plaintiff must allege” just two elements: (1) deprivation of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Shannon v. URS Energy & Const., Inc.*, No. 3:14-CV-01292, 2015 WL 1640133, at *1 (M.D. Tenn. Apr. 9, 2015). Plaintiffs have been deprived of a constitutional right through the Act's preferential treatment of other religions. The Clerks,

including Mr. Nabors, deny marriage licenses or issue legally invalid licenses, and they do so in reliance on the Act pursuant to authority delegated by the State. Plaintiffs have stated a valid Section 1983 claim.

**G.    Putnam County Clerk Wayne Nabors Used His Position to Discriminate Against ULC Monastery Ministers and Couples, and He Is a Proper Defendant Regardless of the Other Clerks' Arguments.**

All the Clerks are proper defendants, but Mr. Nabors in particular is an appropriate subject of injunctive relief.  Mr. Nabors's office refused to issue a marriage license to Plaintiffs Mr. Plumm and Ms. Farris.  *See* Decl. of Ambika Doran Ex. B (Farris Dep. 17:15-25:16), R. 146-2, PageID# 1837-1845; *id*. Ex. C (Plumm Dep. 17:6-26:25), R. 146-3, PageID# 1862-1871).  Mr. Nabors and his deputy clerk, Ms. Brown, acknowledge meeting Mr. Plumm and Ms. Farris and telling the couple that their marriage would be invalid, but deny that they refused a license.  (Nabors' Memorandum of Law, R. 213, PageID# 2831); (Affidavit of Brenda Brown ¶¶ 4, 11, R. 144-2, PageID# 1504, 1506); (Decl. of Wayne Nabors ¶¶ 4, 11, R. 144-1, PageID# 1488, 1490).  Mr. Plumm and Ms. Farris are prepared to testify as to the refusal at trial, but at this stage, the Court "must accept as true all material allegations of the complaint." *Parsons*, 801 F.3d 710.  Moreover, Mr. Nabors has not disputed the testimony of Rev. Veal, whom Mr. Nabors twice prevented from performing a wedding ceremony.  *See* (Decl. of Michael Veal, R. 122, PageID# 974); (Plaintiffs' Opposition Brief, R. 145, PageID# 1775); (Decl. of

Ambika Doran, Ex. A (Veal Dep. Excerpts), R. 146-1, PageID# 1805-1825).  In all events, Mr. Nabors is a proper defendant because he implements the Act by issuing (or refusing to issue) legally invalid marriage licenses.

## H.  The Court Should Exercise Supplemental Jurisdiction over Plaintiffs' State Constitutional Claims.

Mr. Knowles argue that the Court should not exercise supplemental jurisdiction over Plaintiffs' claims under to the Tennessee Constitution solely on the basis that Plaintiffs' other claims fail.  *See* Knowles Br. at 31.  Plaintiffs' federal claims against the Clerks do not fail, and as a result, there is no basis for the Court to decline supplemental jurisdiction over the state constitutional claims.

## VI.  CONCLUSION

For these reasons, the Court should affirm the District Court's decision denying the Clerk Defendants' motions to dismiss.

RESPECTFULLY SUBMITTED this 20th day of May, 2021.

**ADAMS AND REESE LLP**

By:*/s/ Rocklan W. King III*

**Rocklan W. King III** (BPR No 030643)
424 Church Street, Suite 2700
Nashville, TN 37219
Phone: (615) 259-1450; Fax: (615) 259-1470
rocky.king@arlaw.com

**Lucian T. Pera** (BPR No. 11641)
Crescent Center
6075 Poplar Avenue, Suite 700
Memphis, TN 38119
Phone: (901) 524-5278; Fax: (901) 524-5378
lucian.pera@arlaw.com

**DAVIS WRIGHT TREMAINE LLP**

**Bruce E.H. Johnson**
(WSBA No. 7667)
**Ambika K. Doran**
(WSBA No. 38237)
**Robert E. Miller**
(WSBA No. 46507)
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Phone: (206) 622-3150; Fax: (206) 757-7700
brucejohnson@dwt.com
ambikadoran@dwt.com
robertmiller@dwt.com

*Attorneys for Plaintiffs Universal Life Church Monastery
Storehouse, Erin Patterson, and Gabriel Biser*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because this brief contains 11,655 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface and the type-style requirements of Fed. R. App. P. 32(a)(5-6) because this brief has been prepared in a proportionately spaced typeface using Times New Roman 14-point font.


