**21-5057 and 21-5100**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**UNIVERSAL LIFE CHURCH MONASTERY, et al.,**
**Plaintiffs-Appellee,**

**v.**

**WAYNE NABORS, et al.,**
**Defendants.**

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NORTHEAST DIVISION

## REPLY BRIEF OF DEFENDANT RUTHERFORD COUNTY CLERK LISA
## CROWELL – APPELLANT

**NICHOLAS C. CHRISTIANSEN**
**DANIEL W. AMES**
**16 Public Square North**
**Murfreesboro, TN 37130**
**Telephone: (615) 893-5522**
**Facsimile: (615) 849-2135**
**nchristiansen@mborolaw.com**
**dames@mboroaw.com**

*Attorneys for Defendant-Appellant*

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION ...............................................................................................1

ARGUMENT ......................................................................................................2

I.  Mrs. Crowell is Entitled to the State's Sovereign Immunity
    under the Eleventh Amendment .................................................................2

II. Plaintiffs do not have standing to bring a claim against Mrs. Crowell ...............9

CONCLUSION ..................................................................................................17

CERTIFICATE OF COMPLIANCE........................................................................18

CERTIFICATE OF SERVICE ..............................................................................19

# TABLE OF AUTHORITIES

Cases

*Am. Atheists, Inc. v. Shulman*, 21 F.Supp. 3d 856 (E.D. Ky. 2014) ........................16

*Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014)...............................................2, 15

*Children's Healthcare is a Legal Duty v. Deters*,
    92 F.3d 1412 (6th Cir. 1996) ....................................................................6, 17

*Const. Party of Pa. v. Aichele*, 757 F.3d 347 (3rd Cir. 2014) .................................12

*Center For Inquiry, Inc. v. Warren*, 2019 WL 3859310
    (N.D. Tex. Aug. 16, 2019)..............................................................................12

*Center For Inquiry, Inc. v. Warren*, 845 Fed.Appx. 325
    (5th Cir. Feb. 10, 2021) ...........................................................12, 13, 14, 15

*Center For Inquiry, Inc. v. Bean*, Case No. 16-CV-2229
    (C.D. Ill. Nov. 28, 2016).........................................................................15, 16

*Center For Inquiry, Inc. v. Marion Cir. Ct. Clerk*,
    758 F.3d 869 (7th Cir. 2014) ................................................................15, 16

*Doe v. Dewine*, 910 F.3d 842 (6th Cir. 2018)..........................................................5

*Durham v. Martin*, 388 F.Supp. 3d 919, 932 (M.D. Tenn. 2019),
    aff'd, 789 F. App'x 533 (6th Cir. 2020) ....................................................1, 9

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) .....................................16

*Ex Parte Young*, 209 U.S. 123 (1908) ...................................................................4, 9

*Finberg v. Sullivan*, 634 F.2d 50 (3d Cir. 1980)......................................................11

*Jones v. Perry*, 215 F.Supp.3d 563 (E.D. Ky. 2016)............................................3, 16

*Long v. Van de Kamp*, 961 F.2d 151 (9th Cir. 1992) ...............................................9

*Marie v. Moser*, 65 F.Supp.3d 1175 (D. Kan. 2014).................................................4

*McNeil v. Community Probation Services, LLC*, 945 F.3d 991
    (6th Cir. 2019)...............................................................................5, 11

*Nashville Cmty. Bail Fund v. Gentry*, 446 F.Supp.3d 282
    (M.D. Tenn. 2020) .........................................................................3, 4

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) .................................................8

*Plunderbund Media, L.L.C. v. DeWine*, 753 F. App'x 362 (6th Cir. 2014)............12

*Price v. Medicaid Director*, 838 F.3d 739 (6th Cir. 2016)........................................6

*Russell v. Lundergan-Grimes*, 784 F.3d 1037 (6th Cir. 2015) ..........................5, 6, 9

