Nos. 21-5048 and 21-5100

_____

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

_____

UNIVERSAL LIFE CHURCH MONASTERY STOREHOUSE, et al.,

*Plaintiffs and Appellees,*

v.

WAYNE NABORS, et al.,

*Defendants and Appellants.*

_____

On Appeal from the United States District Court
for the Middle District of Tennessee
Case No. 2:19-cv-00049

_____

**REPLY BRIEF OF APPELLEES/CROSS-APPELLANTS UNIVERSAL LIFE
CHURCH MONASTERY STOREHOUSE, ERIN PATTERSON, AND
GABRIEL BISER IN SUPPORT OF CROSS APPEAL**

_____

| | |
|---|---|
| ADAMS AND REESE LLP | DAVIS WRIGHT TREMAINE LLP |
| Rocklan W. King III<br>(BPR No 030643)<br>424 Church Street, Suite 2700<br>Nashville, TN 37219 | Bruce E.H. Johnson<br>(WSBA No. 7667)<br>Ambika K. Doran<br>(WSBA No. 38237)<br>Robert E. Miller<br>(WSBA No. 46507) |
| Lucian T. Pera<br>(BPR No. 11641)<br>Crescent Center<br>6075 Poplar Avenue, Suite 700<br>Memphis, TN 38119 | 920 Fifth Avenue, Suite 3300<br>Seattle, WA 98104 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .........................................................................................1

II. ARGUMENT..............................................................................................1

    A. The Governor is a Proper Defendant Under *Ex Parte Young* ...............1

    B. Plaintiffs Have Standing to Sue the Governor .......................................6

III. CONCLUSION..........................................................................................10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. Wright*,
468 U.S. 737 (1984)......................................................................................7

*Allied Artists Picture Corp. v. Rhodes*,
679 F.2d 656 (6th Cir. 1982) ...................................................................*passim*

*Broadrick v. Oklahoma*,
413 U.S. 601 (1973)......................................................................................9

*California v. Texas*,
593 U.S. ___, 141 S.Ct. 2104, No. 19-840, 2021 WL 2459255
(June 17, 2021)..............................................................................6, 7, 8, 9

*Calzone v. Hawley*,
866 F.3d 866 (8th Cir. 2017) .......................................................................5

*Children's Healthcare is a Legal Duty, Inc. v. Deters*,
92 F.3d 1412 (6th Cir. 1996) .......................................................................2

*Doe v. Lee*,
No. 21-00028, 2021 WL 1907813 (M.D. Tenn. May 12, 2021) ........................3

*Dumont v. Lyon*,
341 F. Supp. 3d 706 (E.D. Mich. 2018) .............................................................8

*Edelman v. Jordan*,
415 U.S. 651 (1974)......................................................................................6

*EMW Women's Surgical Ctr., P.S.C. v. Beshear*,
920 F.3d 421 (6th Cir.), *cert. denied*, 140 S. Ct. 655 (2019) ...........................3

*Faith Baptist Church v. Waterford Twp.*,
522 F. App'x 322 (6th Cir. 2013) .....................................................................8

*Green v. Mansour*,
474 U.S. 64 (1985).......................................................................................6

*Hall v. Trump*,
No. 19-00628, 2020 WL 1061885 (M.D. Tenn. Mar. 5, 2020)............................4

*Hendrickson v. AFSCME Council 18*,
992 F.3d 950 (10th Cir. 2021) ...........................................................................5

*HRPT Props. Trust v. Lingle*,
715 F. Supp. 2d 1115 (D. Haw. 2010)................................................................4

*Kaahumanu v. Hawaii*,
682 F.3d 789 (9th Cir. 2012) .............................................................................9

*Luckey v. Harris*,
860 F.2d 1012 (11th Cir. 1988) .........................................................................4

*Morris v. Livingston*,
739 F.3d 740 (5th Cir. 2014) .............................................................................5

*Moss v. Spartanburg Cnty. Sch. Dist. Seven*,
683 F.3d 599 (4th Cir. 2012) .............................................................................8