Date: May 20, 2021


*/s/ Rocklan King*

# CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: May 20, 2021

/s/ *Rocklan King*

# DESIGNATION OF COURT DOCUMENTS

*Universal Life Church Monastery Storehouse, et al. v. Nabors, et al.*,
No. 2:19-Cv-00049 (M.D. Tenn.)

| Docket Entry No. | Description | Page ID. # |
|---|---|---|
| 1 | Complaint for Declaratory and Injunctive Relief | 1-19 |
| 13 | Declaration of Erin Patterson in Support of Plaintiffs' Motion for Temporary Restraining Order to Enjoin Enforcement of Tennessee Statute 36-3-301, as amended by Tennessee 2019 Public Chapter 415 | 84-86 |
| 14 | Declaration of Gabriel Biser in Support of Plaintiffs' Motion for Temporary Restraining Order to Enjoin Enforcement of Tennessee Statute 36-3-301, as amended by Tennessee 2019 Public Chapter 415 | 87-89 |
| 16 | Declaration of Robert E. Miller in Support of Plaintiffs' Motion for Temporary Restraining Order to Enjoin Enforcement of Tennessee Statute 36-3-301, as amended by Tennessee 2019 Public Chapter 415 | 93-95 |
| 16-1 | Exhibits A-I [to Declaration of Robert E. Miller in Support of Plaintiffs' Motion for Temporary Restraining Order to Enjoin Enforcement of Tennessee Statute 36-3-301, as amended by Tennessee 2019 Public Chapter 415] | 96-135 |
| 23 | Motion of Williamson County Clerk Elaine Anderson, Hamilton County Clerk William K. Knowles, and Rutherford County Clerk Lisa Duke Crowell to be Excused from July 3, 2019 Hearing | 152-156 |
| 40 | Declaration of George Freeman in Support of Plaintiffs' Motion for Temporary Restraining | 203-208 |

| Docket Entry No. | Description | Page ID. # |
|---|---|---|
| | Order to Enjoin Enforcement of Tennessee Statute 36-3-301, as amended by Tennessee 2019 Public Ch. 415 | |
| 53 | Order | 318-319 |
| 80 | Second Amended Complaint for Declaratory and Injunctive Relief | 476-498 |
| 102-1 | Memorandum of Law in Support of Defendant's Motion to Dismiss | 628-633 |
| 102-2 | Order, Case No. 16-CV-2229 | 634-643 |
| 116-6 | Tenn. Att'y Gen. Op. 90-49 (Apr. 9, 1990) | 884-888 |
| 122 | Declaration of Michael Veal in Support of Plaintiff's Opposition to State Defendants' Motion to Dismiss | 973-975 |
| 123-1 | Deposition Transcript Excerpts of September 13, 2019 Deposition of Gale E. Plumm, III | 980-993 |
| 123-3 | Deposition Transcript Excerpts of September 6, 2019 Deposition of Michael Thomas Veal | 1009-1022 |
| 139 | Hamilton County Clerk William F. Knowles' Trial Brief | 1245-1270 |
| 144-1 | Affidavit of Wayne Nabors | 1488-1503 |
| 144-2 | Affidavit of Brenda Brown | 1504-1513 |
| 145 | Plaintiffs' Opening Brief in Support of Permanent Injunction | 1761-1800 |
| 146-1 | Deposition Transcript Excerpts of September 6, 2019 Deposition of Michael Thomas Veal | 1804-1826 |
| 146-2 | Deposition Transcript Excerpts of September 13, 2019 Deposition of Timeaka Sean Farris | 1827-1853 |
| 146-3 | Deposition Transcript Excerpts of September 13, 2019 Deposition of Gale E. Plumm, III | 1854-1877 |
| 146-5 | Deposition Transcript Excerpts of September 11, 2019 Deposition of Erin Michelle Patterson | 1899-1912 |

| Docket Entry No. | Description | Page ID. # |
|---|---|---|
| 147 | Declaration of Dallas Goschie in Support of Plaintiffs' Request for Permanent Injunction | 1927-1929 |
| 147-1 | Plaintiff's Disclosures | 1930-1969 |
| 150 | Transcript of Proceedings, November 1, 2019, Honorable Chief Dist. Judge Waverly D. Crenshaw, Jr. | 1974-1994 |
| 153 | Memorandum of Law Regarding Ability to Proceed to Trial in Light of State Defendants' Interlocutory Appeal Filed by Williamson County Clerk Elaine Anderson | 2065-2077 |
| 194 | Order | 2560-2562 |
| 206 | Rutherford County Clerk Lisa Crowell's Motion to Dismiss | 2594-2597 |
| 207 | Rutherford County Clerk Lisa Crowell's Memorandum of Law in Support of Motion to Dismiss | 2598-2623 |
| 208 | State Defendants' Motion to Dismiss Second Amended Complaint | 2624-2627 |
| 209 | Memorandum of Law in Support of State Defendants' Motion to Dismiss Second Amended Complaint | 2628-2655 |
| 209-1 | September 10, 2019 Transcript Excerpts of Deposition of Gabriel Edward Biser | 2656-2673 |
| 209-2 | September 11, 2019 Transcript Excerpts of Deposition of Erin Michelle Patterson | 2674-2696 |
| 209-3 | September 13, 2019 Transcript Excerpts of Deposition of Gale E. Plumm, III | 2697-2707 |
| 209-4 | Order on Defendant's Constitutional Challenge of Tenn. Code Ann. § 36-3-301(a)(2) | 2708-2712 |
| 209-5 | Plaintiffs' Disclosures | 2713-2718 |
| 209-6 | September 13, 2019 Transcript Excerpts of Deposition of Timeaka Sean Farris | 2719-2728 |