*Scott v. Dekalb Cty. Bd. of Elections & Voter Registration*,
    2005 WL 8155742 (N.D. Ga. Aug. 5, 2005)..........................................11, 12

*Southern Blasting Services, Inc. v. Wilkes County, NC*,
    288 F.3d 584 (4th Cir. 2002) .......................................................................15

*Winsness v. Yocom*, 433 F.3d 727 (10th Cir. 2006)................................................11


Tennessee State Statutes

T.C.A. § 36-3-104 ......................................................................................................7


Tennessee Attorney General's Opinions

Tenn. Atty. Gen. Op. 87-151, 1987 WL 2743093 (Sept. 17, 1987).........................7

## INTRODUCTION

As mentioned in Mrs. Crowell's Brief, the District Court erred by not analyzing the sovereign immunity and standing arguments as to each Defendant separately. Plaintiffs have also generally predicated their arguments against the Clerk's collectively. However, "in order to avail himself of Ex parte Young, a plaintiff must identify and sue the state officer or officers appropriate to his particular claim." *Durham v. Martin*, 388 F. Supp. 3d 919, 932 (M.D. Tenn. 2019), aff'd, 789 F. App'x 533 (6th Cir. 2020) (emphasis in original). The allegations against each of the named county clerks should be examined individually. To this point, the allegations brought against Mrs. Crowell are not sufficient to survive her motion to dismiss.

# ARGUMENT

## I. Mrs. Crowell is entitled to the State's sovereign immunity under the Eleventh Amendment

Plaintiffs do not dispute that Mrs. Crowell acts as a state official when she processes marriage licenses. Instead, Plaintiffs argue that Mrs. Crowell is not entitled to sovereign immunity under the *Ex Parte Young* exception because Plaintiffs seek only *injunctive* relief. Plaintiffs lump Mrs. Crowell in with all other County Clerks in this case—and, seemingly, with every other non-party county clerk in the State of Tennessee—and assert that Mrs. Crowell bears the requisite connection to the enforcement of Tennessee's marriage laws simply by her role in processing marriage applications. Plaintiffs rely upon several cases in their Brief in support of this argument. However, each of the cases cited by Plaintiffs are inapposite to the case at bar.

First, Plaintiffs rely on *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014). At issue in *Bostic* was a challenge to Virginia's prohibition on same-sex marriage. *Bostic*, 760 F.3d at 368. In *Bostic*, the county court clerk, who was charged under state law for issuing marriage licenses and filing records of marriage, ***took action to enforce the challenged law by denying a same-sex couple's request for a marriage license***. *Id.* The *Bostic* Court found the plaintiffs had standing and that *Ex Parte Young* did not provide the county court clerk with immunity because the plaintiffs could "trace this denial to [the County Court Clerk's] ***enforcement*** of the allegedly

2

unconstitutional [state law]." *Id.* at 371 (emphasis added). In the case at bar, Plaintiffs have alleged no action on the part of Mrs. Crowell that she has refused to process or otherwise denied marriage licenses involving ordinations by online ministers.

Next, Plaintiffs rely on *Jones v. Perry*, 215 F.Supp.3d 563 (E.D. Ky. 2016). In *Jones*, the county clerk **refused** to issue a marriage license to a plaintiff couple via the county clerk's blanket policy that required both spouses to physically appear at the clerk's office to apply for and obtain a marriage license. *Jones*, 215 F.Supp.3d at 565. The county clerk believed that state law compelled her to institute the in-person policy. *Id.* The plaintiffs were unable to physically appear at the clerk's office to apply for a license because one of them was incarcerated. *Id.* The *Jones* Court noted in a footnote that the county clerk was not entitled to sovereign immunity under *Ex Parte Young* because the exception to the immunity doctrine empowered a federal court to enjoin a state official "to conform their future **conduct** to the requirements of federal law". *Id.* at 570, n.4 (emphasis added). Plaintiffs in this case have not alleged that Mrs. Crowell has engaged in any conduct denying them a marriage license and, as such, there is no conduct by Mrs. Crowell that can or should be enjoined.