*Off. of Commc'n of United Church of Christ v. F.C.C.*,
359 F.2d 994 (D.C. Cir. 1966)...........................................................................9

*Pa Prof'l. Liab. Joint Underwriting Ass'n v. Wolf*,
No. 17-2041, 2017 WL 5625722 (M.D. Pa. Nov. 22, 2017)..............................4

*Petrella v. Brownback*,
697 F.3d 1285 (10th Cir. 2012) ......................................................................4, 5

*Randolph v. Randolph*,
937 S.W.2d 815 (Tenn. 1996) ...........................................................................2

*Rode v. Dellarciprete*,
845 F.2d 1195 (3d Cir. 1988) ............................................................................5

*Russell v. Lundergan-Grimes*,
784 F.3d 1037 (6th Cir. 2015) ........................................................................1, 3

*Support Working Animals, Inc. v. DeSantis*,
457 F. Supp. 3d 1193 (N.D. Fla. 2020) .............................................................6

*Washegesic v. Bloomingdale Pub. Sch.*,
   33 F.3d 679 (6th Cir. 1994) ................................................................8

*Ex Parte Young*,
   209 U.S. 123 (1908)..............................................................1, 4, 6

**Statutes**

26 U.S.C. § 5000A(a).........................................................................7

42 U.S.C. § 1983 ...............................................................................9

Tenn. Code Ann. § 36-3-301 .......................................................1, 2, 5, 8

**Constitutional Provisions**

U.S. Constitution
   amend. I.................................................................................8, 9
   amend. XI..................................................................................6

# I.     INTRODUCTION

Tennessee Governor Bill Lee asks the Court to adopt a standard that would prevent challenge to *any* law without an express "enforcement mechanism"—no matter how discriminatory and no matter the injury suffered.  But this Court has rejected such a "perverse reading of [*Ex parte*] *Young*."  *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015).  The Governor has "sufficient connection" to laws implicating areas of "substantial public interest" to be sued for injunctive relief under *Young*, particularly where there is no other state official to stand in his place and defend the law.  *See Allied Artists Picture Corp. v. Rhodes*, 679 F.2d 656 (6th Cir. 1982).  The Court should reverse the District Court's dismissal of the Governor if it dismisses all other defendants.

# II.     ARGUMENT

## A.     The Governor is a Proper Defendant Under *Ex Parte Young*

The Governor is a proper defendant in a suit to enjoin Tenn. Code Ann. § 36-3-301 ("the Act") under *Ex parte Young*.  This Court held in *Allied Artists Picture Corp. v. Rhodes* that the Governor had a "sufficient connection" to the challenged law under *Ex parte Young* because the "substantial public interest in enforcing trade practices legislation involved here places a significant obligation upon the Governor to use his general authority to see that state laws are enforced." 679 F.2d at 665 n.5.

The Governor suggests that Plaintiffs rely on *Allied Artists* to argue that the Governor is a proper defendant "even if the governor has no connection to enforcement" of the law.  State Defs.' Reply Br. at 33.  That is a mischaracterization of Plaintiffs' position and of *Allied Artists*.  The Court in *Allied Artist* did not permit suit in the absence of a connection to the challenged law, but expressly held that "the Governor has sufficient connection with the enforcement of the Act."  679 F.2d at 665 n.5.  Further, the Court in *Allied Artists* did not simply rely on the Governor's general authority to enforce the law, but found the Governor had a sufficient connection because the challenged law implicated "substantial public interest" that would place a "significant obligation" on the governor to use his authority.  *Id.*  Given that Tennessee courts describe the State as "a party to every marriage" (*Randolph v. Randolph*, 937 S.W.2d 815, 821 (Tenn. 1996))—and the Governor and other state officials in this case have asserted the State's "'absolute right'" to regulate marriage (Def. Mem. in Supp. of Mot. Dismiss, R. 209, PageID# 2630 (citation omitted))—marriage solemnization statutes certainly implicate a "substantial public interest."