| Docket Entry No. | Description | Page ID. # |
|---|---|---|
| 210 | Williamson County Clerk Elaine Anderson's Motion to Dismiss | 2729-2732 |
| 211 | Williamson County Clerk Elaine Anderson's Memorandum of Law in Support of Motion to Dismiss | 2733-2759 |
| 211-1 | Unreported cases | 2760-2817 |
| 212 | Putnam County Clerk Wayne Nabors' Motion to Dismiss | 2818-2821 |
| 213 | Putnam County Clerk Wayne Nabors' Memorandum of Law in Support of Motion to Dismiss | 2822-2849 |
| 215 | Motion to Dismiss of William F. Knowles, Hamilton County Clerk | 2851-2852 |
| 216 | Memorandum of Law in Support of Motion to Dismiss of William F. Knowles, Hamilton County Clerk | 2853-2875 |
| 216-1 | Attorney General Opinions and Cases | 2876-2921 |
| 222 | Brief of Plaintiffs Universal Life Church Monastery Storehouse, Gale Plumm, Timeaka Farris, Erin Patterson, and Gabriel Biser in Response to State Defendants' Motions to Dismiss | 2935-2968 |
| 222-1 | Declaration of Ambika Doran in Support of Brief of Plaintiffs Universal Life Church Monastery Storehouse, Gale Plumm, Timeaka Farris, Erin Patterson, and Gabriel Biser in Response to State Defendants' Motions to Dismiss | 2969-3042 |
| 222-2 | Declaration of Michael Veal in Support of Plaintiffs' Opposition to State Defendants' Motion to Dismiss | 3043-3046 |
| 223 | Brief of Plaintiffs Universal Life Church Monastery Storehouse, Gale Plumm, Timeaka | 3047-3079 |

| Docket Entry No. | Description | Page ID. # |
|---|---|---|
| | Farris, Erin Patterson, and Gabriel Biser in Response to Clerk Defendants' Motions to Dismiss | |
| 224 | Reply Brief of Putnam County Clerk Wayne Nabors to Brief of Plaintiffs in Response to Clerk Defendants' Motions to Dismiss | 3080-3087 |
| 225 | Williamson County Clerk Elaine Anderson's Reply Brief | 3088-3094 |
| 226 | Reply in Support of State Defendants' Motion to Dismiss Second Amended Complaint | 3095-3102 |
| 227 | Rutherford County Clerk Lisa Crowell's Reply to Plaintiffs' Brief in Response to Motion to Dismiss | 3103-3110 |
| 229 | Reply of William F. Knowles in Support of Motion to Dismiss | 3181-3187 |
| 229-1 | Exhibit A in Support of Reply of William F. Knowles in Support of Motion to Dismiss | 3188-3189 |
| 229-2 | Exhibit B in Support of Reply of William F. Knowles in Support of Motion to Dismiss | 3190-3199 |
| 236 | Memorandum Opinion | 3215-3246 |
| 237 | Order | 3247-3248 |
| 239 | State Defendants' Notice of Appeal | 3253-3256 |
| 241 | Notice of Appeal Filed by Williamson County Clerk Elaine Anderson | 3263-3265 |
| 242 | Notice of Appeal Filed by Rutherford County Clerk Lisa Duke Crowell | 3266-3268 |
| 244 | Notice of Appeal Filed by Hamilton County Clerk William Knowles | 3270-3271 |
| 245 | Notice of Appeal Filed by Putnam County Clerk Wayne Nabors | 3272-3275 |

| Docket Entry No. | Description | Page ID. # |
|---|---|---|
| **252** | Plaintiff Universal Life Church Monastery Storehouse, Erin Patterson, and Gabriel Biser's Notice of Filing of Cross Appeal | **3292-3295** |