Plaintiffs also rely on *Nashville Cmty. Bail Fund v. Gentry*, 446 F.Supp.3d 282 (M.D. Tenn. 2020). However, that case is also inapplicable to the instant matter.

3

In *Gentry*, a court clerk enforced certain judicial orders affecting a charitable bail fund. *Gentry*, 446 F.Supp.3d at 289-93, 300-01. The plaintiff alleged that the court clerk took ***affirmative steps to refuse*** acceptance of payment from the charitable bail fund, as well as other measures to effectuate the court orders against the bail fund. *Id.* The exact opposite scenario is occurring in this case with respect to Mrs. Crowell. As stated repeatedly throughout this litigation, Plaintiffs make no allegation that Mrs. Crowell has denied, or has threatened to deny, a marriage license involving an online ordained minister. For immunity to be removed, the state official has to take some action, or threaten to take some action, to enforce the challenged law. *Ex Parte Young*, 209 U.S. at 156.

Plaintiffs also rely on *Marie v. Moser*, 65 F.Supp.3d 1175 (D. Kan. 2014). The law at issue in *Moser* involved a state law that banned same-sex marriages. *Marie*, 65 F.Supp.3d at 1185. The *Marie* Court found that the plaintiffs could sue the defendant clerks because the defendant clerks, ***acting on account of the challenged state law, refused to issue marriage licenses to plaintiffs***. *Id.* at 1189 (emphasis added). In addition, the case included facts that a deputy clerk read a prepared statement that the state's ban on same-sex marriage was the only reason the clerk refused to issue a license to plaintiffs. *Id.* The facts alleged against Mrs. Crowell in this case are devoid of anything similar to the foregoing.

Finally, Plaintiffs cite to *McNeil v. Community Probation Services, LLC*, 945 F.3d 991 (6th Cir. 2019), for the proposition that "sovereign immunity does not stand in the way of a lawsuit against a public official '***actively involved in administering***' ***the alleged violation.***" *McNeil*, 945 F.3d at 995 (emphasis added). In using the phrase "actively involved in administering", the *McNeil* Court relied upon *Doe v. Dewine*, 910 F.3d 842 (6th Cir. 2018), which, importantly, echoed the requirement that "a state official must possess some connection with the enforcement of the [challenged law] . . . . ***and must threaten [or] be about to commence proceedings—*** ***that is, it must be likely that the official will enforce the law against the plaintiff.***" *Doe*, 910 F.3d at 848 (citations omitted) (internal quotation marks omitted) (emphasis added). "General authority to enforce the laws of the state is not sufficient to make government officials proper parties to litigation challenging the law." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1048 (6th Cir. 2015) (citation omitted). Examples of an official being "actively involved in administering" a challenged law include promulgating regulations to implement the challenged law, operating databases or other systems to implement the challenged law, having prosecutorial authority to enforce the challenged law, training state or local personnel about how to implement the challenged law, or taking some other action in furtherance of the challenged law's execution. *See Doe*, 910 F.3d at 848-49; *Russell*, 784 F.3d at 1048-49. There are not allegations that Mrs. Crowell has

engaged in any of these activities with respect to the challenged law in this case nor have Plaintiffs alleged that Mrs. Crowell has threatened to do so.

In the end, none of the foregoing cases cited by Plaintiffs support their argument that Mrs. Crowell's sovereign immunity from suit is removed under the *Ex Parte Young* exception. In fact, the case law relied upon by Plaintiffs helps demonstrate a key distinction in this case—that Plaintiffs do not have standing to sue Mrs. Crowell and also that Mrs. Crowell is entitled to sovereign immunity where there are no allegations that she as enforced, or threatened to enforce, the challenged statute against Plaintiffs. *Ex Parte Young* "requires more than a bare connection to administering a statute." *Russell*, 784 F.3d at 1047. "Holding that a state official's obligation to execute the laws is a sufficient connection to the enforcement of a challenged statute would extend *Young* beyond what the Supreme Court has intended and held." *Id.* at 1046 (quoting *Children's Healthcare is a Legal Duty v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996)). Plaintiffs argue that the statute is "being given effect by the [Clerks], and therefore the [Clerks] [are] not immune from suit. (*See* Plaintiffs' Br., at 38).[1] But, even by Plaintiffs' own allegations in the Second