Nor is the Governor correct to claim *Allied Artists* is no longer good law. The Governor relies on *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412 (6th Cir. 1996), where the Court contrasted with *Allied Artists*—by citing with the signal "*but see*"—but did not overrule it.  *See id.* at 1414-15.  More

recently, the Court cited *Allied Artists* favorably in *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 446 (6th Cir.), *cert. denied*, 140 S. Ct. 655 (2019). In that case, the Court dismissed the attorney general as a defendant but noted:

> Because it is uncontested that the Secretary Meier is a proper party, no concern exists that EMW "would be unable to vindicate the alleged infringement of their constitutional rights without first violating [H.B. 2]." *See Allied Artists Picture Corp. v. Rhodes*, 679 F.2d 656, 665 n.5 (6th Cir. 1982).

*EMW*, 920 F.3d at 446 n. 25 (alteration in original) (quoting *Allied*, 679 F.2d at 665 n.5).[1]

Trial courts continue to follow *Allied Artists* and recognize the importance of allowing suit against the governor of a state in some instances. Just two months ago, one court concluded that the *Allied Artists* rule appropriately "recognizes that, in at least some situations, the Governor's ultimate authority as the chief executive of the state renders him the appropriate subject of an injunction directed at a state policy that otherwise might not be entrusted to any single official but which the governor must ultimately oversee as the final arbiter of the executive policy of the state." *Doe v. Lee*, No. 21-00028, 2021 WL 1907813, at *7 (M.D. Tenn. May 12, 2021) ("Governor [Lee] is an appropriate defendant in this case pursuant to

---

[1] The Governor also relies on *Russell v. Lundergan-Grimes*, but in that case, the governor was not a defendant, and the Court affirmed denial of the Attorney General's motion to dismiss himself as a defendant. 784 F.3d at 1047.

*Allied Artists*" because "no single agency or official posses[es] the kind of singular authority that would render other defendants unnecessary."); *see also, e.g.*, *Hall v. Trump*, No. 19-00628, 2020 WL 1061885, at \*3 (M.D. Tenn. Mar. 5, 2020) ("Even the governor of a state can be a proper defendant for purposes of obtaining prospective injunctive relief in the proper circumstances based on the governor's duty to enforce the law.") (internal quotation marks and citation omitted); *HRPT Props. Trust v. Lingle*, 715 F. Supp. 2d 1115, 1127 (D. Haw. 2010) (finding Hawaii's governor a proper defendant based on her constitutional duty to faithfully execute the laws).

 *Allied Artists* is hardly an outlier, as other circuits have allowed suits against governors to enjoin unconstitutional state laws. *Luckey v. Harris*, 860 F.2d 1012, 1016 (11th Cir. 1988) (relying in part on state constitutional provision providing "the governor is responsible for law enforcement in that state and is charged with executing the laws faithfully" to conclude governor was an "appropriate part[y] against whom prospective relief could be ordered"); *Petrella v. Brownback*, 697 F.3d 1285, 1294 (10th Cir. 2012) (plaintiffs had standing to challenge constitutionality of state statute in suit against governor and attorney general based in part on their "responsibility for the enforcement of the laws of the state.").[2]

---

[2] *See also Pa Prof'l. Liab. Joint Underwriting Ass'n v. Wolf*, No. 17-2041, 2017 WL 5625722, at \*6 n.73 (M.D. Pa. Nov. 22, 2017) (the Third Circuit "has yet to address the 'unsettled' question of whether *Ex parte Young* can apply to cases

More recently, in *Hendrickson v. AFSCME Council 18*, 992 F.3d 950 (10th Cir. 2021), the Tenth Circuit distinguished its decision in *Petrella* and held that the governor was not a proper party because "the statutory scheme vests enforcement power in" a separate government body. *Id.* at 968. But if no such body has enforcement authority and nothing in the statute "indicat[es] the statutory provisions at issue f[a]ll outside the scope of [the governor's] general enforcement powers," then the governor is a proper defendant. *Id.* at 967-68.