---

[1] Plaintiffs cite to *Price v. Medicaid Director*, 838 F.3d 739, 747 (6th Cir. 2016), but that case actually helps Mrs. Crowell's position. The court in *Price* stated that "a federal court may, without violating the Eleventh Amendment, issue a prospective injunction against a state officer to end a ***continuing violation of federal law***. *Price*, 838 F.3d at 747-47 (emphasis added). "More to the point here, in suits concerning a state's payment of public benefits under federal law, a federal court may enjoin the state's officers to comply with federal law by awarding those benefits

6

Amended Complaint, Mrs. Crowell has not given any effect to the challenged statute, as there is no allegation that Mrs. Crowell has denied, or has threatened to deny, issuance of a marriage license involving online ordained ministers. (*See* RE 80, Page ID# 476). Plaintiffs even acknowledge that Mrs. Crowell "adhere[s] to the Attorney General's directive that [she] may not question a minister's ordination . . . .", which necessarily means that she does not possess the authority to refuse issuance of a marriage license based on a minister's qualifications. (Plaintiff's Br., at 4). The identity of the officiant is not required for the marriage license application. T.C.A. § 36-3-104. What's more, Tennessee law does not authorize Mrs. Crowell to scrutinize the qualifications of an officiant. *See* Tenn. Atty. Gen. Op. No. 87-151, 1987 WL 2743093 (Sept. 17, 1987),

Plaintiffs also argue that Mrs. Crowell—by her very nature as a county clerk in Tennessee—has a sufficient connection to the challenged statute to warrant standing and to justify the inapplicability of sovereign immunity. (Plaintiff's Br., at 36). The District Court found that "the path to invalidating a statute restricting who

---

in a certain way going forward—even if the court may not order those officers to pay out public benefits wrongly withheld in the past." Because there are no allegations that Mrs. Crowell has refused to issue a marriage license to Plaintiffs (akin to there being no allegations that a state officer withheld certain public benefits under federal law like in *Price*), Mrs. Crowell has not violated Plaintiffs' federal rights in the first instance. Thus, unlike *Price* where *Ex Parte Young* permitted a federal court to enjoin state officers to conform their conduct with federal law, there is not a similar injunctive order that can be issued as against Mrs. Crowell because her conduct already conforms to federal law.

may solemnize marriage is well trodden, and consistently runs through county clerks." (Memorandum Opinion, R. 236, Page ID# 3064). Mrs. Crowell does not argue that a county clerk can *never be* sued in a challenge to marriage license laws or even with respect to challenged law at issue here, but rather that *she* is entitled to sovereign immunity in the instant action because there is no allegation that she has taken in action in furtherance of the challenged law by refusing or threatening to refuse to issue or record a marriage license signed by a ULC minister. Simply put, there is no conduct of Mrs. Crowell to be enjoined.[2] "[A]ny probe into the existence of a *Young* exception should gauge (1) the ability of the official to enforce the statute at issue under his statutory or constitutional powers, and (2) the demonstrated willingness of the official to enforce the statute." *Okpalobi v. Foster,* 244 F.3d 405, 417 (5th Cir. 2001). "Absent a real likelihood that the state official will employ his