The Governor relies on cases from other circuits where the court dismissed a state governor but found *another proper defendant*. *See Calzone v. Hawley*, 866 F.3d 866, 870 (8th Cir. 2017) (dismissing governor where superintendent of Missouri State Highway Patrol was a proper defendant); *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) (affirming district court's decision to dismiss governor while substituting director of Texas Department of Criminal Justice as defendant). Plaintiffs challenge the Governor's dismissal only to the extent the Court finds no other defendant has sufficient connection to § 36-3-301.

As the Supreme Court has recognized, "[r]emedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in

---

concerning self-enforcing or self-executing statutes" but has "acknowledged the Sixth Circuit Court of Appeals' treatment of the issue in *Allied Artists*") (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1208-09 (3d Cir. 1988) (finding it unnecessary to maintain governor as a party where other defendants existed)).

assuring the supremacy of that law." *Green v. Mansour*, 474 U.S. 64, 68 (1985).

*Ex parte Young* "gives life to the Supremacy Clause," *id.*, and has armed plaintiffs

with the "sword" of the "Civil War Amendments" to contest ongoing violations by

the states, *Edelman v. Jordan*, 415 U.S. 651, 664 (1974). But "[i]t would be a

peculiar loophole in American law if the Eleventh Amendment immunized a

patently unconstitutional state law from a constitutional challenge in federal court

simply because the law is 'self-executing.'" *Support Working Animals, Inc. v.*

*DeSantis*, 457 F. Supp. 3d 1193, 1208 n.7 (N.D. Fla. 2020) (citing *Allied Artists*,

679 F.2d at 665 n.5). If this were so, "states could legislate around *Ex parte*

*Young's* protections," *id.*, stripping citizens of this essential "sword" against

unconstitutional state action.

**B.      Plaintiffs Have Standing to Sue the Governor**

The Governor also argues that the Supreme Court's recent decision in

*California v. Texas*, 593 U.S. ___, 141 S.Ct. 2104, No. 19-840, 2021 WL 2459255

(June 17, 2021) shows Plaintiffs lack standing to bring a claim against him (and the

attorney general and the district attorneys) to enjoin the marriage solemnization

law. *See* State Defs.' Reply Br. at 30 n.2. But the comparison to *California v.*

*Texas* is inapt. In that case, the plaintiffs challenged the Affordable Care Act's

("ACA") requirement that individuals obtain minimal essential health insurance

coverage. 141 S.Ct. at 2111-12. The ACA imposed a tax penalty on those who

failed to obtain coverage, but in 2017, Congress amended the ACA to set the penalty at $0. *Id.* at 2112. As a result, the IRS "made clear that the statute no longer requires taxpayers to report whether they do, or do not, maintain that coverage." *Id.*

The individual plaintiffs claimed they suffered injury by paying for insurance coverage as required by § 5000A(a) of the ACA, but the Court concluded that "no unlawful Government action 'fairly traceable' to § 5000A(a) caused the plaintiffs' pocketbook harm" because the plaintiffs purchased insurance despite the government's inability to make them do so. *Id.* at 2115. The Court also found redressability lacking because, in the absence of a penalty for failure to obtain insurance, "there is no one, and nothing, to enjoin." *Id.* at 2116. In short, because there was no penalty for failing to obtain insurance, the Court held the statutory language requiring insurance, standing alone, did not cause the plaintiff's claimed injury, and an order invalidating that language would do nothing to redress it. There was no "relationship between 'the judicial relief requested' and the 'injury' suffered." *Id.* at 2115 (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)).

The injury suffered by ULC Monastery and its ministers, however, is fundamentally different than the plaintiffs' injury in *California v. Texas*. As this Court has held, the "use of governmental authority to encourage a sectarian