---

2. Plaintiffs' Brief filed in Response to the State Defendants' Brief is telling as to why Mrs. Crowell is not a proper party to this litigation. Plaintiffs argue that there is a threat of enforcement because, *inter alia*, "county clerks have 'enforced' the Act by refusing to issue marriage licenses, and ULC Monastery ministers have reason to fear prosecution for performing unauthorized marriages." (Plaintiffs' Resp. Br. to State Def. Br., at 35). But there are no allegations that Mrs. Crowell refused to issue marriage licenses for ULC Monastery-officiated weddings. And in arguing why a permanent injunction against the State Defendants would redress Plaintiffs' injuries, Plaintiffs assert that the Court could order the Attorney General to direct county clerks to issue and record marriage licenses for ULC Monastery-officiated marriages. (*Id.* at 37). However, there are no allegations that Mrs. Crowell does not issue and recording marriage licenses for ULC Monastery-officiated marriages, and Plaintiffs' have not alleged that she has threatened to refuse doing so.

supervisory powers against plaintiffs' interests, the Eleventh Amendment bars federal court jurisdiction." *Long v. Van de Kamp,* 961 F.2d 151, 152 (9th Cir. 1992) (per curiam).

Finally, Mrs. Crowell respectfully disagrees with Plaintiffs' assertion that her interpretation of *Ex Parte Young* is too narrow. Plaintiffs' arguments and case law submitted in support thereof calls upon this Court to unduly expand the *Ex Parte Young* exception to sovereign immunity beyond what the Supreme Court has intended and held. *See Russell*, 784 F.3d at 1046. To this point, Plaintiffs ignore an essential requirement of the *Ex Parte Young* exception, namely, that for immunity to be removed the state official has to take some action, or threaten to take some action, to enforce the challenged law. *Ex Parte Young*, 209 U.S. at 156 (holding that injunctive relief is available against officials "clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act"). "[I]n order to avail himself of Ex parte Young, a plaintiff must identify and sue the state officer or officers appropriate to his particular claim." *Durham v. Martin*, 388 F. Supp. 3d 919, 932 (M.D. Tenn. 2019), aff'd, 789 F. App'x 533 (6th Cir. 2020) (emphasis in original). Plaintiffs' allegations as to Mrs. Crowell fail to meet this requirement. Accordingly, Plaintiffs' claims against Mrs. Crowell are barred by sovereign immunity.

## II.    <u>**Plaintiffs lack standing to sue Mrs. Crowell**</u>

Plaintiffs argue that the alleged harm they suffer is traceable to the Clerks in two ways: (1) "the Clerks can turn away officiants or refuse to issue marriage licenses based on a minister's religious affiliation (as Mr. Nabors has done); and (2) even if the Clerks issue and record a license, Plaintiffs suffer a violation of their rights under the First Amendment when the Clerks issue a legally invalid license." (Plaintiffs' Br., at 11-12).  There are no allegations that Mrs. Crowell has turned away officiants or refused to issue marriage licenses based on a minister's religious affiliation.  (*See* RE 80, Page ID# 476).  As such, Plaintiffs apparent position as to Mrs. Crowell is that their alleged injury-in-fact (issuance of an invalid marriage license) is traceable to Mrs. Crowell simply by reason of her alleged ministerial act in issuing and recording a marriage license while the challenged statute remains in effect.[3]  Plaintiffs claim that a county clerk's recording of ULC Monastery minister-ordained marriage licenses in the face of the challenged law still executes a rule that is unconstitutional and that such action causes an injury.  (Plaintiffs' Br., at 20).

---

3.    In Plaintiffs' Response to Mrs. Crowell's Motion to Dismiss, Plaintiffs raised, for the first time, a new assertion regarding their purported "injury-in-fact"— that Plaintiffs are still injured if county clerks like Mrs. Crowell issue marriage licenses, notwithstanding the Amendment, wherein a ULC minister solemnized the marriage because such license would supposedly be legally invalid under the Amendment.  (RE 223, PageID #3060).  In error, the District Court accepted this argument from Plaintiffs even though it was never pled by Plaintiffs in the Second Amended Complaint.