7

religious view is a sufficient injury if directed toward the plaintiff." *Washegesic v. Bloomingdale Pub. Sch.*, 33 F.3d 679, 682 (6th Cir. 1994). And "[f]eelings of marginalization and exclusion are cognizable forms of injury, particularly in the Establishment Clause context." *Dumont v. Lyon*, 341 F. Supp. 3d 706, 721 (E.D. Mich. 2018) (quoting *Moss v. Spartanburg Cnty. Sch. Dist. Seven*, 683 F.3d 599 (4th Cir. 2012)). Not only does the Act denigrate Plaintiffs' religion and practices—by design—but it invalidates all marriages ULC Monastery ministers perform *regardless* of any "enforcement mechanism." The Act—as implemented by the defendants—*causes* this injury, and an injunction invalidating the Act would *redress* that injury by confirming the validity of ULC Monastery marriages and eliminating the official State preference of certain religions over that of Plaintiffs. As a result, there is a clear "relationship between the judicial relief requested and the injury suffered" by Plaintiffs. *California*, 141 S.Ct. at 2115 (internal quotations marks and citations omitted). This stands in contrast with *California v. Texas*, where the statutory language could not cause the claimed injury (obtaining insurance) in the absence of a penalty.

The Governor's comparison to *California v. Texas* is also misguided because "[s]tanding is relaxed in the First Amendment context" out of recognition that a "'policy's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" *Faith Baptist Church v.*

*Waterford Twp.*, 522 F. App'x 322, 330 (6th Cir. 2013) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)); *see also Kaahumanu v. Hawaii*, 682 F.3d 789, 799 (9th Cir. 2012) ("We have no difficulty concluding that wedding ceremonies are protected expression under the First Amendment."). Thus, while the challenged provision in *California v. Texas* caused no impact without the tax penalty, the challenged language here will—and has—chilled protected expression and religious practice through its "very existence." *See* (Decl. of George Freeman ¶ 14, R. 40, PageID# 207); (SAC ¶¶ 38, 43, R. 80, PageID# 483-84); (Mem. Op., R. 236, PageID# 3219).

In short, *California v. Texas* does *not* support the proposition that laws without an express enforcement mechanism are immune from challenge in a § 1983 suit. If that were so, then Tennessee could next pass a law providing that only ethnically Caucasian persons may serve as notaries. Regardless of any "enforcement mechanism," all documents notarized by non-Caucasians would be invalid. The Governor's position (and the position of all defendants) is that the objects of the discriminatory law would have *no right to enjoin the law*. That result is constitutionally untenable. *See, e.g.*, *Off. of Commc'n of United Church of Christ v. F.C.C.*, 359 F.2d 994, 1002 (D.C. Cir. 1966) (Burger, J.) ("[T]he concept of standing is a practical and functional one designed to insure that only those with a genuine and legitimate interest can participate in a proceeding[.]").

## III.    CONCLUSION

For these reasons, the Court should reverse the District Court's decision granting the Governor's motions to dismiss if the Court concludes that no other defendant is a proper party.

RESPECTFULLY SUBMITTED this 27th day of July, 2021.

**ADAMS AND REESE LLP**

By:*/s/ Rocklan W. King III*

**Rocklan W. King III** (BPR No 030643)
424 Church Street, Suite 2700
Nashville, TN 37219
Phone: (615) 259-1450; Fax: (615) 259-1470
rocky.king@arlaw.com

**Lucian T. Pera** (BPR No. 11641)
Crescent Center
6075 Poplar Avenue, Suite 700
Memphis, TN 38119
Phone: (901) 524-5278; Fax: (901) 524-5378
lucian.pera@arlaw.com

**DAVIS WRIGHT TREMAINE LLP**

**Bruce E.H. Johnson** (WSBA No. 7667)
**Ambika K. Doran** (WSBA No. 38237)
**Robert E. Miller** (WSBA No. 46507)
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Phone: (206) 622-3150; Fax: (206) 757-7700
brucejohnson@dwt.com
ambikadoran@dwt.com
robertmiller@dwt.com

*Attorneys for Plaintiffs Universal Life Church Monastery Storehouse, Erin Patterson, and Gabriel Biser*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because this brief contains 2,231 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface and the type-style requirements of Fed. R. App. P. 32(a)(5-6) because this brief has been prepared in a proportionately spaced typeface using Times New Roman 14-point font.

Date: July 27, 2021

*/s/ Rocklan King*

# CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2021, I electronically filed the foregoing

with the Clerk of the Court for the United States Court of Appeals for the Ninth

Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by

the appellate CM/ECF system.

Date: July 27, 2021

/s/ Rocklan King