Mrs. Crowell urges the Court to not accept Plaintiffs' circular, red herring argument, as doing so would eviscerate the requirement that "the mere presence on the statute books of an unconstitutional statute, in the absence of enforcement or credible threat of enforcement, does not entitle anyone to sue, even if they allege an inhibiting effect on constitutionally protected conduct prohibited by the statute." *Winsness v. Yocom,* 433 F.3d 727, 732 (10th Cir. 2006) (citation omitted) (emphasis added). Mrs. Crowell does not "enforce" the challenged statute when she records a marriage license signed by a ULC Monestary minister; in all of the cases cited by Plaintiffs the defendant clerk or other state official has taken affirmative steps to enforce the challenged law by ***refusing or denying*** a license in furtherance of the challenged law.

Plaintiffs rely upon *Finberg v. Sullivan*, 634 F.2d 50 (3d Cir. 1980), *McNeil v. Community Probation Services, LLC*, 945 F.3d 991 (6th Cir. 2019), and *Scott v. Dekalb Cty. Bd. Of Elections & Voter Registration*, 2005 WL 8155742 (N.D. Ga. Aug. 5, 2005) and conflate their argument about "license invalidity" with the notion ministerial duties, arguing that Plaintiffs' injury is no less traceable to Mrs. Crowell even if she is engaging in a ministerial duty when issuing marriage licenses. But *Finberg* (sheriff and prothonotary took action to freeze bank accounts) and *McNeil* (county sheriff detaining individuals via enforcement of probation-violation warrants and bail amounts established by state law and set by a local judges) both

11

involved state officials taking some action in direct furtherance of the challenged law. Here, there are no allegations that Mrs. Crowell has taken action in direct furtherance of the challenged law. And in *Scott* the court actually dismissed the state official defendant due to its "nominal role" in enforcement. *Scott*, 2005 WL 8155742, at *4.

Plaintiffs rely on *Const. Party of Pa. v. Aichele*, 757 F.3d 347 (3rd Cir. 2014) (*CPP I*), for the proposition that the mere existence of the challenged statute in this case (marriage solemnization restriction) has chilled and altered Plaintiffs' behavior and that, because Mrs. Crowell administers Tennessee's marriage licensing statutes, Plaintiffs' injuries are fairly traceable to the Mrs. Crowell. *Aichele* is distinguishable from the present case because Plaintiffs have not supported their claims of subjective chill with any evidence of potential enforcement by Mrs. Crowell (*i.e.*, past enforcement, warning letters, or an attribute making enforcement more likely) as is required in this Circuit. *Plunderbund Media, L.L.C. v. DeWine*, 753 F. App'x 362, 366-67 (6th Cir. 2018). *Aichele* is also distinguishable in that no local officials were named defendants; the defendants included the Secretary of the Commonwealth of Pennsylvania, the Commissioner of the Pennsylvania Bureau of Commissions, Elections, and Legislation, and the Pennsylvania Attorney General. *Id.* at 350.

Plaintiffs also rely upon *Ctr. For Inquiry, Inc. v. Warren*, 2019 WL 3859310 (N.D. Tex. Aug. 16, 2019), vacated by *Ctr. for Inquiry, Inc. v. Warren*, 845

Fed.Appx. 325 (5th Cir. Feb. 10, 2021), for the proposition that standing exists against county clerks with respect the state marriage ordination statutes. (Plaintiffs' Br., at 27-28). The challenged law in *Warren* was a Texas statute that allowed officers of religious organization, but not secular celebrants, to conduct marriage ceremonies. *Warren*, 845 Fed.Appx. at 326. ***The plaintiffs alleged that a county clerk enforced the challenged law by refusing to record marriage licenses signed by secular celebrants. Id.*** In fact, the plaintiff's complaint specifically alleged that the defendant county clerk "'has not and will not record licenses' signed by someone who is not legally authorized to perform a marriage ceremony." *Id.* at 327. The plaintiffs sought a declaratory judgment against the defendant county clerk to accept marriages conducted by the plaintiffs, as well as injunctive relief enjoining the county clerk defendants from precluding secular celebrants like plaintiffs from conducting marriage ceremonies. *Id.* While the district court in *Warren* found that standing existed as to the county clerk defendant who refused to issue marriage licenses in furtherance of the challenged law, the Fifth Circuit vacated that decision, holding that complete relief could not be afforded to the plaintiffs because county prosecutors—who prosecuted and investigated criminal offenses—were not parties to the suit. *Id.* at 328-29.

In their Brief, Plaintiffs quickly dispense with the Fifth Circuit's opinion in *Warren*, and instead attempt to highlight the district court's reasoning as to why

standing existed as to the defendant county clerk who enforced the challenged law by refusing to record marriage licenses signed by secular celebrants. (Plaintiffs' Br., at 27-28). Again, there is no allegation that Mrs. Crowell refused to record any marriage license in this matter, and so Plaintiffs' reliance on this point in *Warren* is irrelevant. However, more germane to the issues raised on appeal regarding Mrs. Crowell is the Fifth Circuit's reasoning about why it vacated and dismissed the case on appeal, as the same illustrates the distinction Mrs. Crowell makes in this matter:

> As the appellants themselves highlight, if they "perform the marriages couples desire them to perform, they will certainly commit a misdemeanor offense." "The Texas Marriage Law makes it a *crime* to solemnize a marriage ceremony without authorization." *See* TEX. FAM CODE. § 2.202(c). As the appellants readily and repeatedly recognize, the threat of prosecution is why they have not officiated over weddings, despite multiple requests. ***Even if John F. Warren [the County Clerk] were recording licenses signed by the appellants, they would still be open to prosecution for "knowingly conduct[ing] a marriage ceremony without authorization under [Tex. Fam Code § 2.202]." The County Prosecutor is not a party in this case, and the Dallas County Clerk does not prosecute or investigate criminal offenses.* **See generally** *TEX. LOC. GOV'T CODE. A favorable decision would not fully redress the appellants' purported injury and eradicate the barrier to legally solemnizing marriages.* See Linda R.S. v. Richard D.*, 410 U.S. 614, 618, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973) (finding absence of standing where even if plaintiff, seeking to enjoin discriminatory application of Texas law that criminalized the failure to pay child support of only parents of legitimate children, were granted the requested relief of prosecuting the father of her illegitimate child, it was speculative that relief would actually result in payment). Accordingly, the appellants ask for relief that does not remedy the claimed injury in full. *Cf. Ctr. for Inquiry v. Marion Circuit Court Clerk*, 758 F.3

d 869 (7th Cir. 2014) (finding similar Indiana marriage law to discriminate against CFI and its secular celebrants, where *both* the county clerk and county prosecutor were named as defendants). The appellants lack standing to maintain this suit, and the lower court lacked jurisdiction to entertain it.

*Warren*, 845 Fed.Appx. at 328-29 (emphasis added). The above-referenced quote from *Warren* indicates that injunctive relief would not have been appropriate as against the defendant county clerk were he recording licenses signed by the plaintiffs. *See id.* It was only because the county clerk was refusing to issue the marriage licenses that he was a proper party for purposes of standing and redressability. *See id.; see also Southern Blasting Services, Inc. v. Wilkes County, NC*, 288 F.3d 584, 595 (4th Cir. 2002) (explaining that the plaintiffs had not suffered injury because they had not applied for, or been denied, the permit in question); *see also Bostic v. Schaefer*, 760 F.3d 352, 371 n.2 (4th Cir. 2014) (requiring that a county clerk denying an application for a marriage license is a necessary prerequisite to bring a successful 1983 claim, as a plaintiff must show that the alleged infringement of federal rights [is] fairly attributable to the state) (citations and internal quotation marks omitted). And even then the *Warren* Court still dismissed the case for lack of subject matter jurisdiction because full relief could not be afforded to the plaintiffs without the presence of county prosecutors as parties.[4] *Id.*

---

4.    Plaintiffs' reliance upon *Center for Inquiry, Inc. v. Bean*, Case No. 16-CV-2229 (C.D. Ill. Nov. 28, 2016) and *Center for Inquiry, Inc.  v. Marion Cir. Ct. Clerk*, 758 F.3d 869 (7th Cir. 2014), is unpersuasive.  While the challenged law at

15

In the end, none of the cases cited by Plaintiff supports the novel legal theory proposed here against Mrs. Crowell that standing exists against her simply by her ministerial duty of processing marriage licenses regardless of whether the same are signed by ULC Monestary ministers.[5] Allowing Plaintiffs' claims to proceed would set a damaging precedent in pre-enforcement challenge cases and would also contravene public policy in trying to prevent violations of federal rights, as state officials would have no reason to decline enforcement of allegedly unconstitutional laws because they would be subject to suit regardless.[6] In addition, expanding the

issue in *Marion Cir. Ct. Clerk* involved a marriage ordination statute, the out-of-circuit opinion provides no guidance for this Court on the issues of standing or sovereign immunity under *Ex Parte Young*. Instead, *Marion Cir. Ct. Clerk* simply examined whether a preliminary injunction should issue wherein the court conducted a pseudo-merits analysis on the constitutionality of the challenged law attendant to that determination, matters not before this Court on appeal. *See Marion Cir. Ct. Clerk*, 758 F.3d at 875. Second, Plaintiffs cite to an unreported Order in the *Bean* case from the District Court of Illinois for the proposition that a county clerk is a proper party in a suit challenging the constitutionality of a marriage ordination statute even if the county clerk took no action whatsoever against the plaintiffs. Respectfully, Mrs. Crowell submits that the Order in *Bean* is neither a binding nor well-reasoned precedent for this Court to follow.

5.     Because no individual has standing to pursue claims against Mrs. Anderson, ULC Monastery does not have representational standing to pursue claims against her. *See Am. Atheists, Inc. v. Shulman*, 21 F. Supp. 3d 856, 866 (E.D. Ky. 2014).

6.     To obtain a permanent injunction, a plaintiff must demonstrate, among other things, "that the public interest would not be disserved by a permanent injunction." *Jones v. Perry*, 215 F.Supp.3d at 568 (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

parameters of standing and *Ex Parte Young* to permit a claim against Mrs. Crowell in the absence of any allegation of enforcement or threat thereof by Mrs. Crowell encourages forum shopping. The taxpayers of the chosen county would bear the cost of defense even though their elected official did not enforce or threaten to enforce the challenged law. Again, the *Young* exception has been read narrowly. *Children's Healthcare is a Legal Duty v. Deters*, 92 F.3d 1412, 1414 (6th Cir. 1996).

## <u>CONCLUSION</u>

For the reasons set forth herein and in her first Brief, Mrs. Crowell respectfully requests that the District Court's denial of her Motion to Dismiss be reversed and that the claims against her be dismissed on grounds of Eleventh Amendment immunity and/or lack of subject matter jurisdiction.

**Respectfully submitted,**

**By: <u>/s/ Nick C. Christiansen</u>**
  **Nick C. Christiansen, #30103**
  **Daniel W. Ames, #36720**
  16 Public Square North
  P.O. Box 884
  Murfreesboro, TN  37133
  (615) 893-5522
  nchristiansen@mborolaw.com
  dames@mborolaw.com

  *Attorneys for Defendant Lisa Crowell, in her*
  *official capacity as County Clerk of Rutherford*
  *County, Tennessee*

17

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Brief complies with the type-volume limitation provided in Fed. R. App. P. 32(a)(7)(b). According to the software used, the foregoing brief contains 5,134 words of Times New Roman (14 point) proportional type. The word processing software used to prepare this Brief was Microsoft Word.

**/s/ Nicholas C. Christiansen**
**Nicholas C. Christiansen**

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on June 22, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, and that upon filing, a notice of electronic filing will be sent to all registered parties in this case.

**/s/ Nicholas C. Christiansen**
**Nicholas C. Christiansen**